UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
UNITED STATES

       Plaintiff,

  -against-

FELIX SATER,

       Defendant.

------------------------------------------------------------ X

RECEIVED
6/11/10
Chambers of
I. Leo Glasser
U.S.D.J.

98 CR 1101(ILG)

**TO BE FILED UNDER SEAL**

# DEFENDANT FELIX SATER'S
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ORDER DIRECTING RETURN OF SEALED AND CONFIDENTIAL MATERIALS

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Tel: 212.309.6000

Attorneys for Defendant Felix Sater

DB1/64987557.1

Felix Sater, by and through his attorneys, Morgan, Lewis & Bockius LLP, hereby submits this reply memorandum of law in further support of Mr. Sater's request for relief.

## BACKGROUND

Fred Oberlander, a licensed attorney, and Jody Kriss and Michael Ejekam (collectively, "Respondents") knowingly disregarded an order of this Court and put Mr. Sater's life in danger by publicizing in a meritless civil complaint a sealed cooperation agreement and other documents (collectively, the "Sealed and Confidential Materials") reflecting Mr. Sater's extensive cooperation relating to significant criminal matters. While Respondents repeatedly assert that they did not obtain the Sealed Materials from the Court, that hardly matters. Far from a situation where they honestly did not realize that a sealing order was in place, Respondents' own allegations in the civil complaint show that they knew that Mr. Sater's file had been ordered sealed by this Court. Given that knowledge, Respondents' brazen publication of the Sealed Materials--without taking any steps whatsoever to determine whether the seal order had been lifted, or without making an unsealing motion, was beyond irresponsible.

In their opposition, Respondents show no contrition for their disregard for this Court's seal order. Instead, they argue that Mr. Sater's grievance is a typical squabble about civil discovery that should be resolved in the lawsuit before Judge Buchwald in the ordinary course. They also suggest that Mr. Sater's request for relief should be discounted because Mr. Sater is a "miscreant" while Mr. Oberlander is a "zealous advocate." *See, e.g.*, Declaration of Thomas W. Hyland ("Hyland Declaration") ¶¶ 5, 30. Given Respondents' conduct in publishing material that they knew to be the subject of this Court's seal order, their cavalier attitude is astounding. Also, as this Court knows from long experience, violent retaliation against individuals whose cooperation is revealed to members of organized crime is all too common. While Respondents

DB1/64987557.1

contend that they chose excerpts of the Sealed Documents "with care", they disclosed all that would be needed to incite retaliation: the mere fact of Mr. Sater's cooperation against members of organized crime.

This Court ordered Respondents to give evidence how they obtained the Sealed and Confidential Materials and show cause why Mr. Sater's request for relief should not be granted. Nothing in their papers comes close to achieving this.

## ARGUMENT

### I. RESPONDENTS CONCEDE THAT THE SDNY COMPLAINT CONTAINS SEALED INFORMATION





Any person with an ounce of common sense—especially an attorney who claims to be an "authority" on criminal law (*See* Transcript of Deposition of Julius Schwarz at 146, attached hereto as Exhibit 2)—would know that publishing such material put lives at risk. Respondents callously tried to exploit that risk, accusing Mr. Sater of improperly hiding his past and, in a pre-filing email, threatening that if the SDNY defendants would not immediately settle Mr. Kriss' employment claim, they would publicly disseminate the SDNY Complaint together with its Sealed and Confidential Materials. In that email, Mr. Oberlander again showed his awareness of the seal order by suggesting that he might file the complaint under seal, or that the parties could enter into a "redaction agreement" after the lawsuit was filed. *See* Moore Declaration Exhibit 3.[1]

## II. THIS COURT HAS AUTHORITY TO ADDRESS THE PUBLICATION OF THE DOCUMENTS

Respondents claim that "the issue" raised by Mr. Sater's motion should be resolved by Judge Buchwald "in the context of the ordinary discovery process in the underlying civil RICO

---

[1] What makes this disclosure more disturbing is that it appears to have been done solely to force a pre-filing settlement. This is clear given that Mr. Kriss had recently filed a similar civil complaint in Delaware, without including these sealed details. Respondents argue that the Delaware claim is different than the SDNY Claim. *See* Declaration of Stamatios Stamoulis ("Stamoulis Declaration") ¶ 9. However, the Court need not resolve this question, as it is presently before Judge Buchwald and in no way absolves Respondents of their misconduct.

matter. . . ." Hyland Declaration ¶ 5. In other words, although Respondents knowingly published documents sealed by this Court, Respondents suggest this motion is not properly before Your Honor.

Respondents are wrong. First, this Court has the absolute right to inquire about violations of its orders. For example, in *In re Biovail Corporation Securities Litigation*, 247 F.R.D. 69 (S.D.N.Y. 2007), Judge Owen of the Southern District of New York learned that documents governed by his protective order were used as a basis for commencing another action. He issued an order barring the use of the materials and subsequently held well-publicized hearings into the conduct that led to the violation of his order. Judge Owen also awarded the attorney fees and expenses to the injured party. *In re Biovail*, 247 F.R.D. at 71. Moreover, as Respondent Oberlander is fully aware, Judge Buchwald specifically directed the parties to this Court to address the violation of the seal order and the question of how the Respondents obtained documents that were under seal in the Eastern District of New York. *See* Moore Declaration ¶ 35.

## III. RESPONDENTS' EXCUSES DO NOT ABSOLVE THEM

### A. Oberlander Cannot Hide Behind Privilege

Respondents claim that Mr. Oberlander obtained the documents unsolicited from a client of Mr. Oberlander's, and then argue that Mr. Oberlander (i) cannot disclose the mystery client's name on grounds that it is protected by the attorney-client privilege; and (ii) cannot ask the mystery client for an affidavit because of the Court's order sealing these proceedings.

Respondents are wrong. The identity of the mystery client is not privileged. *See In re Shargel*, 742 F.2d 61, 64 (2d Cir. 1984) (client identity, absent special circumstances, is not protected by attorney-client privilege); *see also Lefcourt v. U.S.*, 125 F.3d 79, 86 (2d. Cir. 1997) (rejecting argument that possible client incrimination resulting from disclosing a client's identity

DB1/64987557.1          5

constitutes a special circumstance justifying nondisclosure.)

Of course, the identity of the mystery client likely is no mystery at all. Mr. Oberlander represents three former employees of Bayrock: Mr. Kriss and Mr. Ejekam—who both deny being the source—and Joshua Bernstein, who is pursuing other claims against Bayrock. Mr. Bernstein has already admitted under oath that when he left Bayrock, he took "thousands of different emails and such" and "hundreds" of paper documents. *See* Deposition of Joshua Bernstein, Exhibit 2 to the Moore Declaration, at 219.

In any case, it is irrelevant whether Respondents obtained the documents from a third party. The fact remains that they knew that the documents were the subject of a seal order from this Court. Their failure to take any action to determine whether the seal was in place, or to move to unseal, cannot be excused by a claim that they did not obtain documents directly from the courthouse files.

### B. Respondents' Arguments About Expectations of Privacy and Waiver of Privilege Are Irrelevant

Because Mr. Bernstein might be compelled to admit that he stole the documents—either in hard copy or from a computer—Respondents hedge their bets by speculating that Mr. Sater might not have kept his documents under "lock and key" (Hyland Declaration ¶ 15), by asserting that Mr. Sater had instructed Mr. Bernstein to make a computer backup (*Id.* ¶ 13), and by suggesting that if Mr. Oberlander simply received the documents, he is free to use them as he pleases (*Id.* ¶ 16). These arguments fail.

Mr. Sater cannot be denied an expectation of privacy because a coworker went snooping through his desk or his computer and stole sealed and confidential documents. *See generally O'Connor v. Ortega*, 480 U.S. 709, 730 (1987) ("[n]ot everything that passes through the confines of the business address can be considered part of the workplace context."); *Stengart v.*

*Loving Care Agency, Inc.*, 973 A.2d 390 (N.J. App. Div. 2009), (rejecting the company's ownership of a computer as the sole determinative fact in determining whether an employee's personal emails may become the company's property), *aff'd Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 655 (N.J. Sup. Ct. 2010); *see generally Leventhal v. Knapek*, 266 F.3d 64, 74 (2d. Cir. 2001) (concluding, under facts, that employee had reasonable expectation of privacy in contents of work-place computer).

As to Respondents' position that Mr. Bernstein, who had information technology responsibilities at Bayrock, was directed to ensure that the company's electronic files were backed up (Hyland Declaration ¶ 13), this alone does not entitle Mr. Bernstein to take the backups to his *home*, or keep the backups when he was terminated, or use any information he found for his own personal gain. Similarly, the fact that Mr. Oberlander may not have taken the documents himself does not provide him a defense. If one of Mr. Oberlander's clients handed him a stolen credit card, Mr. Oberlander would not be entitled to use that for the benefit of the client or anyone else, and this is no different.

The Second Circuit addressed a parallel issue in *U.S. v. Charmer Industries, Inc.*, 711 F.2d 1164 (2d Cir. 1983). In *Charmer*, the Attorney General of Arizona obtained a copy of a pre-sentence report by calling a clerk in the probation department. The Second Circuit, after explaining the need for confidentiality of such materials, determined that only the court had the power to release the document and only upon a sufficient showing. It therefore ordered that the recipient, though he had not improperly taken the report, was required to return the report to the court and was prohibited from any publication or use of any portion of the report not otherwise publicly available. The same result is compelled here.

Respondents' reliance on cases concerning waiver of the attorney client privilege is

completely inapposite. The documents in question are covered by a <u>court</u> order—not attorney-client privilege—and as such may not be disclosed without authorization by the <u>court</u>. *See U.S. v. Madoff*, No. 09 Crim. 213 (DC), 2009 WL 3347945 at *1 (October 13, 2009 S.D.N.Y.) (refusing to allow third party access to a presentence report and quoting *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988): "presentence reports should not be accessible to third parties because of the chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report [and] the need to protect the confidentiality of the information contained in the report.") It is well established that every court has supervisory power over its own records and files and it is the Court's right—and only the Court's right—to allow or deny access to such files in order to prevent the files from becoming "vehicles for improper purposes." *Nixon v. Warner Communications, Inc. et al.*, 435 U.S. 589, 598 (1978).

### C.  Respondents' Wrongly Attempt to Minimize Their Offense

Respondents argue that even if they improperly used sealed information, there is no harm because the materials could be unsealed if there is a compelling need for disclosure to meet the ends of justice (Hyland Declaration ¶ 26), that even if the Court documents are sealed, the information in the documents cannot be protected from disclosure (*Id.* ¶ 28), and that disclosure is acceptable because Mr. Oberlander is a "zealous advocate" and Mr. Sater is a "miscreant" (*Id.* ¶ 30).

But the seal order belongs to this Court, and if Respondents thought there was good cause to overturn it, they should have made a motion try to demonstrate "a compelling need for disclosure to meet the ends of justice." *Charmer*, 711 F.2d at 1176. Instead, they took unilateral action and knowingly violated a standing order.

The reason they did so is obvious. No showing of a "compelling need" to use the Sealed and Confidential Materials could ever be made. Far from having a "compelling need" to use

those documents in a civil case, it is plain that the documents were attached to the SDNY Complaint as exhibits for the sole purpose of attempting to extract a payment in exchange for not publishing documents that would place Mr. Sater's life in danger. The pretextual basis for attaching the Sealed and Confidential Materials to the SDNY Complaint is to support an alleged RICO predicate act of fraud on this Court and the probation department, and Mr. Oberlander purports that the plaintiffs he represents are "essentially private attorneys general." It is obvious on the face of it, that the SDNY Complaint is a frivolous diatribe that will not survive a motion to dismiss, much less Rule 11 sanctions. Equally obvious is that it was never intended to. It was simply intended as a temporary vehicle by which to extort a payment in exchange for not endangering a man's life and damaging the reputation of a legitimate business, by gratuitously calling it "mob" affiliated simply because Mr. Sater worked there.

Respondents also claim that they drafted the SDNY Complaint with the "utmost care" (Hyland Declaration ¶ 30), that they attached "*only* the proffer, the cooperation and five pages from the PSR," and did not include the financial statement or any of the "putatively more confidential information." *Id.* at ¶ 32. Respondents miss the point entirely. They threatened to and then did disclose cooperation against organized crime, thereby placing Mr. Sater's life in danger. How can they actually claim that "the extracts were chosen with care"?[2]

## CONCLUSION

For the reasons stated above, this Court should grant the relief sought and issue such other and further relief as the Court deems just and appropriate under the circumstances.

---

[2] Respondents state that they only disclosed 5 pages of the PSR. The pre-filing copy sent to Ron Kriss contained the entire 2004 presentence report with the exception of page 46 thereof.

Dated: New York, New York
June 10, 2010

MORGAN, LEWIS & BOCKIUS LLP

By _____
Kelly Moore (KM 4839)
Brian A. Herman (BH 0731)

101 Park Avenue
New York, New York 10178-0060
Phone: 212-309-6000
Fax: 212-309-6001

*Attorneys for Felix Sater*

# EXHIBIT 1

Case 1:98-cv-10101-LGD Document 575-SEALED Filed 06/14/12 Page 12 of 16 PageID #: 418

# MorrisonCohen LLP

Y. David Scharf
Partner
(212) 735-8604
dscharf@morrisoncohen.com

May 24, 2010

**VIA FACSIMILE (212) 805-7927**

Honorable Naomi Reice Buchwald
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007

Re:  Kriss, et al. v. Bayrock Group LLC, et al., SDNY 10 Civ. 3959

Dear Judge Buchwald:

We represent defendants Bayrock Group LLC, Julius Schwarz and Brian Halberg (collectively "Bayrock") in the above-referenced matter. We write to request a pre-motion conference in accordance with Rule 2(A) of Your Honor's Individual Practices. We intend to move for dismissal of the complaint (or, alternatively, for disqualification of Plaintiffs' counsel or other relief) on the following grounds:

1.  **Disputes Between Kriss and Bayrock Must Be Arbitrated** – This action is little more than Mr. Kriss's attempt to avoid the terms of an employment agreement between he and Bayrock which expressly provides, in a broadly-worded arbitration clause, for binding arbitration of all disputes between Bayrock and Mr. Kriss. Indeed, this is Mr. Kriss's second attempt to avoid arbitration and assert his claims in court. On February 19, 2010, the Court of Chancery of the State of Delaware dismissed a similar derivative complaint filed by Mr. Kriss, finding that all of Mr. Kriss's claims were arbitrable, and none were properly asserted in Delaware. Even though the Chancery Court indicated that it could dismiss the complaint there with prejudice, Chancery Judge Strine went out of his way to give Mr. Kriss a second chance to plead his claim in arbitration. Rather than adhere to the Chancery Court's order and file an arbitration claim, Mr. Kriss filed the instant Complaint. Given that Mr. Kriss has now made two futile attempts to avoid arbitration, we submit that his Complaint should be dismissed with prejudice.

2.  **The Complaint Relies on Stolen, Confidential Information** – Even if Plaintiffs were not required to arbitrate their claims, the Complaint should nonetheless be dismissed because it relies almost entirely on stolen attorney-client privileged communications. Virtually the entire complaint relies upon (and indeed, in many instances directly quotes from) confidential communications between Bayrock and Bayrock's outside counsel, or between Bayrock's in-house counsel and Bayrock's employees (collectively, the "Confidential Communications"). Bayrock will show that the privilege was preserved as to these Confidential Communications,

# MorrisonCohen LLP

Hon. Naomi Riece Buchwald
May 24, 2010
Page 2

and that the Plaintiffs had neither the right nor the authority to waive the attorney-client privilege with respect to these Confidential Communications. Indeed, it appears that these Confidential Communications may have been surreptitiously diverted from Bayrock's computer system, or physically stolen from Bayrock's offices. Plaintiffs' use and dissemination of the Confidential Communications – which on their face are clearly privileged – is a gross abuse of the judicial process. We respectfully submit that the Court has the inherent power to address this wrongdoing by dismissing the Complaint with prejudice. Alternatively, the Court may strike all references to Confidential Information in the Complaint, disqualify the Plaintiffs' counsel from further representing the Plaintiffs, and order the return of the Confidential Information.

3. **The Complaint Fails to State a RICO Claim** – Even were the Complaint not dismissed for the foregoing reasons, it should nonetheless be dismissed because the Plaintiffs have failed to plead a claim under the RICO statute. The 164-page Complaint is filled with inflammatory rhetoric designed only to embarrass the defendants and force a settlement; it utterly fails to particularize the elements of a claim under the RICO statute. Moreover, the Complaint plainly violates the Rule 8(d) requirement that each allegation be "simple, concise and direct." The last ten paragraphs of the 785-paragraph Complaint attempt to allege a RICO claim, but these paragraphs do not articulate how the preceding 778 paragraphs of the Complaint are tied to the elements of a RICO cause of action. As the Court is aware, the RICO statute "is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 284 (S.D.N.Y. 1991) (internal quotation marks and citation omitted). Here, no element of a RICO claim is properly pleaded in this Complaint, and any attempt to amend the Complaint would be futile. Accordingly, we respectfully submit that the Complaint should be dismissed with prejudice.

We respectfully request a pre-motion conference at Your Honor's convenience so that we may file a motion with respect to the foregoing issues.

Respecfully submitted,

Y. David Scharf
YDS:mfv

cc: Frederick Oberlander, Esq. (fred55@aol.com)
David Lewis, Esq. (dlewis@lewisandfiore.com)
Brian Herman, Esq. (bherman@morganlewis.com)

#2300457 v2 \888888 \8888

# EXHIBIT 2

1

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
 2   COUNTY OF WESTCHESTER
     ------------------------------------x
 3   JOSHUA BERNSTEIN,
 4                          Plaintiff,
 5         -against-
 6   BAYROCK GROUP LLC,
 7                          Defendant.
 8   Index No. 02579/09
     ------------------------------------x
 9
10
                              11 Martine Avenue
11                            White Plains, New York
12
                              March 5, 2010
13                            11:15 a.m.
14
15         Deposition of JULIUS R. SCHWARZ,
16   held at the Law Offices of Gerry E. Feinberg,
17   pursuant to court order, before Barbara
18   Driscoll, a Notary Public of the State of
19   New York.
20
21
22
23      ELLEN GRAUER COURT REPORTING CO. LLC
          126 East 56th Street, Fifth Floor
24             New York, New York 10022
                   212-750-6434
25                 Ref: 92828
```

2

```
 1   A P P E A R A N C E S:
```

Page 1

| | |
|---|---|
| 1 | SCHWARZ |
| 2 | Bayrock Group LLC, and you testified that you |
| 3 | believe that the phrase membership interest in the |
| 4 | context of Kriss's employment agreement of 2004; |
| 5 | your employment agreement; Sater's employment |
| 6 | agreement; Woodring's separation agreement, means |
| 7 | an economic interest with respect to the same |
| 8 | rights to distribution as a member would have, why |
| 9 | is it that none of that money was distributed to |
| 10 | any of them? |
| 11 | MR. DOMB: Objection. |
| 12 | Q. Why didn't any of them get any of the |
| 13 | money? Why didn't Jody Kriss get any of the 50 |
| 14 | million? What reason was there? |
| 15 | MR. DOMB: This is relevant to the |
| 16 | claims in this case of Mr. Bernstein in what |
| 17 | way? |
| 18 | MR. OBERLANDER: Because I would like |
| 19 | to know whether he was given a bonus for |
| 20 | working on a transaction that violated at |
| 21 | least 16 different federal laws that I know of |
| 22 | and whether his contract is therefore voidly |
| 23 | consumed quantum meruit -- I am dead serious. |
| 24 | I am an authority on white color crime |
| 25 | racketeering. I am not bluffing. So we are |