MAR/12/2009/THU 11:20 AM　　　　　　　FAX No.　　　　　　　　　　P. 005/010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------

JOSHUA BERNSTEIN

              Plaintiff,

Index No. 02579-09

SUMMONS

Plaintiff designates
Westchester County as the
place of trial

-against-

BAYROCK GROUP LLC.

              Defendant.

The basis of venue is
Plaintiff's residence

RECEIVED
FEB 12 2009
TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

-------------------------------------------------

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within twenty days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 10, 2009

Defendant's Address:

Bayrock Group LLC.
725 5th Ave.  **24 TH FLR**
New York, NY 10022

The Law Offices of Gerry E. Feinberg, P.C.

By: _____
     Gerry E. Feinberg
     Attorney for Plaintiff
     11 Martine Avenue
     White Plains, NY 10606

Summons



DEFENDANT'S
EXHIBIT
E
3/8/10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER.
-------------------------------------------------------------
JOSHUA BERNSTEIN　　　　　　　　　　　　　　　Index No.

　　　　　　　　　　Plaintiff,　　　　　　　　　COMPLAINT

　　　-against-

BAYROCK GROUP LLC.

　　　　　　　　　Defendant.
-------------------------------------------------------------

**RECEIVED**

FEB 12 2009

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

　　Plaintiff, Joshua Bernstein, by his attorneys, the Law Offices of Gerry E. Feinberg, P.C., alleges as and for his complaint against the defendant as follows:

1.　Plaintiff Joshua Bernstein ("Bernstein"), is a resident of the County of Westchester.

2.　Upon information believed, defendant Bayrock Group LLC. ("Bayrock"), is a domestic limited liability company with a place for the conduct of business in the City, County and State of New York.

3.　Commencing in or about November 2006, and continuing through in or about September 16, 2008, Bernstein was employed by Bayrock.

4.　During the time of Bernstein's employment with Bayrock, it was agreed that he would be compensated for the services that he was providing.

5.　In or about September, 2008, Bernstein was terminated from his employment with Bayrock.

1

6. At the time of Bernstein's termination from his employment with Bayrock, he was entitled to receive as yet unpaid compensation for the services he had provided.

7. Despite due demand therefore Bayrock has refused to pay Bernstein his compensation.

8. Based upon the forgoing, Bernstein has been damaged in an amount to be determined at the time of trial, but at no event no less than $375,000.

## SECOND CAUSE OF ACTION

9. Repeats and realleges each every allegation set forth in paragraphs "1" through "8" hereof as if fully set forth at length.

10. At the time of Bernstein's termination from his employment with Bayrock, Bernstein had personal property within his office at Bayrock.

11. Upon his termination from his employment with Bayrock, Bernstein made demands upon Bayrock to return to him his personal property.

12. Despite demands therefore, Bayrock has refused to return to Bernstein his personal property and has deprived him of the use thereof.

13. The conduct of Bayrock in refusing to return to Bernstein his personal property has resulted in conversion of that property.

14. Based upon the forgoing, plaintiff has been damaged in an amount to be determined at the time of the trial but at no event less than $10,000.

## THIRD CAUSE OF ACTION

15. Repeat each and every allegation set forth in paragraph "1" through "8" as if fully set forth length.

16. During the time of Bernstein employment with Bayrock, Bayrock unlawfully withheld compensation, made unlawful deductions from his compensation for expenses which were not properly chargeable to Bernstein and unlawfully failed to pay Bernstein benefits to which he was entitled.

17. The aforesaid conduct by Bayrock was unlawful and in violation of Labor Law Article 6.

18. The aforesaid conduct was willful.

19. Based upon the forgoing, Plaintiff is entitled to damages for violation of Labor Law Article 6, including treble damages and attorney fees pursuant to §198 of the Labor Law.

WHEREFORE, plaintiff demands judgment against defendant:

    (i) In respect of the first cause of action, for such damages as are established at the time of trial, but in no event less than $375,000.;

    (ii) In respect of the second cause of action, for such damages as are established at the time of trial, but in no event less than $10,000.;

    (iii) In respect of the third cause of action, for such damages as are established at the time of trial for violation of the Labor Law, including treble damages and attorneys fees.;

together with interest thereon as allowed by law and such at further relief as this court deems just and proper, including the costs and disbursements incurred herein.



IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JODY KRISS, for himself and derivatively on behalf of the Delaware limited liability companies Bayrock Spring Street LLC, and Bayrock Whitestone LLC, the Arizona limited liability company Bayrock Camelback LLC, the Florida limited liability companies Bayrock Merrimac LLC, and Bayrock Ocean Club LLC, and the New York limited liability company Bayrock Group LLC,<br><br>                      Plaintiff,<br><br>    v.<br><br>BAYROCK GROUP LLC; RIF INTERNATIONAL GROUP, INC.; TEVFIK ARIF; JULIUS SCHWARZ; MEL DOGAN; DOGAN & ASSOCIATES; 2027 EMMON AVE LLC; FELIX SATTER (aka FELIX SATER); VICTORIA SATER; ALEX SALOMON; ALEX SALOMON & CO., PC; JOSEPH BENCIVENGA; BUENA VISTA ALARGA LLC; BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; BAYROCK HOLDINGS LLC; BAYROCK NATURAL STONE LLC; BAYROCK SAPIR ORGANIZATION LLC; 246 SPRING STREET HOLDINGS II LLC; BAYROCK/SAPIR ORGANIZATION HOLDINGS LLC; BAYROCK/SAPIR ORGANIZATION REALTY LLC; 151-45 SIXTH ROAD WHITESTONE PARTNERS LLC; CAMELBACK DEVELOPMENT PARTNERS LLC; STILLMAN BAYROCK MERRIMAC LLC; SB HOTEL ASSOCIATES LLC; 550 SEABREEZE DEVELOPMENT LLC,<br><br>                      True Defendants,<br><br>    And<br><br>BAYROCK GROUP LLC; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK OCEAN CLUB LLC; BAYROCK SPRING STREET LLC,<br><br>                      Nominal Defendants. | C.A. No.:<br>4154-VCS |

## FINAL ORDER

IT IS HEREBY ORDERED, this 19th day of February, 2010 for the reasons set forth in the September 16, 2009 bench ruling of the Court, that:

1. As to all Defendants, all claims pled in the Complaint are dismissed without prejudice for lack of subject matter jurisdiction, pursuant to Court of Chancery Rule 12(b)(1).

2. As to all Non-Resident Defendants named in the Complaint as defined in the Bayrock Defendants' Opening Brief, all claims pled in the Complaint are dismissed without prejudice for lack of personal jurisdiction, pursuant to Court of Chancery Rule 12(b)(2).

3. As to the Resident Defendants named in the Complaint as defined in the Bayrock Defendants' Opening Brief, all claims pled in the Complaint are dismissed without prejudice for failure to join indispensible parties, pursuant to Rule 12(b)(7).

Plaintiff's Complaint is dismissed without prejudice, as opposed to with prejudice, solely so that the doctrine of *res judicata* does not preclude Plaintiff the opportunity to bring his claims before an arbitrator or, if certain claims are held not to be arbitrable, in a forum, such as the New York state courts, which can appropriately exercise jurisdiction over all Defendants and which is convenient. Of course, the reasons for dismissing this Complaint will retain their force into the future, and therefore an attempt by Plaintiff to bring these claims again in this Court will result in dismissal for the same reasons stated in the Court's bench ruling and which are summarized in this order.

/s/ Leo E. Strine, Jr.
Vice Chancellor



3/5/2010 Julius Schwarz Day 1

```
                                                          1
 1   SUPREME COURT OF THE STATE OF NEW YORK
 2   COUNTY OF WESTCHESTER
     ------------------------------------x
 3   JOSHUA BERNSTEIN,
 4                       Plaintiff,
 5        -against-
 6   BAYROCK GROUP LLC,
 7                       Defendant.
 8   Index No. 02579/09
     ------------------------------------x
 9
10
                         11 Martine Avenue
11                       White Plains, New York
12
                         March 5, 2010
13                       11:15 a.m.
14
15             Deposition of JULIUS R. SCHWARZ,
16   held at the Law Offices of Gerry E. Feinberg,
17   pursuant to court order, before Barbara
18   Driscoll, a Notary Public of the State of
19   New York.
20
21
22
23        ELLEN GRAUER COURT REPORTING CO. LLC
             126 East 56th Street, Fifth Floor
24              New York, New York 10022
                    212-750-6434
25                  Ref: 92828
```

3/5/2010 Julius Schwarz Day 1

```
 1   APPEARANCES:
 2
 3        GERRY E. FEINBERG, ESQ.
 4        Attorney for Plaintiff
 5             11 Martine Avenue
 6             White Plains, New York 10606-0134
 7                  and
 8        FREDERICK M. OBERLANDER, ESQ.
 9             28 Sycamore Lane
10             PO Box 1870
11             Montauk, New York 11954
12
13
14        AKERMAN SENTERFITT LLP
15        Attorneys for Defendant
16             335 Madison Avenue, Suite 2600
17             New York, New York 10017-4636
18        BY:  MARTIN DOMB, ESQ.
19
20
21        ALSO PRESENT:
22             Joshua Bernstein
23             Neil Pasmanik, Esq.
24
25
```

2

3/5/2010 Julius Schwarz Day 1

```
 1   ------------------- I N D E X -------------------
 2   WITNESS              EXAMINATION              PAGE
 3   JULIUS R. SCHWARZ    MR. OBERLANDER             6
 4
 5
 6   ---------------- E X H I B I T S ----------------
 7   PLAINTIFF'S    DESCRIPTION               FOR I.D.
 8   Exhibit 1      Employment agreement            20
 9   Exhibit 2      Employment agreement            21
10   Exhibit 3      Employment agreement of         46
11                  Jody Kriss signed and
12                  bearing witness signatures
13   Exhibit 4      Employment agreement of         52
14                  Felix Sater
15   Exhibit 5      Operating agreement of          58
16                  Bayrock Group LLC agreement
17   Exhibit 6      Employment agreement dated      81
18                  June 29, 2004 between
19                  Bayrock Group and Jody Kriss
20   Exhibit 7      Employment agreement dated      96
21                  May 17 between Bo Woodring
22                  and Bayrock Group LLC
23   Exhibit 8      Separation release and          98
24                  consulting agreement
25
```

3

3/5/2010 Julius Schwarz Day 1

```
 1   ----------- E X H I B I T S (Cont'd) ------------
 2   PLAINTIFF'S    DESCRIPTION               FOR I.D.
 3   Exhibit 9      Operating agreement of         104
 4                  Bayrock Camelback
 5   Exhibit 10     Loan agreement dated May       118
 6                  18, 2007
```

4

3/5/2010 Julius Schwarz Day 1

```
 1           S T I P U L A T I O N S
 2
 3           IT IS HEREBY STIPULATED AND AGREED, by
 4   and between the attorneys for the respective
 5   parties herein, that filing and sealing be and the
 6   same are hereby waived.
 7
 8           IT IS FURTHER STIPULATED AND AGREED
 9   that all objections, except as to the form of the
10   question, shall be reserved to the time
11   of the trial.
12
13           IT IS FURTHER STIPULATED AND AGREED
14   that the within deposition may be signed and sworn
15   to before any officer authorized to administer an
16   oath, with the same force and effect as if signed
17   and sworn to before the officer before whom the
18   within deposition was taken.
19
20
21
22
23
24
25
```

5

3/5/2010 Julius Schwarz Day 1

```
 1   J U L I U S   R.  S C H W A R Z,
 2        called as a witness, having been first
 3        duly sworn by the Notary Public (Barbara
 4        Driscoll), was examined and testified as
 5        follows:
 6   EXAMINATION BY
 7   MR. OBERLANDER:
 8        Q.    Please state your name.
 9        A.    Julius R. Schwarz.
10        Q.    Please state your home address.
11        A.    22 Dogwood Lane, Tenafly, New Jersey
12   07670.
13             MR. DOMB:  Mr. Bernstein, are you
14        recording this?
15             MR. OBERLANDER:  Everything is on the
16        record.
17             MR. DOMB:  I am asking --
18             MR. OBERLANDER:  Are you asking me?  I
19        said no, I am not recording it.
20             MR. FEINBERG:  Josh has a phone sitting
21        on the desk, so he is asking if you're
22        recording it.  Are you recording it?
23             MR. BERNSTEIN:  Should I?
24             MR. DOMB:  I want to make sure.  We
25        have one official record and that is the court
```

6

3/5/2010 Julius Schwarz Day 1

```
 1                     SCHWARZ
 2        reporter.
 3             MR. OBERLANDER:  Are you objecting if
 4        he is --
 5             MR. DOMB:  I asked a question.  Just
 6        start your deposition.
 7             MR. OBERLANDER:  I assure you I am not
 8        recording it.
 9        Q.    Mr. Schwarz, would you mind
10   occasionally if I call you Julius?  Would you find
11   that offensive in any way?
12        A.    Not at all.
13        Q.    My name is Fred Oberlander, I represent
14   Mr. Bernstein.  This is a deposition.  You know
15   you're under oath.  You have just been sworn in.
16             Have you ever given a deposition before
17   in any civil action?
18        A.    Yes.
19        Q.    Are you generally familiar; for
20   example, do you understand that if there is any
21   question that you don't understand all or part of,
22   you have to say so out loud?  I don't want you to
23   answer a question unless you're sure you
24   understand it and I won't be able to tell from
25   gestures, so you have to say out loud, I don't
```

7

3/5/2010 Julius Schwarz Day 1

```
 1                     SCHWARZ
 2   understand or some other words of your choice.
 3        A.    I understand.
 4        Q.    Are you on any kind of medication that
 5   might interfere with your ability to answer and
 6   process the information to the best of your
 7   ability?
 8        A.    No.
 9        Q.    Did you prepare for this deposition by
10   reviewing any documents?
11        A.    I reviewed some e-mails yesterday.
12        Q.    Did you discuss the deposition before
13   now with your attorney or any attorney appearing
14   here or representing you?
15        A.    Yes.
16        Q.    Did you discuss it with anybody else
17   other than an attorney?
18        A.    I told my wife I was having --
19        Q.    No.  I mean discuss the substance or
20   anything that you plan to say or do?
21        A.    No.
22        Q.    Did you bring anything with you today
23   in response to any request to produce any
24   documents?
25        A.    I wasn't aware of any request --
```

8

3/5/2010 Julius Schwarz Day 1

```
1                    SCHWARZ
2    interest.  It is on the front page.  Please look
3    at that at the bottom.  This is Exhibit 2.
4         A.   Yes.  I see the name membership
5    interest in paragraph 5.
6         Q.   When you use the term economic
7    interest, do you mean what membership interest
8    means there or something different?
9         A.   I mean the understanding was we were
10   receiving economic interests and Mr. Arif would
11   control his company.
12        Q.   The understanding between who?
13        A.   The understanding between Mr. Arif and
14   myself, Mr. Kriss, Mr. Sater.
15        Q.   How do you know what Mr. Arif
16   understood?
17        A.   We had discussions.
18        Q.   How do you know what Mr. Kriss
19   understood?
20        A.   We had discussions.
21        Q.   How do you know what Mr. Sater
22   understood?
23        A.   We had discussions.
24        Q.   Did Mr. Sater have an employment
25   agreement with the company?
```

41

3/5/2010 Julius Schwarz Day 1

```
1                    SCHWARZ
2         A.   He did.
3         Q.   Did you draft part of it?
4         A.   Yes.
5         Q.   Did Mr. Kriss have an employment
6    agreement?
7         A.   Yes.
8         Q.   Did you draft part of that?
9         A.   Yes.
10             MR. OBERLANDER:  Off the record.
11             (Discussion off the record.)
12        Q.   In your capacity as executive vice
13   president, what authority did you have to bind the
14   company?
15        A.   I had authority to sign for the company
16   on transactional matters.
17        Q.   Was there a dollar limit?
18             MR. DOMB:  Did you finish your answer?
19             MR. OBERLANDER:  I thought he was done.
20             THE WITNESS:  I finished.
21        Q.   Was there a dollar limit?
22        A.   Under the resolution that gave me that
23   authority, I do not believe I did.  I don't
24   believe there was a dollar limit.
25        Q.   Beyond signing for things, what other
```

42

3/5/2010 Julius Schwarz Day 1

```
1                    SCHWARZ
2    commitments could you make?  Could you enter into
3    contracts that called for other performance in the
4    payment of money?
5         A.   There were limitations.  I don't
6    remember exactly.  Some of them were -- one
7    limitation was employee compensation.
8         Q.   What was that limitation?
9         A.   That was in the resolution giving me
10   the power.
11        Q.   But was the limitation that you could
12   hire -- you could not?
13        A.   I could not.
14        Q.   Could you fire?
15        A.   I believe I could, yes.
16        Q.   Jody Kriss, what authority did he have
17   in the company, by which I mean the same as I just
18   asked you?
19        A.   I would say during his term of
20   employment, it was the same because it was
21   pursuant to the same resolution.
22        Q.   So he couldn't hire?
23        A.   I don't recall if -- I believe you
24   needed -- yes.  I believe consent was required to
25   hire and to change compensation of employees.
```

43

3/5/2010 Julius Schwarz Day 1

```
1                    SCHWARZ
2         Q.   Consent of who?
3         A.   Consent would be of Mr. Arif.
4         Q.   You earlier testified that when you
5    came to Bayrock, that Jody Kriss was senior vice
6    president?
7         A.   Yes, to my knowledge.
8         Q.   To your knowledge, did he retain that
9    position during the course of his work there?
10        A.   Once I started, I believe his title was
11   director of finance.
12             I also believe he did sign as senior
13   vice president.  I don't recall if it was -- I
14   believe he was senior vice president and director
15   of finance during the entire period.
16        Q.   Felix Sater, was Felix Sater ever
17   employed by Bayrock Group LLC?
18        A.   Yes.
19        Q.   In what capacity?
20        A.   He was tasked with trying to source
21   deals and transactions.
22        Q.   Did he have a title?
23        A.   No.
24        Q.   We can break if you need to take a
25   phone call.
```

44