# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000    Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

———

www.wilsonelser.com

June 24, 2010

**Via Facsimile Under Seal – (718) 613-2446
And Via Federal Express**

RECEIVED
6/28/10
Chambers of
I. Leo Glasser
U.S.D.J.

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> Re:    **United States of America v. Felix Sater**
> **Case No.**            :        **98CR1101 (ILG)**
> **Our File No.**        :        **07765.00155**

Dear Judge Glasser:

In behalf of non-party respondent Frederick M. Oberlander, I am forwarding the following documents:

**A.** The motion for a sealing order filed in the matter of *Kriss, et al. v. Bayrock Group LLC, et al.*

**B.** Email from Felix Sater to Josh Bernstein's personal email account on October 3, 2008, which states, albeit ungrammatically, "I am in Russia so am not sure how to influence events with Julius. But I will try. Please remind me on Monday. I will call him and try to get him to allow access for you into Bayrock. Josh you had downloaded all emails on to a hard drive I ask you to get I would like to get that please." I believe that with punctuation, and without typos, the critical sentence would read as follows: "Josh, you had downloaded all emails on to a hard drive [that] I ask[ed] you to get. I would like to get that [back] please."

**C.** Cover page of deposition in matter of *Bernstein v. Bayrock Group*, and pages 194-195, wherein Mr. Bernstein testified as follows:

> *Q.* Did you ever download portions of the hard drive?
>
> *A.* I believe so.
>
> *Q.* Could you explain that when, how, what did you download, for what purpose?

A. At the direction of Felix Satter I downloaded regularly files from that hard drive and the server.

Q. What drives, what files? ...

Q. What directions did Felix give you as far as --

A. **To keep them offsite** [*i.e.*, in Bernstein's home], an archival copy as much of the server as I could. This was on or about December 17, 2007, I think well before, when he was afraid that the firm was going to screw him, that he wouldn't be able, you know, to make his profits of his half of the ownership of the firm.

Q. And did you follow his instructions?

A. Yes. (Emphasis added).

Additionally, at page 224, Mr. Bernstein testified that he indiscriminately backed up files from December 2007 until the end of his employment in September 2008.

D. Screenshots of the "meta-data" concerning the documents at issue in this proceeding. It has occurred to me that the electronic files of the documents have information as to when exactly they were created. By opening each PDF file, and then clicking on "FILE" and then on "PROPERTIES," I was able to ascertain when exactly these PDF files were created. The screenshots show that the documents were created on a Toshiba e-Studio 352 scanner on December 26th and 27th, 2007; *i.e.*, within days of when Sater instructed Bernstein to archive all of the documents, and obviously well before Mr. Oberlander was retained to represent Mr. Bernstein at his deposition. I have also enclosed a photograph of a Toshiba e-Studio 352 scanner, so that the Court will see that this is not the type of scanner that would ordinarily be kept in one's home.

E. Business Week article by Gary Weiss,[1] dated November 9, 1998, and publicly available to this day on the internet. The article, entitled "The Case of the Gym Bag that Squealed," discusses this very criminal case against Felix Sater, and states, "According to a **sealed** criminal complaint filed with the U.S. District Court in Brooklyn **and obtained by BUSINESS WEEK**, the FBI maintains that the mini-storage document trove sets forth a tale of stock manipulation and money laundering." (Emphasis added) The article continues: "The feds are charging that the stock scheme involves two individuals -- Genady "Gene" Klotsman and Felix Sater -- who they say ran a now defunct micro-cap brokerage, White Rock Partners & Co. ...."

\* \* \*

This last item is obviously the most important. As will be addressed in the further letter briefing on this case, it is Mr. Oberlander's position that his First Amendment rights are as

---

[1] An internet search reveals that Mr. Weiss is now an independent author of books regarding organized crime and RICO. His titles include: *"Wall Street Versus America: A Muckraking Look at the Thieves, Fakers, and Charlatans Who Are Ripping You Off,"* and *"Born to Steal: When the Mafia Hit Wall Street."*

strong, if not stronger, than Business Week's and Mr. Weiss's. Moreover, it is thus Mr. Oberlander's position that, if he is to be subjected to a gag order, or to an order directing the return of the *U.S. v. Sater* complaint and other documents that are purportedly protected by a sealing order (which Mr. Oberlander has never seen), then this Court must also subject Business Week and Mr. Weiss to the same order, directing them to return of the "sealed" complaint, and directing that the article be purged from the Business Week website.

As the Court will recall, at the hearing on June 21st, the Court broadened the scope of the the TRO to include the criminal complaint in this matter. Moreover, page 2 of the order to show cause states, "**ORDERED**, that pending said hearing, Messrs. Kriss, Ejekam and Oberlander and ... *all other persons* who have obtained the Sealed and Confidential Materials, are restrained and enjoined from disseminating the Sealed and Confidential Materials or information therein further[.]" (Emphasis added).

It is Mr. Oberlander's position that, by the express terms of the order to show cause, this OTSC must now be directed to Business Week and Mr. Weiss, as they are "other persons who have obtained the Sealed and Confidential Materials." And if the Court is to direct Mr. Oberlander to return such documents, then it must also direct Business Week to remove the aforementioned article from its website. In sum, Mr. Oberlander must be treated equally, and he must be allowed to use the information as he sees fit, in accordance with his First Amendment rights, just as Business Week can. Or Business Week and Mr. Weiss must be questioned just as Mr. Oberlander was.

One would presume that if Business Week and Mr. Weiss came into possession of the "sealed" complaint in the *U.S. v. Sater* matter in 1998, the Court conducted the same type of inquiry that it is now undertaking with respect to Mr. Oberlander. Accordingly, Mr. Oberlander now requests a copy of the complete docket sheet, so that he may ascertain whether there was any motion practice in 1998 against Business Week and Mr. Weiss which may have some collateral-estoppel consequences as to the issues raised herein. If no inquiry was conducted in 1998 as to how Business Week and Mr. Weiss came into possession of the "sealed" complaint, then Mr. Oberlander expects that the Court will now undertake that inquiry. This court should also inquire of the United States Attorney's office whether it leaked the "sealed" complaint to Business Week and Mr. Weiss.

Mr. Oberlander believes that, as these proceedings are not yet closed, it would be appropriate for the court to direct Business Week and Mr. Weiss to testify, just as Mr. Oberlander was directed to testify. Mr. Oberlander believes that they should be made non-party respondents to these proceedings.

These issues will be addressed further in response to Ms. Moore's letter brief to the court.

Respectfully yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard E. Lerner

cc: **Via E-Mail (With All Enclosures)**

Kelly Moore, Esq.
Brian Herman, Esq.
David Snider, Esq.
Thomas W. Hyland, Esq.
Lauren J. Rocklin, Esq.
Stamatios Stamoulis, Esq.
Todd Kaminsky, Esq. – US Attorney's Office
Marshall Miller, Esq. – US Attorney's Office
Frederick M. Oberlander, Esq.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NY**

JODY KRISS and MICHAEL EJEKAM, directly and derivatively on behalf of
BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; and
BAYROCK WHITESTONE LLC;

                  Plaintiffs,

       v.

BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ;
FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA;
ALEX SALOMON; JERRY WEINRICH; SALOMON & COMPANY PC;
AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN;
DUVAL & STACHENFELD LLP; BRUCE STACHENFELD;
DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT;
ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL;
MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100;
BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC:
BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.; and
NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;

                Defendants

        and

BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC, and
BAYROCK WHITESTONE LLC

                Nominal Defendants (Derivative Plaintiffs)

**VERIFIED**
**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

## ORDER TO SEAL COMPLAINT

The Complaint, and any amendments filed thereto, are ORDERED sealed, not to be disclosed

to the public physically or by any other means, electronically or otherwise, until Plaintiffs

and Defendants have had opportunity to arrange for permanent orders of redaction and such

other protective orders as the presiding judge shall deem just and proper.

 

March 10, 2010

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NY

JODY KRISS and MICHAEL EJEKAM, directly and derivatively on behalf of
BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; and
BAYROCK WHITESTONE LLC;

          Plaintiffs,

      v.

BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ;
FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA;
ALEX SALOMON; JERRY WEINRICH; SALOMON & COMPANY PC;
AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN;
DUVAL & STACHENFELD LLP; BRUCE STACHENFELD;
DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT;
ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL;
MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100;
BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC:
BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.; and
NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;

          Defendants

     and

BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC, and
BAYROCK WHITESTONE LLC

          Nominal Defendants (Derivative Plaintiffs)

**VERIFIED
COMPLAINT**

**JURY TRIAL
DEMANDED**

**Plaintiffs** Jody Kriss ("Kriss") and Michael Ejekam ("Ejekam"), through their counsel, allege:

## EX PARTE MOTION TO FILE COMPLAINT UNDER SEAL

Petitioners JODY KRISS and MICHAEL EJEKAM ("Petitioners"), by their

undersigned attorney, hereby respectfully submit this *Ex Parte* Motion to File Complaint

Under Seal.

## NECESSITY OF PRIVACY

The Verified Complaint asserts claims in RICO, 18 USC §1962(c), predicated on a great

many acts of financial fraud committed through certain Defendants' operation of Bayrock

Group LLC over many years. The requirements of *Bell Atlantic* fact pleading and this Circuit's standards for Rule 9(b) required extremely detailed allegations of the underlying facts, such allegations not suited for placement in Exhibits. The Complaint contains private and confidential information including the personal tax and financial information of innocent partners in the RICO enterprise and the enterprise itself, also a victim. This is in part a derivative action and the victim enterprise may be caused grave injury by the public disclosure of this information.

Finally, there are emails and other communications for which Defendants may claim privilege. While Plaintiff Kriss has the standing as a member of the relevant limited liability companies to waive any privilege, both by his plenary agency authority and his *Garner* privileges, and Plaintiffs are confident any privilege that might have ever attached was long since waived or vitiated by, *inter alia*, crime fraud exception, nevertheless Defendants should have some opportunity to make arrangements for the redaction of this material.

Consequently, Plaintiffs request this Court order this Complaint, and any amendments thereto, be kept sealed and not disclosed to any person by any means, electronic or otherwise, until such time as both Plaintiffs and Defendants may be able to make arrangements with the presiding judge for the redaction of such private or confidential or possibly privileged material.

## APPLICABLE LAW

While there is a presumption of public access to "judicial documents" -- *i.,e.,* documents filed with the court that are "relevant to the performance of the judicial function and useful in the judicial process"-- that presumption is rebuttable. *United States v. Amodeo,*

2

44 F.3d 141, 145 (2d Cir. 1995). The Second Circuit has enumerated the steps a district court must take when deciding whether documents may be removed from public access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Under the Second Circuit's framework, after determining that the papers at issue are, indeed, "judicial documents," the Court must assess the weight to be given to the presumption in favor of public access to such documents. *Id.* at 119. The Court then must balance the competing considerations supporting confidentiality against the presumption of access, which may include, *inter alia*, "the privacy interests of those resisting disclosure." *Id.* at 120 (*quoting Amodeo*, 71 F.3d at 1050) (internal quotation marks omitted).

## ARGUMENT

The privacy interests of the Petitioner and Respondent should be accorded greater weight than the rebuttable presumption of open access. The Complaint contain information of a highly confidential and sensitive nature, relating, *e.g.*, to proprietary business matters such as salaries, personal tax information of many individuals and confidential business strategies, the public dissemination of which would be detrimental to both Petitioner and Respondent.

Further, many of the exhibits to the Complaint (as well as the discussion of those exhibits in the Complaint) are subject to confidentiality agreements. When considering whether to seal documents submitted in connection with a confirmation proceeding, the Second Circuit has shown deference to parties' confidentiality agreements. *See, e.g., DiRussa v. Dean Witter Reynolds*, 121 F.3d 818, 825 (2d Cir. 1997) ("sealing the file" where "a confidentiality agreement entered into by the parties during the discovery phase of the arbitration required that the papers ... submitted to the district court be placed under seal.")

3

*c.f. Lugosch,* 435 F.3d at 126.

The public release of the confidential information contained in the Complaint and the attendant exhibits potentially could cause serious harm to the future business dealings of both Parties and would be contrary to their reasonable expectations of confidentiality.

WHEREFORE, the Petitioner hereby moves this honorable Court to grant this *Ex Parte* Motion to File the Complaint Under Seal.

Dated: March 10, 2010

Respectfully submitted,

_____

Frederick M. Oberlander
Counsel for Plaintiffs
P.O. Box 1870
Montauk, NY 11954
212.826.0357 Tel.
212.202.7624 Fax
fred55@aol.com





Josh B <joshsemail@gmail.com>

# Follow up

**Felix Satter <FS@bayrockgroup.com>**                              **Fri, Oct 3, 2008 at 4:12 AM**
To: joshsemail@gmail.com

I am in Russia so I am not sure how to influence events with Julius. But I will try. Please remind me on Monday. I will
call him and try to get him to allow access for you into Bayrock. Josh you had downloaded all emails on to a hard
drive I ask you to get I would like to get that please.
Regarding expenses I did not see the Laguna email. Please resend ( what deal was that on?)
I am in Russia and will probably be here for a while so its hard to reach me but despite that I do check my voicemail
and have not heard any messagges from you. Feel free to call, but please be mindful of time difference.
I have an opportunity regarding Grand Hyatt Moscow if you are interested please call me this weekend to discuss.
I don't want to sound like an asshole, but (I love that usually that's exactly when someones sounds like an asshole), I
do not need your help you will not be making me any money, that I can't make more of without you (simply because I
don't have to cut anyone in on it, yourself included). I am offering you an opportunity to make money on a deal I have
already and will make money on (wether you help or not). If you are not working yet it could be a fast deal and a
few sheckels. The only commission agreement you will get signed is an entity that is worthless. It is completely on
my word only. If you believe I know how to get paid AND that in the event I get paid that I would honor our
agreement then we are good to go. That is the only way I am going to work with you.  Trust me or no go. If its no I
respect that but don't want to hear why. In the interests of time.

Thanks hope to speak to you this weekend.
You can call my 917-604-2000 or
+79852310002 (moscow cell)

[Quoted text hidden]

1

2 SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF WESTCHESTER

3 - - - - - - - - - - - - - - - - - - X

JOSHUA BERNSTEIN,

4                   Plaintiff,

5         - against -         Index No:

                           02579/09

6 BAYROCK GROUP, LLC,

                  Defendant.

7 - - - - - - - - - - - - - - - - - - X

8

                  11 Martine Avenue

9                   White Plains, New York

10                  March 8, 2010

                  10:04 a.m.

11

12

13            EXAMINATION BEFORE TRIAL OF

14 JOSHUA BERNSTEIN, the Plaintiff herein,

15 taken by an attorney for the Defendant,

16 pursuant to Notice and Order, held at the

17 above place and time before Apryl S.

18 Montero, a Stenotype Reporter and Notary

19 Public within and for the State of New

20 York.

21          *     *     *     *

22

23

24