# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000   Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

June 13, 2010

### VIA FACIMILE UNDER SEAL – (718) 613-2446

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> Re:  **United States of America v. Felix Sater**
>      Case No.        :   **98CR1101 (ILG)**
>      **Our File No.** :   **07765.00155**

Dear Judge Glasser:

We represent non-party respondent Frederick M. Oberlander. By email today, I was informed by Stamatios Stamoulis, counsel for non-party respondents Kriss and Ejekam, of the following:

Mr. Stamoulis spoke today with Kelly Moore, counsel for Mr. Sater. She advised there has been a federal prosecutor observing the hearing in this matter, who will attend again on Monday, and that "someone may be indicted here." Given this report of an ongoing criminal investigation, we advised our client to retain criminal defense counsel, and not testify at the hearing scheduled for noon Monday. We expect he will exercise his Fifth Amendment rights.

Because of the seal order on this proceeding, the federal prosecutor(s) could only be conducting this observation and investigation because Ms. Moore reported it to them pursuant to a provision she placed in the Order to Show Cause ordering that she do so.

We ask that the Court inquire of Ms. Moore – a former federal prosecutor – how it is that this happened, what she knows of the investigation, why she knows it, and how she could ethically state that federal prosecutors are watching and investigating, an implicit if not explicit threat, and then, in the same phone call, offer a settlement proposal as follows:

1. Return the documents.

2. Scrub any mention of them from the complaint.

3. Provide an affidavit how they were obtained and to whom they were distributed.

4. Provide a declaration from anyone who got them they will return or destroy all copies.

5. Fees for the motion.

4028404.1

\* \* \*

In any event, we respectfully request the Court reconsider its finding that a *prima facie* showing has already been made out, warranting that Mr. Oberlander testify. In this regard, we request that the Court note the following:

Federal Rule of Civil Procedure 65(d) provides that no person may be enjoined or restrained by a federal court unless he has received due notice of the order:

> FRCP 65(d) Contents and Scope of Every Injunction and Restraining Order.
>
> (1) *Contents.* Every order granting an injunction and every restraining order must:
>
> (A) state the reasons why it issued;
>
> (B) state its terms specifically; and
>
> (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.
>
> (2) *Persons Bound.* **The order binds only the following who receive actual notice of it by personal service or otherwise:**
>
> (A) the parties;
>
> (B) the parties' officers, agents, servants, employees, and attorneys; and
>
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B). (Emphasis added).

Most respectfully, we must refer the court to the Second Circuit's decision *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, at 832-833 (2d Cir. 1930), wherein the court stated:

> [N]o court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its degree. If it assumes to do so, the decree is *pro tanto brutum fulmen*, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court. Thus, the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has power to forbid, an act of a party. This means that the respondent must either abet the defendant, or must be legally identified with him....

\* \* \*

We further request that the court note what happened in *United States v. Charmer Industries*, 711 F.2d 1164 (1983), after remand. Your Honor will recall that the court personnel and probation service – who were subject to the district court's sealing order, *in personam* –

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
4028404.1

improperly disclosed documents to the Arizona Attorney General. The Second Circuit remanded the matter to the district court "for entry of an injunctive order requiring the Arizona AG to return [the documents] and all copies and extracts made of it, prohibiting his publication or other use of any portion of [the document] that is not already publically available...." That decision was dated June 28, 1983. A few days later, July 5th, the Arizona AG released documents to the local press which contained information derived from the presentence investigation report. This made the front page of the local metropolitan newspaper, repeating the information contained in the presentence report, specifically that the subject in question was accused of ties to the Colombo crime family in a New York presentence investigation report. The target then moved to hold the Arizona AG in civil and criminal contempt, whereupon and it was found that the information was released to the press prior to the Second Circuit's issuance of its order, and that Arizona AG's agreement at oral argument to not release the document pending the court's determination of the appeal was not so clear that it could be held that release of the information derived from the document was violative of an order even if – as was determined not the case – her agreement at oral argument not to release it had been deemed an order.

In the accompanying further declaration of Mr. Oberlander, whose former client has now waived his attorney-client privilege to the extent that Mr. Oblerlander may state how he came into possession of the documents at issue, Mr. Oberlander states that they were given to him by that former client, Mr. Joshua Bernstein. On the dates that Mr. Bernstein gave them to Mr. Oberlander, March 1st and 3rd, 2010, there was no order enjoining Mr. Bernstein from doing so. Moreover, there is nothing in the documents themselves – which I have now reviewed – which states or refers to any order stating that anyone who comes into possession of them must treat them as a state secret or is enjoined from or ordered to do any thing. As *Alemite* states, even if there had been such an order, it would have been *pro tanto brutum fulmen*, and Mr. Bernstein and Mr. Oberlander free to ignore it.

\* \* \*

We trust that by this letter the Court understands that Mr. Oberlander will stand on his due-process right to see the order that he is charged with violating as well as the facts and circumstances surrounding its issue, including without limitation the public notice and findings justifying the order.

However, in light of the authority cited above, we ask the Court to recognize that – though it obviously feels that there has been an affront to its authority – there has been no violation of any order by Mr. Oberlander. At least there has been no *prima facie* showing of a violation, inasmuch as there is no order that he has ever seen that has been served on or directed to him, and no affidavit from Mr. Sater that rebuts anything that Mr. Oblerlander has said.

As a result, Mr. Oberlander's testimony now stands uncontroverted that he obtained these documents lawfully from Mr. Bernstein, with no knowledge or cause to believe that Mr. Bernstein did not, as stated, receive them from Mr. Sater, and thus in the absence of an affidavit from Mr. Sater denying such, there is no prima facie showing of entitlement to relief, as there is no order to point to and no evidence Mr. Oberlander obtained them from this court in any event.

\* \* \*

In light of the above, and the threat that has been received today, we respectfully request an adjournment so that Mr. Obelander may consult with a criminal defense attorney.

Respectfully yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

/s/

Richard E. Lerner

Enclosure: Further declaration of Frederick M. Oberlander, dated June 13, 2009

cc: Kelly Moore, Esq.
Stamatios Stamoulis, Esq.
Frederick M. Oberlander, Esq.

Case 1:98-cr-01101-LGD Document 68-3 SEALED 7/19/10 Page 4 of Page 4 of 12 PageID

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,

               Plaintiff,

  - against -

FELIX SATER,

               Defendant.
------------------------------------------------------------ x
FRED M. OBERLANDER, ESQ.,

               Non-Party Respondent.
------------------------------------------------------------ x

98 CR 1101 (ILG)

FILED UNDER SEAL

**Further Declaration of Frederick M. Oberlander**

I, Frederick M. Oberlander, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I submit this further declaration in opposition to the order to show cause that has been filed seeking the return of certain "Sealed and Confidential" [sic] documents (the "Documents") regarding Felix Sater. In my prior declaration, I stated that there was certain information that I could not set forth, due to attorney-client privilege. After the proceedings on June 11th, I spoke with the (former) client referred to in my prior declaration and obtained from him a limited waiver of the attorney-client privilege. The client has allowed me to identify him and to state when and how I came into possession of the Documents.

2. The client who gave me the documents is Joshua Bernstein. Mr. Bernstein retained me to assist him in preparing for, and defending him at, a deposition in the matter of *Bernstein v. Bayrock Group LLC*. He is no longer a client.

3. Preparation of Mr. Bernstein for his deposition took place at his apartment from about 7.00pm Sunday, February 28, 2010, to about 1.00am in the morning of March 1st. It was

4028390.1

at 12:45am on March 1st, when we were wrapping up the deposition preparation session, that Mr. Bernstein handed me the documents in hard copy form.

4. I had no reason, and have no reason, to believe Mr. Bernstein stole the Documents from Mr. Sater or otherwise obtained them unlawfully. To the contrary, I was told that *Mr. Sater had given them, and other documents, to him.* Mr. Bernstein also told me at the time that Sater had admitted his conviction to him.

5. On March 3rd, at 10:37 am, Mr. Bernstein sent the Documents in electronic form via email to me, and by the same email to his father Arnold Bernstein and Mr. Gerry Feinberg. Both of them are also attorneys and were representing him in the Bayrock matter and helping prepare for his deposition; Mr. Feinberg was attorney of record.

6. Though not germane to how I came into possession of the Documents, I will also add that it is my understanding that Mr. Bernstein was an analyst for Bayrock Group LLC, and that the Documents were never part of the ordinary business records of Bayrock Group LLC.

Dated: New York, New York
June 13, 2010

_____
Frederick M. Oberlander

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000   Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean*
*Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains*
*Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

June 21, 2010

**VIA FACIMILE UNDER SEAL** – (718) 613-2446

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> Re:  United States of America v. Felix Sater
> Case No.        :   98CR1101 (ILG)
> Our File No.    :   07765.00155

Dear Judge Glasser:

We represent non-party respondent Frederick M. Oberlander.

I am hereby forwarding for in camera review the email from Joshua Bernstein to Mr. Oberlander dated March 3, 2010, which Mr. Oberlander forwarded to me on June 13th.

Mr. Bernstein's email attached six PDF files. (Please note, however, that the proffer agreement was included twice in the attachments. So there were really only five attachments.) I am enclosing a printout of only the first page of each of the PDF attachments, as I believe that this will suffice for the court to be able to identify them. Should the court wish to be forwarded a complete copy of each of the attachments, I will of course do so.

Respectfully yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard E. Lerner

4036260.1

cc: **Via E-Mail (Without Enclosures)**

Kelly Moore, Esq.
Brian Herman, Esq.
David Snider, Esq.
Thomas W. Hyland, Esq.
Lauren J. Rocklin, Esq.
Stamatios Stamoulis, Esq.
Todd Kaminsky, Esq. – US Attorney's Office
Marshall Miller, Esq. – US Attorney's Office
Frederick M. Oberlander, Esq.

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000    Fax: 212.490.3038

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean
Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

June 24, 2010

**Via Facsimile Under Seal – (718) 613-2446
And Via Federal Express**

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

> Re:   United States of America v. Felix Sater
>       Case No.       :   98CR1101 (ILG)
>       Our File No.   :   07765.00155

Dear Judge Glasser:

In behalf of non-party respondent Frederick M. Oberlander, I am forwarding the following documents:

A. The motion for a sealing order filed in the matter of *Kriss, et al. v. Bayrock Group LLC, et al.*

B. Email from Felix Sater to Josh Bernstein's personal email account on October 3, 2008, which states, albeit ungrammatically, "I am in Russia so am not sure how to influence events with Julius. But I will try. Please remind me on Monday. I will call him and try to get him to allow access for you into Bayrock. Josh you had downloaded all emails on to a hard drive I ask you to get I would like to get that please." I believe that with punctuation, and without typos, the critical sentence would read as follows: "Josh, you had downloaded all emails on to a hard drive [that] I ask[ed] you to get. I would like to get that [back] please."

C. Cover page of deposition in matter of *Bernstein v. Bayrock Group*, and pages 194-195, wherein Mr. Bernstein testified as follows:

*Q.* Did you ever download portions of the hard drive?

*A.* I believe so.

*Q.* Could you explain that when, how, what did you download, for what purpose?

4039314.1

> *A.* At the direction of Felix Satter I downloaded regularly files from that hard drive and the server.
>
> *Q.* What drives, what files? ...
>
> *Q.* What directions did Felix give you as far as --
>
> *A.* **To keep them offsite** [*i.e.*, in Bernstein's home], an archival copy as much of the server as I could. This was on or about December 17, 2007, I think well before, when he was afraid that the firm was going to screw him, that he wouldn't be able, you know, to make his profits of his half of the ownership of the firm.
>
> *Q.* And did you follow his instructions?
>
> *A.* Yes. (Emphasis added).

Additionally, at page 224, Mr. Bernstein testified that he indiscriminately backed up files from December 2007 until the end of his employment in September 2008.

**D.** Screenshots of the "meta-data" concerning the documents at issue in this proceeding. It has occurred to me that the electronic files of the documents have information as to when exactly they were created. By opening each PDF file, and then clicking on "FILE" and then on "PROPERTIES," I was able to ascertain when exactly these PDF files were created. The screenshots show that the documents were created on a Toshiba e-Studio 352 scanner on December 26th and 27th, 2007; *i.e.*, within days of when Sater instructed Bernstein to archive all of the documents, and obviously well before Mr. Oberlander was retained to represent Mr. Bernstein at his deposition. I have also enclosed a photograph of a Toshiba e-Studio 352 scanner, so that the Court will see that this is not the type of scanner that would ordinarily be kept in one's home.

**E.** Business Week article by Gary Weiss,[1] dated November 9, 1998, and publicly available to this day on the internet. The article, entitled "The Case of the Gym Bag that Squealed," discusses this very criminal case against Felix Sater, and states, "According to a **sealed** criminal complaint filed with the U.S. District Court in Brooklyn **and obtained by BUSINESS WEEK**, the FBI maintains that the mini-storage document trove sets forth a tale of stock manipulation and money laundering." (Emphasis added) The article continues: "The feds are charging that the stock scheme involves two individuals -- Genady "Gene" Klotsman and Felix Sater -- who they say ran a now defunct micro-cap brokerage, White Rock Partners & Co. ...."

\* \* \*

This last item is obviously the most important. As will be addressed in the further letter briefing on this case, it is Mr. Oberlander's position that his First Amendment rights are as

---

[1] An internet search reveals that Mr. Weiss is now an independent author of books regarding organized crime and RICO. His titles include: *"Wall Street Versus America: A Muckraking Look at the Thieves, Fakers, and Charlatans Who Are Ripping You Off,"* and *"Born to Steal: When the Mafia Hit Wall Street."*

strong, if not stronger, than Business Week's and Mr. Weiss's. Moreover, it is thus Mr. Oberlander's position that, if he is to be subjected to a gag order, or to an order directing the return of the *U.S. v. Sater* complaint and other documents that are purportedly protected by a sealing order (which Mr. Oberlander has never seen), then this Court must also subject Business Week and Mr. Weiss to the same order, directing them to return of the "sealed" complaint, and directing that the article be purged from the Business Week website.

As the Court will recall, at the hearing on June 21st, the Court broadened the scope of the the TRO to include the criminal complaint in this matter. Moreover, page 2 of the order to show cause states, "**ORDERED**, that pending said hearing, Messrs. Kriss, Ejekam and Oberlander and ... *all other persons* who have obtained the Sealed and Confidential Materials, are restrained and enjoined from disseminating the Sealed and Confidential Materials or information therein further[.]" (Emphasis added).

It is Mr. Oberlander's position that, by the express terms of the order to show cause, this OTSC must now be directed to Business Week and Mr. Weiss, as they are "other persons who have obtained the Sealed and Confidential Materials." And if the Court is to direct Mr. Oberlander to return such documents, then it must also direct Business Week to remove the aforementioned article from its website. In sum, Mr. Oberlander must be treated equally, and he must be allowed to use the information as he sees fit, in accordance with his First Amendment rights, just as Business Week can. Or Business Week and Mr. Weiss must be questioned just as Mr. Oberlander was.

One would presume that if Business Week and Mr. Weiss came into possession of the "sealed" complaint in the *U.S. v. Sater* matter in 1998, the Court conducted the same type of inquiry that it is now undertaking with respect to Mr. Oberlander. Accordingly, Mr. Oberlander now requests a copy of the complete docket sheet, so that he may ascertain whether there was any motion practice in 1998 against Business Week and Mr. Weiss which may have some collateral-estoppel consequences as to the issues raised herein. If no inquiry was conducted in 1998 as to how Business Week and Mr. Weiss came into possession of the "sealed" complaint, then Mr. Oberlander expects that the Court will now undertake that inquiry. This court should also inquire of the United States Attorney's office whether it leaked the "sealed" complaint to Business Week and Mr. Weiss.

Mr. Oberlander believes that, as these proceedings are not yet closed, it would be appropriate for the court to direct Business Week and Mr. Weiss to testify, just as Mr. Oberlander was directed to testify. Mr. Oberlander believes that they should be made non-party respondents to these proceedings.

These issues will be addressed further in response to Ms. Moore's letter brief to the court.

Respectfully yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

/s/
Richard E. Lerner

cc: **Via E-Mail (With All Enclosures)**

    Kelly Moore, Esq.
    Brian Herman, Esq.
    David Snider, Esq.
    Thomas W. Hyland, Esq.
    Lauren J. Rocklin, Esq.
    Stamatios Stamoulis, Esq.
    Todd Kaminsky, Esq. – US Attorney's Office
    Marshall Miller, Esq. – US Attorney's Office
    Frederick M. Oberlander, Esq.