

## FACSIMILE COVER SHEET

CONFIDENTIAL AND PRIVILEGED

**If there are any problems with this transmission, please call 602.351.8000**

**Perkins**
**Coie**
**Brown**
**& Bain |**

2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
PHONE: 602.351.8000
FAX: 602.648.7000
www.perkinscoie.com

DATE: **January 22, 2007**                 COVER SHEET & **18** PAGES
**53923-0001/user**
CLIENT NUMBER: **no. 00550**

RETURN TO: (NAME) **Sheridan M. Corbeil**      (EXT.) **8124**  (ROOM No.) **18D**

ORIGINALS WILL BE SENT TO YOU BY FEDERAL EXPRESS

| SENDER: | TELEPHONE: | FACSIMILE: |
|---|---|---|
| *Richard M. Lorenzen* | *(602) 351-8405* | *(602) 648-7077* |

| RECIPIENT: | COMPANY: | TELEPHONE: | FACSIMILE: |
|---|---|---|---|
| *Julius Schwarz* | *Bayrock Group, LLC* | *212-207-6650* | *646-536-8929* |

Facsimile copy does not include exhibits. Exhibits will follow via FedEx tomorrow morning.

This Fax contains confidential, privileged information intended only for the intended addressee. Do not read, copy or disseminate it unless you are the intended addressee. If you have received this Fax in error, please email it back to the sender at perkinscoie.com and delete it from your system or call us (collect) immediately at 602.351.8000, and mail the original Fax to Perkins Coie Brown & Bain P.A., 2901 N. Central Avenue, Suite 2000, Phoenix. AZ 85012-2788.

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates (Perkins Coie Brown & Bain P.A. in Arizona)

1  Edwin B. Stanley, Esq. (SBN 011730)
   SIMBRO & STANLEY, PLC
2  8767 East Via de Commercio
   Suite #103
3  Scottsdale, Arizona 85258-3374
   (480) 607-0780
4  (480) 907-2950 (fax)
   bstanley@simbroandstanley.com
5



**COPY**

JAN 1 1 2007

MICHAEL K. JEANES, CLERK
K. GALUS
DEPUTY CLERK

6  Attorneys for Plaintiff

7         IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8             IN AND FOR THE COUNTY OF MARICOPA

9  CAMELBACK PLAZA DEVELOPMENT, )  Case No. CV2007-000117
   L.C., an Arizona limited liability company, )
10                                           )
                    Plaintiff,               )  VERIFIED COMPLAINT
11                                           )
   vs.                                       )
                                             )  (Breach of Contract; Alter Ego Liability;
12 BAYROCK GROUP LLC, a New York             )  Breach of Fiduciary Duty; Breach of
   limited liability company, D/B/A TRUMP    )  Covenant of Good Faith and Fair Dealing;
13 /BAYROCK; TEVFIK ARIF; BAYROCK            )  Accounting; Fraud; Pattern of Unlawful
   CAMELBACK, LLC, a New York limited        )  Conduct; Unjust Enrichment; Consumer
14 liability company; CAMELBACK              )  Fraud; Appointment of Receiver; Preliminary
   DEVELOPMENT PARTNERS, LLC, an             )  and Permanent Injunctive Relief; Quiet Title;
15 Arizona limited liability company; FELIX  )  Treble Damages Pursuant to A.R.S. §33-420)
   SATER, a/k/a FELIX SATTER, a/k/a LEX      )
16 TERSA; SALVATORE LAURIA, a/k/a SAL        )
   LURIA, a/k/a SAL LAUREN; JODY KRISS;      )
17 CAPMARK FINANCE, INC., f/k/a GMAC         )
   COMMERCIAL MORTGAGE                       )
18 CORPORATION, a California corporation;    )
   JOHN DOUKAS; SCOTT ELIASOPH;             )
19 JULIUS SCHWARZ; JOHN DOES I-X;            )
   JANE DOES I-X; XYZ COMPANIES I-X;         )
20 BLACK AND WHITE PARTNERSHIPS I-X, )
                                             )
21         . Defendants.                     )
                                             )
22 ─────────────────────────────────────────

23         CAMELBACK PLAZA DEVELOPMENT, L.C., an Arizona limited liability company

24 ("Plaintiff"), by and through its duly authorized, undersigned attorneys, Simbro & Stanley,

25 PLC, as and for its Complaint, hereby complains and alleges as follows:

26                    PARTIES, JURISDICTION AND VENUE

27         1.      Plaintiff is an Arizona limited liability company with its principal place of

28                               Page 1 of 18

1  business in Maricopa County, Arizona.

2       2.    Defendant **CAMELBACK DEVELOPMENT PARTNERS, LLC,** ("CDP")

3  is an Arizona limited liability company with its principal place of business in Maricopa

4  County, Arizona.

5       3.    Defendant **TEVFIK ARIF** ("Arif")is an individual who resides in New York.

6       4.    Defendant **BAYROCK GROUP LLC d/b/a TRUMP/BAYROCK** ("Bayrock

7  Group"), is a New York limited liability company with its principal place of business in New

8  York. Defendant **BAYROCK CAMELBACK LLC** ("Bayrock Camelback") is a New York

9  limited liability company that does business in Arizona.

10      5.    Defendant **SCOTT ELIASOPH** ("Eliasoph") is an individual who resides in

11  New York..

12      6.    Defendant **FELIX SATER** ("Sater"), a/k/a **FELIX SATTER,** a/k/a **LEX**

13  **TERSA** is an individual who resides in New York.

14      7.    Defendant **SALVATORE LAURIA** ("Luria"), a/k/a **SAL LAURIA,** a/k/a

15  **SAL LAUREN** is an individual who resides in Connecticut.

16      8.    Defendant **JODY KRISS** ("Kriss") is an individual who resides in New York.

17      9.    Defendant **CAPMARK FINANCE, INC., F/K/A GMAC COMMERCIAL**

18  **MORTGAGE CORPORATION** ("Capmark"), is a California corporation that does

19  business in Maricopa County, Arizona.

20      10.    Defendants **JOHN DOUKAS** ("Doukas"), and **JULIUS SCHWARZ**

21  ("Schwartz"), are individuals who reside in New York.. For ease of reference, Defendants

22  CDP, Arif, Bayrock Group, Bayrock Camelback, Eliasoph, Sater, Luria, Kriss, Doukas, and

23  Schwarz, will sometimes be referred to, severally and collectively, as the "Bayrock

24  Defendants."

25      11.    The fictitiously named Defendants are individuals and entities whose true

26  names and relationships to this matter are presently unknown. Upon learning the true names

27  of these fictitiously named Defendants, Plaintiff will amend this Complaint.

28                              Page 2 of 18

1       12.     All of the acts and omissions complained of herein occurred in Maricopa

2 County, Arizona. The real property which is the subject of this litigation is located in

3 Maricopa County, Arizona.

4       13.     All of the Defendants have availed themselves of the rights and protections of

5 the laws of the State of Arizona such as to subject themselves to the personal jurisdiction of

6 this Court.

7       14.     Venue is proper herein.

8                 **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

9       15.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

10       16.     In or about 1991 Plaintiff acquired a ground leasehold interest and fee title

11 option in certain real property located at the corner of 26th Street and Camelback Road,

12 Phoenix, Maricopa County, Arizona (the "Property").

13       17.     In October of 2001, Plaintiff filed a voluntary Chapter 11 Bankruptcy petition

14 (the "Bankruptcy Case) which resulted in a successful reorganization with unanimous consent

15 of all creditors.

16       18.     As part of the Bankruptcy Case, Plaintiff formulated and solicited a plan of

17 reorganization whereby all of Plaintiff's creditors were to be paid in full (the "Plan").

18 Pursuant to the Plan, Plaintiff conveyed its interest in the Property to CDP.

19       19.     The Bayrock Defendants and Capmark participated in the formulation and

20 solicitation of the Plan. An integral part of the Plan was the redevelopment of the Property

21 into a first class condominium hotel property to be called Trump International Phoenix. . In

22 that regard, the Bayrock Defendants represented to Plaintiff, the Bankruptcy Court, and the

23 other interested parties that (1) Bayrock Group was the exclusive development partner of

24 Donald Trump, Sr. and his various companies; (2) Bayrock Group was an international real

25 estate developer that had developed large properties the world over; (3) Bayrock Group

26 personnel, primarily the individually named Bayrock Defendants, were extensively

27 experienced in real estate development; (4) Bayrock Group would retain internationally

28                        Page 3 of 18

FEB-22-2004 15:27 FR PERKINS COIE PHX #9502 351 8516 TO 00550455923411416 P.05

Case 2:07-cv-00111-GMS Document 878 Filed 02/07/11 Page 5 of 32 Page ID #:1282
NO. 6397    P. 14
JAN 22 2007 15:27 FR PERKINS COIE PHX #9502 351 8516 TO 00550455923411416 P.05

1  known architects (Skidmore Owings & Merrill, LLP and Adrian Smith), engineers, and
2  planners to participate in the development of the Property; (5) Bayrock Group would retain
3  Ernst & Young as the accountants for the project and would provide Plaintiff with financial
4  information prepared pursuant to generally accepted accounting principles; (6) Bayrock
5  Group would invest no less than $4,500,000.00 in equity into the development project; (7)
6  Bayrock Group would retain Bovis Lend Lease as project manager for the development of the
7  Property; (8) Bayrock Group would retain Rubenstein Public Relations to handle public
8  relations for the redevelopment of the Property; (9) Donald J. Trump, Sr. would act as lead
9  developer of the project and would be personally involved in the development decisions and
10  financing of the project, and Plaintiff would act as project manager in close association and
11  cooperation with Donald J. Trump, Sr. All of the representations described in this ¶21 were
12  false, and the Bayrock Defendants knew them to be false at the time that they were made.

13      20.   In reliance on the representations set forth in ¶21, above, and pursuant to the
14  terms of the Plan, Plaintiff conveyed its interest in the Property to CDP.

15      21.   On or about January 15, 2004, CPD filed its articles of incorporation with the
16  Arizona Corporation Commission.

17      22.   In February of 2004, Plaintiff and Bayrock Camelback entered into that
18  *"Operating Agreement"* (the "Original Operating Agreement") relating to the governance of
19  CPD. The Original Operating Agreement was subsequently amended and restated. The latest
20  and currently in force operating agreement for CPD is entitled *"Third Amended and Restated*
21  *Operating Agreement of Camelback Development Partners, LLC"* and is dated January 31,
22  2006. On that same date, Plaintiff and Bayrock Camelback entered into that certain
23  *"Agreement"* which altered and related to the Third Amended and Restated Operating
24  Agreement. The *"Third Amended and Restated Operating Agreement of Camelback*
25  *Development Partners, LLC"* and the *"Agreement"* will be referred to collectively as the
26  "Current Operating Agreement." A true and correct copy of the Current Operating Agreement
27  is attached hereto as **Exhibit "A,"** and is incorporated herein by this reference. At the time

28                            Page 4 of 18

FEB 3 2011 08:56AM
Case 1:10-cv-03959 Document 8752 Filed 02/07/11 Page 6 of 32 PageID #: 1283
NO. 6397   P. 15

1 that the Plan was confirmed, and at all times subsequent, the Bayrock Defendants did not
2 intend to honor any promises made to Plaintiff pursuant to the Plan, and did not intend to
3 honor any of the material promises set forth in the Current Operating Agreement, or any of its
4 predecessors, when the Current Operating Agreement, or any of its predecessors, were
5 executed.

6      23.      Substantially simultaneously with the execution of the Current Operating
7 Agreement, CDP and Capmark entered into a new loan agreement whereby Capmark lent
8 CDP the sum of $12,200,000.00. The proceeds of this new loan were used, in part, to retire a
9 loan to Capmark that was outstanding at the time that the Plan was confirmed. The remaining
10 proceeds were only to be used to retire claims that were outstanding at the time the Plan was
11 confirmed. The Bayrock Defendants did not retire the Plan claims as represented and
12 warranted to Plaintiff. The Current Operating Agreement was executed, in large part, to
13 facilitate the closing of the $12,200,000.00 loan from Capmark, and Capmark was provided
14 with a copy of the Current Operating Agreement at the time that the $12,200,000.00 loan was
15 made.

16      24.      Pursuant to ¶1.5.6 of the Current Operating Agreement, CDP was prohibited
17 from incurring any debt above and beyond the $12,200,000.00 Capmark loan.

18      25.      At all relevant times, Capmark was aware that CDP was prohibited from
19 incurring any additional debt, including, without limitation, any additional debt from
20 Capmark.

21      26.      The Bayrock Defendant represented to Plaintiff that the Bayrock Defendants
22 were reputable and experienced real estate developers with substantial experience in the
23 development and financing of large real estate projects. These representations were untrue,
24 and the Bayrock Defendants knew them to be untrue when they were made. To wit, the
25 Bayrock Defendants withheld the following facts from Plaintiff: (1) many of the individually
26 named Bayrock Defendants are convicted felons, having been convicted of both violent and
27 large scale financial crimes, and have been banned from working in the financial industry; (2)

28                          Page 5 of 18

1 many of the Bayrock Defendants changed their names and/or used aliases in order to evade
2 detection while working in the finance and real estate development industries; and (3) none of
3 the Bayrock Defendants (with the possible exception of Arif) had ever successfully completed
4 any real estate development.

5     27.    Had Plaintiff been aware of the true background of the Bayrock Defendants,
6 Plaintiff would not have moved forward with the confirmation of the Plan and the conveyance
7 of the Property to CDP. Had Plaintiff been aware that the previously described falsehoods
8 and misrepresentations were false, Plaintiff would not have moved forward with the
9 confirmation of the Plan and the conveyance of the Property to CDP.

10     28.    Pursuant to ¶11.2 of the Current Operating Agreement and other provisions of
11 the Current Operating Agreement, Bayrock Camelback is obligated to provide financial and
12 accounting information to Plaintiff on a periodic basis. Despite demand, this financial and
13 accounting information has never been provided to Plaintiff.

14     29.    On or about July 6, 2006, and despite the prohibition set forth in the Current
15 Operating Agreement, the Bayrock Defendants and Capmark caused CDP to incur an
16 additional $5,100,000.00 in debt from Capmark. This additional debt is allegedly secured by a
17 deed of trust against the Property.

18     30.    Since confirmation of the Plan, the Bayrock Defendants have continuously
19 skimmed funds from the project. These skimmed funds were used for the exclusive benefit of
20 the Bayrock Defendants and to the complete detriment of Plaintiff and CDP.

21     31.    The skimming of funds described above was accomplished by (1) using CDP
22 funds to pay expenses not related to the Property (including, without limitation, legal bills of
23 the Snell & Wilmer, LLP not related to the Property); and (2) upon information and belief,
24 using CDP funds to pay the personal expenses of the Bayrock Defendants.

25     32.    In addition to skimming funds, the Bayrock Defendants grossly mismanaged the
26 redevelopment of the Property. This gross mismanagement included, without limitation (1)
27 paying architectural fees and expenses for incomplete and incompetently done architectural

28                                   Page 6 of 18

1 work; (2) allowing liability and casualty insurance on the Property to lapse; and (3) allowing
2 the Property to come into disrepair.

3      33.     As part of the redevelopment of the Property, zoning changes and variances by
4 the Phoenix city council were required. Simultaneously with these re-zoning attempts, the
5 Bayrock Defendants were negotiating with City of Phoenix officials for certain abatements
6 and zoning considerations on other projects unrelated to the Property. Upon information and
7 belief, the Bayrock Defendants agreed to accept lesser and less valuable zoning changes
8 relative to the Property in order to get more advantageous treatment on other Bayrock
9 projects. In addition, the Bayrock Defendants agreed to move the Trump International project
10 away from the Property. These bargains were done to the complete disadvantage of Plaintiff
11 and CDP, and with the full knowledge that Plaintiff and CDP were being harmed. The Snell &
12 Wilmer was paid for these efforts with CDP funds.

13                              COUNT I

14                    (Breach of Contract & Alter Ego Liability)

15      34.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

16      35.     Plaintiff and Bayrock Camelback are parties to certain contracts as described
17 above.

18      36.     There is a substantial continuity between Bayrock Group, Arif and Bayrock
19 Camelback such that Bayrock Camelback is merely the alter ego of Arif and Bayrock Group.
20 This substantial continuity is demonstrated by (1) substantial commingling of funds between
21 them; (2) the failure to follow appropriate corporate governance procedures; (3) substantially
22 similar fields of business and substantially identical employees; (4) Bayrock Group is the sole
23 member of Bayrock Camelback and Bayrock Group and Arif have complete control over
24 Bayrock Camelback; (5) the original agreements between Plaintiff and any of the Bayrock
25 Defendants were between Bayrock Group and Arif, and Bayrock Camelback was only
26 inserted as a party to any of the operating agreements, including the Current Operating
27 Agreement, after Plaintiff was put in a position that it had to proceed with the Plan; and (5)

28                              Page 7 of 18

1 observance of the corporate form would sanction a fraud or promote injustice, allow the
2 Bayrock Defendants to confuse the Plaintiff, frustrate Plaintiff's efforts to protect their rights,
3 and allow the responsible parties to evade liability.

4      37.    As a direct and proximate result of the contractual breaches, Plaintiff has been
5 damaged in an amount to be proven at trial.

6      38.    This claim arises out of contract, express or implied. Pursuant to A.R.S. §12-
7 341.01, Plaintiff is entitled to an award of its attorneys fees and costs of suit incurred herein.

8      **WHEREFORE,** Plaintiff requests that the Court enter judgment against Bayrock
9 Group, Arif and Bayrock Camelback as follows:

10      A.    In the amount of Plaintiff's actual damages, which shall be proven at trial;
11      B.    In the amount of Plaintiff's reasonable attorneys fees and costs of suit incurred
12           herein;
13      C.    For interest on the above amounts from the earliest possible date of accrual until
14           paid in full at the rate of 10% per annum; and
15      D.    For all other and further relief as is just and proper under the circumstances.

16                         **COUNT II**

17      (Breach of Duty of Good Faith and Fair Dealing and Inducement to Breach)

18      39.    Plaintiff incorporates the foregoing allegations as though fully set forth herein.

19      40.    All contracts between Plaintiff and Bayrock Group, Arif and their alter ego,
20 Bayrock Camelback, contain an implied covenant of good faith and fair dealing.

21      41.    The Bayrock Defendants and Capmark induced the breach of the contracts at
22 issue, and induced the breach of the covenant of good faith and fair dealing by, among other
23 things, aiding and abetting Bayrock Group, Bayrock Camelback and Arif in breaching the
24 contracts and breaching the covenant of good faith and fair dealing.

25      42.    Defendants, and each of them, knew that Plaintiff was a party to a contract with
26 Bayrock Group and Arif via their alter ego, Bayrock Camelback. Defendants intentionally
27 interfered with Plaintiff's contractual rights which caused Plaintiff to lose its reasonably

28                         Page 8 of 18

1  expected benefits of the contract rights. Defendant's actions were improper and done without
2  excuse. As a direct and proximate cause, Plaintiff incurred damages in an amount to be
3  proven at trial.

4       43.   Bayrock Group and Arif via their alter ego, Bayrock Camelback had the duty
5  not to take any action or inaction that would prevent Plaintiff from receiving its contractual
6  benefits.

7       44.   Bayrock Group and Arif via their alter ego, Bayrock Camelback breached the
8  duty of good faith and fair dealing as described herein.

9       45.   As a direct and proximate cause, Plaintiff has been damaged in an amount to be
10  proven at trial.

11      46.   This claim arises out of contract, express or implied. Pursuant to A.R.S. §12-
12  341.01, Plaintiff is entitled to an award of its attorneys fees and costs of suit incurred herein.

13      **WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendants as
14  follows:

15      A.   In the amount of Plaintiff's actual damages, which shall be proven at trial;

16      B.   In the amount of Plaintiff's reasonable attorneys fees and costs of suit incurred
17           herein;

18      C.   For interest on the above amounts from the earliest possible date of accrual until
19           paid in full at the rate of 10% per annum; and

20      D.   For all other and further relief as is just and proper under the circumstances.

21                                **COUNT III**

22                                (Accounting)

23      47.   Plaintiff incorporates the foregoing allegations as though fully set forth herein.

24      48.   Plaintiff and Bayrock Group and Arif via their alter ego, Bayrock Camelback,
25  are co-members of a limited liability company, CDP.

26      49.   Bayrock Group and Arif via their alter ego, Bayrock Camelback have
27  intentionally withheld financial and accounting information from Plaintiff.

28                              Page 9 of 18

1    50.    The Bayrock Defendants have intentionally skimmed and otherwise
2 misappropriated funds from CDP, to the detriment of Plaintiff and the Property.

3    51.    As a member of CDP, and pursuant to the terms of the Current Operating
4 Agreement, Plaintiff is entitled to a complete accounting of the business of CDP, including,
5 without limitation, all funds expended by CDP or on behalf of CDP.

6    52.    This claim arises out of contract, express or implied. Pursuant to A.R.S. §12-
7 341.01, Plaintiff is entitled to an award of its attorneys fees and costs of suit incurred herein.

8    **WHEREFORE**, Plaintiff requests judgment against the Bayrock Defendants as
9 follows:

10    A.    Compelling the Bayrock Defendants to provide a complete accounting of all
11 CDP business including, without limitation, all funds expended by CDP or on behalf of CDP.

12    B.    Granting Plaintiff such other and further relief as is just and proper under the
13 circumstances.

14

15                                 COUNT IV

16                          (Breach of Fiduciary Duty)

17    53.    Plaintiff incorporates the foregoing allegations as though fully set forth herein.

18    54.    The Bayrock Defendants stand in a special relationship of trust and confidence
19 vis-a-vis Plaintiff. This relationship requires the utmost good faith and strictest loyalty toward
20 Plaintiff.

21    55.    The Bayrock Defendants breached their fiduciary duties to Plaintiff as described
22 herein.

23    56.    As a direct and proximate cause of these breaches, Plaintiff has been damaged
24 in an amount to be proven at trial.

25    57.    This claim arises out of contract, express or implied. Pursuant to A.R.S. §12-
26 341.01, Plaintiff is entitled to an award of its attorneys fees and costs of suit incurred herein.

27    **WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendants as

28                                 Page 10 of 18

1  follows:

2      A.    In the amount of Plaintiff's actual damages, which shall be proven at trial;

3      B.    In the amount of Plaintiff's reasonable attorneys fees and costs of suit incurred

4           herein;

5      C.    For interest on the above amounts from the earliest possible date of accrual until

6           paid in full at the rate of 10% per annum; and

7      D.    For all other and further relief as is just and proper under the circumstances.

8  **COUNT V**

9  ( Fraud )

10      58.    Plaintiff incorporates the foregoing allegations as though fully set forth herein.

11      59.    The Bayrock Defendants used deception, deceptive acts and practices, false

12  pretenses, false promises, concealed or suppressed material facts in connection with the Plan

13  and the redevelopment of the Property.

14      60.    The representations made to Plaintiff were false.

15      61.    The representations made to Plaintiff were material.

16      62.    The Bayrock Defendants knew that the representations made to Plaintiff were

17  false.

18      63.    The Bayrock Defendants intended that Plaintiff would act upon the

19  representations and omissions and suppressions in the manner contemplated by the Bayrock

20  Defendants.

21      64.    Plaintiff did not know that the representations were false, and was unaware of

22  the suppressed and omitted material information. Plaintiff actually relied upon the truth of the

23  false representations and actually relied upon the absence of any material omissions or

24  suppressed information.

25      65.    Plaintiff's actions were reasonable and justified under the circumstances.

26      66.    As a direct and proximate result, Plaintiff has been damaged in an amount to be

27  proven at trial.

28  Page 11 of 18

67. This claim arises out of contract, express or implied. Pursuant to A.R.S. §12-341.01, Plaintiff is entitled to an award of its attorneys fees and costs of suit incurred herein.

**WHEREFORE,** Plaintiff requests that the Court enter judgment against Defendants as follows:

A. In the amount of Plaintiff's actual damages, which shall be proven at trial;

B. Placing a constructive trust over the Property, and all other assets of CDP, for the benefit of Plaintiff.

C. In the amount of Plaintiff's reasonable attorneys fees and costs of suit incurred herein;

D. For interest on the above amounts from the earliest possible date of accrual until paid in full at the rate of 10% per annum; and

E. For all other and further relief as is just and proper under the circumstances.

## COUNT VI

(Pattern of Unlawful Conduct in Violation of A.R.S. §13-2314.04(A))

68. Plaintiff incorporates the foregoing allegations as though fully set forth herein.

69. The Bayrock Defendants committed a pattern of fraud as described herein.

70. The Bayrock Defendants, acting in concert and conspiracy with one another, committed at least two fraudulent acts, which occurred less than five years apart. In addition to the fraudulent acts described above, Bayrock Defendant Felix Sater defrauded a woman in New York, Elizabeth Thieriot of approximately $9,000,000 in a real estate transaction substantially similar to the case at hand. Defendant Felix Sater acquired $9,000,000.00 from Ms. Thieriot for the purpose of acquiring and developing real property. Upon information and belief, the real estate was neither acquired nor developed and Mr. Sater simply absconded with Ms. Thieriot's money. Ms. Thieriot subsequently brought an action against Ms. Sater alleging, among other things, a pattern of unlawful conduct (Nassau County New York Supreme Court Case No. 00879/2005). After refusing to appear at a scheduled deposition and being prohibited from testifying at trial, Mr. Sater settled on the eve of trial for $8,950,000.00.

1   Moreover, on or about February 25, 2006, Mr. Sater called Ernest R. Mennes, Plaintiff's co-
2   managing member, and threatened to call Mr. Sater's cousin and have this individual
3   electrically shock Mr. Mennes' testicles, cut off Mr. Mennes' legs, and leave Mr. Mennes
4   dead in the trunk of his car if Mr. Mennes disclosed to any party any of suspected
5   improprieties and past criminal conduct involving the Bayrock Defendants and CDP. This
6   was a grave concern to Mr. Mennes inasmuch as Mr. Sater has previously been convicted of
7   at least one violent felony (*See, State v Sater*, 201 A.D.2d 323, 608 N.Y.S.2d 836, App.Div. 1,
8   New York 1994) and Bayrock Defendant Salvatore Lauria, a/k/a Sal Lauren, had published a
9   book entitled *"The Scorpion and the Frog: High Times and High Crimes"* (ISBN
10  1893224260) wherein he described the prior financial crimes committed by himself, Mr. Sater
11  and others.

12      71.    The fraudulent acts were related insofar as they have similar purposes, results,
13  participants, victims, methods of commission and other similar characteristics.

14      72.    The unlawful acts and pattern of unlawful acts were committed by the Bayrock
15  Defendants for financial gain.

16      73.    The unlawful acts described herein amounted to or pose a threat of continuing
17  unlawful activity.

18      74.    Pursuant to A.R.S. §13-2314.04(A), *et seq.*, Plaintiff is entitled to recover its
19  reasonable attorneys fees and costs of suit incurred herein.

20      **WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendants as
21  follows:

22      A.    In the amount of treble Plaintiff's actual damages, which shall be proven at trial;

23      B.    In the amount of Plaintiff's reasonable attorneys fees and costs of suit incurred
24            herein;

25      C.    For interest on the above amounts from the earliest possible date of accrual until
26            paid in full at the rate of 10% per annum; and

27      D.    For all other and further relief as is just and proper under the circumstances.

28                                Page 13 of 18

# COUNT VII

(Appointment of Receiver and Preliminary and Permanent Injunctive Relief)

75. Plaintiff incorporates the foregoing allegations as though fully set forth herein.

76. The Bayrock Defendant have skimmed money from CDP and have otherwise taken CDP funds for their own benefit and to the Detriment of CDP and Plaintiff.

77. A.R.S. §12-1241 invests this Court with the authority and power to appoint a receiver to protect and preserve the property rights of the parties to a civil action.

78. A.R.S.§29-682(C) invests this Court with the power and authority to enforce an operating agreement by injunction or by any other relief that the Court in its discretion determines to be fair and appropriate.

79. A.R.S.§29-385 invests this Court with the power and authority to enter a decree of dissolution of a limited liability company upon a judicial determination that (1) the manager of a limited liability company have acted or are acting in a manner that is illegal or fraudulent; or (2) substantial assets of a limited liability company are being wasted, misapplied or diverted for purposes not related to the business of the limited liability company.

80. By virtue of the acts and omissions set forth herein, the Bayrock Defendants have acted or are acting in a manner that is illegal or fraudulent and substantial assets of CDP are being wasted, misapplied or diverted for purposes not related to the business of the limited liability company.

81. By virtue of the acts and omissions of the Bayrock Defendants described herein, reasonable cause exists for the Court to appoint an independent receiver (1) with instructions to marshall the assets and accounts of and to take immediate control and physical possession of the Property, any other assets, financial records and business records of CDP; (2) with powers of a special master to compel all persons or entities now or hereafter in possession of the assets, accounts, cash, and profits of CDP to remit the same to the receiver until such time as a complete accounting can be made; (3) with the authority to employ such legal and

Page 14 of 18

1   accounting professionals as may be necessary to make a complete accounting of the assets,

2   accounts, cash, losses, dispositions, acquisitions and profits of CDP ; and (4) with instruction

3   to discharge such other duties as are assigned from time to time by the Court.

4       82.     By virtue of the allegations made herein, reasonable cause exists for the Court to

5   enter a decree of dissolution of CDP and to wind up the affairs of CDP and to liquidate the

6   assets and business of CDP.

7       83.     By virtue of the allegations made herein, reasonable cause exists for the Court to

8   enter an order that Plaintiff is entitled to immediate access to all financial records and

9   business records of CDP and compelling all Defendants to comply with such order.

10      84.     The Dissipation of the assets of CDP is continuing and is being conducted by

11  the Bayrock Defendants to the detriment of Plaintiff.

12      85.     Plaintiff has no adequate remedy at law.

13      86.     Plaintiff will be immediately and irreparably injured if the Bayrock Defendants

14  are not immediately enjoined from further dissipation of the assets of CDP.

15      **WHEREFORE**, Plaintiff requests the following relief:

16      A.      Appointing a receiver over CDP with the powers described in this Count VII;

17      B.      Preliminarily and permanently enjoining the Bayrock Defendants from using,

18  disposing, spending, or otherwise dealing with any assets, accounts, cash, or business of CDP;

19      C.      Ordering the dissolution and winding up of the affairs of CDP;

20      D.      Awarding Plaintiff judgment in the amount of Plaintiff's reasonable attorneys

21  fees and costs of suit incurred herein; and

22      E.      Granting Plaintiff such other and further relief as is just and proper under the

23  circumstances.

24                          <u>COUNT VIII</u>

25              (Quiet Title and Treble Damages Pursuant to A.R.S. §33-420.

26      87.     Plaintiff incorporates the foregoing allegations as though fully set forth herein.

27      88.     Plaintiff is the beneficial owner of the Property.

28                          Page 15 of 18

89.   Capmark and the Bayrock Defendants caused the $17,300,000.00 deed of trust to be recorded against the Property with the knowledge that it was groundless, contained a false claim, or was otherwise invalid.

90.   The $17,300,000.00 deed of trust wrongfully clouds title to the Property.

91.   As a direct and proximate cause of the recording of the $17,300,000.00 deed of trust, Plaintiff has been damaged in an amount to be proven at trial.

92.   Pursuant to A.R.S. §33-420, Plaintiff is entitled to judgment in the amount of Plaintiff's reasonable attorneys fees and costs of suit incurred herein.

**WHEREFORE**, Plaintiff requests that the Court enter judgment as follows:

A.   Declaring and adjudging that the $17,300,000.00 deed of trust is void;

B.   Releasing the $17,300,000.00 deed of trust ;

C.   Quieting title to the Property in the name of Plaintiff;

D.   In the amount of the minimum damages provided in A.R.S. §33-420 or treble Plaintiff's actual damages, whichever is greater;

E.   In the amount of Plaintiff's attorneys fees and costs incurred herein as required by A.R.S. §33-420;

F.   For interest on the above amounts at the maximum legal rate from the earliest possible date of accrual until paid in full; and

G.   Granting Plaintiff such other and further relief as is just and proper under the circumstances.

## COUNT IX

### (Unjust Enrichment)

93.   Plaintiff incorporates the foregoing allegations as though fully set forth herein.

94.   The Bayrock Defendants and Capmark have been provided with an enrichment.

95.   The Bayrock Defendants' and Capmark's enrichment resulted in Plaintiff's impoverishment in a like amount.

96,   The Bayrock Defendants' and Capmark's enrichment at Plaintiff's expense is

Page 16 of 18

1  without justification. It would be unjust and inequitable to allow Defendants to retain the

2  benefits of their enrichment without payment to Plaintiff.

3      97.    Plaintiff has no adequate remedy at law.

4      98.    This matter arises out of contract, express or implied. Pursuant to A.R.S. §12-

5  341.01, Plaintiff is entitled to reimbursement of its attorneys fees and costs of suit incurred

6  herein.

7      **WHEREFORE,** Plaintiff requests that the Court enter judgment against the Bayrock

8  Defendants and Capmark as follows:

9      A.    In the amount of Plaintiff's actual damages, which shall be proven at trial;

10     B.    In the amount of Plaintiff's reasonable attorneys fees and costs of suit incurred

11           herein;

12     C.    For interest on the above amounts from the earliest possible date of accrual until

13           paid in full at the rate of 10% per annum; and

14     D.    For all other and further relief as is just and proper under the circumstances.

15

16     **RESPECTFULLY SUBMITTED** this *11th* day of January, 2007.

17           SIMBRO & STANLEY, PLC

18

19           _____
             Edwin B. Stanley, Esq.
20           8767 East Via de Commercio
             Suite #103
21           Scottsdale, Arizona 85258
             Attorneys for Plaintiff

22

23

24

25

26

27

28           Page 17 of 18

1

2                    **VERIFICATION**

3        **ERNEST R. MENNES**, states as follows:

4        1.     I am the co-managing member of Camelback Plaza Development, L.C., an

5   Arizona limited liability company, the Plaintiff in the above Complaint.

6        2.     I have as carefully read the foregoing Complaint and, based on a reasonable

7   inquiry, believe that the allegations in the Complaint are well grounded in fact and are true to

8   the best of my knowledge, except those matters stated upon information and belief, which I

9   believe to be true.

10                                   DATED this 11th day of January, 2007.

11

12

13                                   Ernest R. Mennes

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              Page 18 of 18

## Lerner, Richard E.

| | |
|---|---|
| **From:** | Lerner, Richard E. |
| **Sent:** | Wednesday, February 02, 2011 9:27 PM |
| **To:** | 'Kaminsky, Todd (USANYE)' |
| **Cc:** | 'Peter.Norling@usdoj.gov'; Rocklin, Lauren; Selmeci, Judy C.; 'fred55'; Lerner, Richard E. |
| **Subject:** | U.S. v. Sater |

Dear Mr. Kaminsky,

Your memo of law that you submitted today to the Second Circuit has prompted serious concerns among all of the lawyers in this matter, a rather significant number of a rather significant group, and I feel, as a professional courtesy, I would attempt to engage you in a candid exchange of views.

* * *

If the PSR and other documents at issue establish "unlawful" conduct ("unlawful" being used in its broadest sense, as used in the congressional hearings re Judge Rosenbaum's "unlawful" sealing of court documents and proceedings to hide "unlawful" sentencing dispositions), do you nonetheless believe that the Justice Department or the judiciary may assert a privacy interest in the documents, or somehow prevent them from seeing the light of day?

Upon what authority may the Justice Department or the judiciary prevent them from being provided to Congress in the exercise of its supervisory authority over the executive and judiciary, pursuant to a citizen's petition for legislative redress?

And if a citizen may provide them to Congress, upon what authority may the Justice Department or the judiciary prevent that citizen from simultaneously providing them to the 300 million other citizens who have ultimate supervisory powers over Congress as well as the executive branch and judiciary? Is there any authority for the notion that the First Amendment "right of the people peaceably to assemble, and to petition the Government for redress of grievances" is subject to some kind of balancing test, or may be gagged?

I presume you are aware that the right to petition is independent of the rights of free expression and is the ultimate non-justiciable issue, subject to no standards, not public interest, not anything other than the political will of the petitioner.

Please understand that I am being very, very serious. Please understand, further, that I am speaking in behalf of Mr. Oberlander, and he in turn is speaking on behalf of his clients, and must act in accordance with their directives. In spite of what Judge Glasser said, what Mr. Oberlander believes personally about anything here, or what I believe, or for that matter what are any citizen's political beliefs -- including as to petitioning for legislative

2/3/2011

relief -- is a matter of no relevance here, nor can it be.

\* \* \*

Are aware of any order, rule, or case precedent that would bar my client (or his clients) from:

(a) Discussing your memorandum of law with the ACLU, NYCLU, RCFP, Washington Post, New York Law Journal, New York Times, 60 Minutes, 20/20, New York Post, New York Daily News, Los Angeles Times, Miami Herald, Business Week, ABC, CBS, NBC, CNN, MSNBC, CNBC, FNN, WCBS-TV, WNBC-TV, WABC-TV, and requesting that they submit amici briefs in response to your motion, and suggesting that they move to intervene?

(b) Freely disseminating your memorandum of law and exhibits ad libitum?

(c) The same as (a) and (b), but as to MY CLIENT's memorandum of law: Any problems with his disseminating that?

\* \* \*

You also state in your memorandum of law that the letter from the Lauria file has been re-sealed by Judge Glasser. (As you know, we had demanded that there be public notice and a public hearing in advance of such sealing in accordance with U.S. v. Alcantara, but Judge Glasser apparently rubber-stamped your letter application.) In any event, inasmuch as you did not seek a gag order with respect to the Lauria letter that Mr. Oberlander already possesses, would you now agree:

(a) Mr. Oberlander (and his clients) may freely disseminate it? If not, upon what authority?

(b) If you agree that he may freely disseminate it, then you would agree that a sealing order is not tantamount to a gag order, Correct?

(c) If so, then I do not understand your supplemental memorandum of law that you submitted to the Second Circuit. Is it really the government's position that a sealing order is tantamount to a gag order? Or that only some sealing orders but not other ones are tantamount to gag orders?

(d) Now the "sealing order" that Judge Glasser "issued" on or about January 26th with respect to the Lauria letter: Do you consider that a sealing order to begin with? The order is what exactly, the endorsement? If a sealing order is a "gag" order, are only the people who know of it gagged? (I hadn't even known the letter was re-sealed until you pointed it out in your memorandum. Am I now gagged, or is the letter just "sealed"?)

(e) Do you believe that a gag order can exist without First Amendment requirements such as evidentiary hearings and record findings? If so, what is your authority, please.

(f) Do you believe that "sealed" is a very special kind of "gag" order that doesn't have to

2/3/2011

demonstrate pesky stuff like horrific impending harm, least restrictive means, and all that annoying First Amendment business?

(g) If you believe that Mr. Oberlander may not freely disseminate the Lauria letter, we request that you immediately provide authority for that proposition.

(h) The same as to the January 26 letter requesting the sealing of it and the December 2nd letter it references.


* * *


I look forward to hearing from you, "with all deliberate speed," as this is -- I repeat -- very, very serious.


Very truly yours,


Richard E. Lerner
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
212-915-5419 (Direct)
212-490-3000 (Main)
212-490-3038 (Fax)
richard.lerner@wilsonelser.com