UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

------------------------------x

UNITED STATES OF AMERICA,

                 Petitioner,        New York, N.Y.

         v.                  10-2095-cr

JOHN DOE.

              Respondent.

------------------------------x

                         February 14, 2011
                         1:30 p.m.

Before:

        HON. JOSE A. CABRANES, Presiding
        HON. ROSEMARY S. POOLER
        HON. DENNY CHIN

                         Circuit Judges

APPEARANCES

TODD KAMINSKY
PETER A. NORLING
MARSHALL MILLER
ELIZABETH KRAMER
     Attorneys for Petitioner

RICHARD E. LERNER
     Attorney for Respondent

KELLY ANN MOORE
     Attorney for John Doe

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

------------------------------x

UNITED STATES OF AMERICA,

                    Petitioner,          New York, N.Y.

            v.                           10-2095-cr


JOHN DOE.

                    Respondent.

------------------------------x

                                         February 14, 2011
                                         1:30 p.m.

Before:


            HON. JOSE A. CABRANES, Presiding
            HON. ROSEMARY S. POOLER
            HON. DENNY CHIN


                                         Circuit Judges

                    APPEARANCES

TODD KAMINSKY
PETER A. NORLING
MARSHALL MILLER
ELIZABETH KRAMER
        Attorneys  for Petitioner

RICHARD E. LERNER
        Attorney for Respondent

KELLY ANN MOORE
        Attorney for John Doe

1

2                          APPEARANCES (Continued)

3    ALSO PRESENT:

4    RICHARD ROE
     JUDY SELMECI
5    DAVID SNYDER
     NADER MOBARGHA
6    MICHAEL BEYS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          JUDGE CABRANES:  Good afternoon.  This is <u>United</u>

2    <u>States of America v. John Doe</u>.  It has many captions.  I will

3    call the role of roll of counsel and the parties in two appeals

4    that have been consolidated for purposes of argument and that

5    at least for now bear the following captions:  <u>Richard Roe v.</u>

6    <u>USA and John Doe</u>, Docket No. 10-2905, and <u>Richard Roe,</u>

7    <u>Petitioner v. USA, Respondent and John Doe 1, John Doe 2,</u>

8    <u>Defendants</u>, Docket No. 11-479.  I ask each of the persons whose

9    names I call out to simply answer my confirming his or her

10   presence.

11          This is not the time for anything more than the word

12   "present" and an indication of whether you are admitted to the

13   bar of this court.  You will each have time to express your

14   views after this roll call and after I make a brief

15   introductory statement.

16          Richard Roe, also known as Frederick Oberlander.

17          MR. ROE:  Present, and I am not admitted in this

18   court.

19          JUDGE CABRANES:  We usually stand.

20          MR. ROE:  I'm sorry.

21          JUDGE CABRANES:  Are you admitted to any federal

22   court?

23          MR. ROE:  Southern District.

24          JUDGE CABRANES:  Counsel for Richard Roe is Richard

25   Lerner.

1          MR. LERNER:  Yes.  I am present and admitted to

2     practice before this court.

3          JUDGE CABRANES:  Thomas W. Hyland.

4          MR. LERNER:  He was unable to make it here today.

5          JUDGE CABRANES:  Unable to make it today.  Judy

6     Selmeci.

7          MS. SELMECI:  I am admitted to practice in this Court.

8          JUDGE CABRANES:  You are admitted to the bar of this

9     court.  Thank you.

10         Counsel for the United States, Todd Kaminsky.

11         MR. KAMINSKY:  Present, your Honor, and admitted.

12         JUDGE CABRANES:  Elizabeth Kramer.

13         MS. KRAMER:  Present, your Honor, and admitted.

14         JUDGE CABRANES:  Marshall Miller.

15         MR. MILLER:  Present your Honor add admitted.

16         JUDGE CABRANES:  Peter Norling.

17         MR. NORLING:  Present and admitted.

18         JUDGE CABRANES:  Counsel for John Doe, Kelly Anne

19    Moore of Morgan Lewis & Bockius.

20         MS. MOORE:  Present and admitted your Honor.

21         THE COURT:  David Snyder of Morgan Lewis & Bockius?

22         MR. SNYDER:  Present, your Honor, and not admitted.

23         JUDGE CABRANES:  Are you admitted to any federal bar?

24         MR. SNYDER:  No, your Honor.

25         JUDGE CABRANES:  You are admitted to what bar?

1              MR. SNYDER:  State of New York.

2              JUDGE CABRANES:  Nader Mobargha of Beys Stein &

3    Mobargha.

4              MR. MOBARGHA:  Present and not admitted to this Court.

5              JUDGE CABRANES:  To what court are you admitted?

6              MR. MOBARGHA:  The Southern and Eastern Districts of

7    New York.

8              JUDGE CABRANES:  And the State of New York?

9              MR. MOBARGHA:  Yes.

10             JUDGE CABRANES:  Is there anyone else whose name I

11   have not called?

12             MR. BEYS:  Yes, your Honor.  Michael Beys of Beys,

13   Stein & Mobargha for defendant-appellee Doe, present and

14   admitted.

15             JUDGE CABRANES:  Thank you.

16             We are here for oral argument in two related matters.

17   As I indicated, they bear captions that at least temporarily

18   employ the coined names of "John Doe" and "Richard Roe" -- the

19   cases that, as I noted, are docketed in the Court of Appeals as

20   No. 10-2905-cr. and No. 11-479-cr.  Both arrived from

21   long-lived proceedings in the United States District Court for

22   the Eastern District of New York before Judge I. Leo Glasser.

23   The record will reflect that, pursuant to an order of the

24   Court, we are here in a closed courtroom.  The proceedings here

25   are being recorded by an official court reporter as well as by

1   electronic means.  The record in these cases shall remain under

2   seal until further order of the Court.

3            These matters came before this Court on an expedited

4   and emergency basis.  In documents placed before us, the

5   government and the district court asserted serious concerns

6   about the public dissemination of certain documents, in and out

7   of state and federal court proceedings.  These disclosures

8   allegedly are in violation of court orders and allegedly could

9   risk life-threatening injury to identifiable persons, including

10  the person identified in our cases as John Doe.

11           As a result of the way in which these emergency

12  matters were presented to the Court, and in order to try to

13  maintain the status quo in volatile and confused circumstances

14  until this expedited hearing could be held, this Court has

15  entered a series of temporary sealing orders and/or injunctive

16  orders.

17           Because these orders were entered in response to

18  fast-breaking developments, the captions and references to

19  petitioner and respondent are sometimes the victim of

20  typographical errors.  The captions will be adjusted in the

21  course of this hearing or immediately thereafter.  Suffice it

22  to say for now that, regardless of any obvious typographical

23  errors in the orders, we are all well aware that the sealing

24  orders and temporary injunctions of the Court of Appeals have

25  all been aimed at Richard Roe, an attorney at law, and at his

1    attorneys.  It is not John Doe or the government who have

2    sought to disseminate any of the material at issue here.  The

3    only parties who have indicated on the record an intention to

4    disseminate the documents at issue here are Richard Roe and his

5    attorneys.  That much the court knows and that much all of you

6    here know.

7          Accordingly, to avoid caption issues that may cause

8    confusion on the record, let us speak today of Richard Roe and

9    John Doe, not of petitioner or respondent, nor of appellant and

10   appellees.  It is clear from the record, of course, that it is

11   Richard Roe and his lawyers who vigorously and openly wish to

12   disseminate these materials, and thus it is the government and

13   John Doe who wish to prevent Roe and his lawyers from doing so.

14         The first Court of Appeals order of consequence was an

15   order of Judge Livingston sealing the record of this case and

16   referring the emergency motions of the government to a

17   regularly-convened motions panel.

18         We are that panel.

19         After this matter was referred to this motions panel,

20   the Court entered a number of orders that re-affirmed the

21   sealing order of Judge Livingston and otherwise sought to

22   maintain the status quo until this hearing could be held.

23         We have taken precautions to assure that all counsel

24   of record and the party known as Richard Roe receive timely

25   notice of these orders promptly upon entry of the order by

1  e-mail and/or fax and/or phone calls from the clerk's office.

2  Unless informed otherwise, we will assume that notice of these

3  several orders was effected.

4          You may wish to take notes of the Court orders to

5  which I refer.  In order to assist you in this regard, the

6  Court asked the Deputy Clerk of Court to provide each of you

7  with copies of these orders before we convened here.  I am

8  informed that sets of these copies were provided to all counsel

9  of record and that each of you has copies of these orders

10  before you at this time.

11          They include:

12          (1) An order of February 8, 2011 granting the

13  government's motion to temporarily seal the docket here and

14  seeking to prevent any public dissemination of matters subject

15  to existing sealing orders;

16          (2) An order of February 9, 2011 denying a motion to,

17  among other things, vacate the court's earlier so-called _sua_

18  _sponte_ order closing the courtroom for today's hearing;

19          (3) An order of February 10, 2011 that, among other

20  things, consolidated these two docketed appeals until further

21  order of the Court.  It also responded to reports or apparent

22  threats by Richard Roe and/or his counsel to disseminate sealed

23  materials at issue here in other court proceedings or public

24  forums.  The Court responded to these reports or apparent

25  threats in the order of February 10 by, among other things,

1   temporarily enjoining "all parties . . . from disseminating or

2   distributing in any manner and in any court, proceeding, or

3   forum any documents filed in th[ese appeals] or in related

4   proceedings in the Eastern and Southern Districts of New York

5   or the contents thereof, to any member of the public or media

6   except to those persons directly involved in the parties' legal

7   representation, who shall be bound by this order of

8   confidentiality and sealing."

9        The February 10, 2011 order also affirmatively

10  enjoined Richard Roe, who is a member of the bar, to submit in

11  writing by 5 p.m. on Friday, February 11, "a list of any public

12  or media persons . . . to whom he or his counsel have revealed

13  or distributed in any manner the filings in these proceedings

14  or the contents thereof."

15       This February 10 order also affirmatively enjoined

16  Richard Roe to identify with specificity the documents or

17  contents that were revealed or distributed to each such person.

18  This, too, was to have been done by Friday, February 11 at 5:00

19  p.m.

20       I understand that we have a letter that was indeed

21  filed on Friday but that has come to our attention only this

22  morning and which apparently was not conveyed to opposing

23  counsel.  We will deal with that matter in a moment.

24       I think we all know what "under seal" means -- but

25  perhaps not, so I wish to make it clear that for the time being

1    and until this Court is able to sort out the claims of a breach

2    of court sealing orders, these proceedings are confidential and

3    the record is subject to a sealing order of this Court, the

4    violation of which will subject any violator of our sealing

5    orders to punishment for civil and/or criminal contempt of

6    court.

7         It should likewise be clear that the parties hereto

8    are always free to seek review of our orders from the Supreme

9    Court of the United States.  That said, while our sealing

10   orders remain in effect, as they may be supplemented by

11   additional orders today or in the near future, any and all

12   papers filed in the Supreme Court referring to matters or

13   documents subject to extant sealing orders shall be filed in

14   the Supreme Court under seal.

15        I have also been informed today that there is a copy

16   of a purported petition for certiorari that was filed or was to

17   be filed in the Supreme Court.  Apparently, it was not filed

18   under seal.  We will expect that counsel of record will take

19   all the necessary precautions to seek to place that material

20   under seal until further order of this Court or of the Supreme

21   Court.

22        These preliminary matters having been completed, I

23   will ask the representative of the U.S. Attorney's Office for

24   the Eastern District of New York to come forward and provide a

25   general status report on the proceedings to date and to provide

1    a brief statement of what relief, if any, the government seeks

2    today.

3        We will then hear from counsel for Richard Roe, from

4    whom we likewise will seek a statement of the relief he seeks

5    from this Court.

6        MR. KAMINSKY:  Good afternoon.  May it please the

7    Court, I'm Todd Kaminsky.  And I represent the appellee, the

8    United States.  And the government is here today to argue for a

9    continued sealing of the appellate docket and now what is the

10   consolidated dockets before this court.

11       The government, as laid out in its brief, believes

12   that an unsealing of the docket at this time and a public

13   filing and release of the documents that opposing counsel would

14   like to, and Roe and his attorney would like to release at this

15   time pose a substantial probability of prejudice to Doe's

16   safety in this case.

17       JUDGE CABRANES:  Could you tell us whether at the

18   moment all the documents in Doe's criminal proceeding and in

19   the Southern District of New York civil matter, are they all

20   now under seal as far as you know?

21       MR. KAMINSKY:  The Southern District, your Honor, they

22   are not all under seal.  Although I am not a party to that

23   civil proceeding, I've gone on to the electronic PACER system

24   and several documents can be accessed.  The main document at

25   issue in that case, the complaint filed by Mr. Roe that

1    contains all of the damaging information about Mr. Doe, that

2    cannot be accessed publicly at this time.

3           The Eastern District docket, currently being presided

4    over by the Honorable Judge Glasser, is completely under seal.

5    There are no accessible documents at this time.

6           JUDGE CABRANES:  Can you describe in general terms why

7    these documents are so sensitive, particularly since some of

8    them seem to be somewhat antique, and there have been in the

9    past some news accounts of the activities or purported

10   activities of John Doe?

11          MR. KAMINSKY:  Yes, your Honor.

12          Mr. Doe's cooperation was of an extraordinary depth

13   and breadth, almost unseen, at least in this United States

14   Attorney's Office.

15          He cooperated, unlike some cooperators who cooperate

16   within one type of organized crime family or over one type of

17   crime, Mr. Doe's cooperation runs a gamut that is seldom seen.

18   It involves violent organizations such as Al Qaeda, it involves

19   foreign governments, it involves Russian organized crime.  And,

20   most particularly, it involves various families of La Cosa

21   Nostra.  By that specifically I mean an individual on the

22   ruling board of the Genovese crime family, a captain in the

23   Bonanno crime family, a soldier in the Gambino crime family,

24   the list goes on and on.

25          The reason why I bring that up, your Honor, is that

1    all of the documents that are currently within the 1998 docket

2    in front of Judge Glasser mention Mr. Doe's name or refer to

3    his cooperation.

4         Now, at the time of the sealing in 1998 and through

5    the beginning of 2008, Mr. Doe worked in a proactive capacity

6    actively aiding grand jury investigations that involved

7    surreptitious recordings of individuals as well as other

8    undercover actions.

9         JUDGE POOLER:  Counsel, are you satisfied that he's

10   told the truth in all cases?

11        MR. KAMINSKY:  Your Honor, from the record that I have

12   seen, and it was my job for his sentencing to review all of his

13   statements to the FBI, I was not the individual that worked

14   with him, but I have no information that he has been untruthful

15   for any purpose or to any extent.

16        JUDGE POOLER:  You are relying on his information in

17   other cases?

18        MR. KAMINSKY:  Yes.

19        There are no current prosecutions that involve the

20   necessary testimony or information from Doe at this time.  But

21   there got to be a situation where ten years of constant

22   undercover work and arrests and indictments as well as

23   convictions, some very extensive, made as a result of his

24   actions got to a point where it became too dangerous to allow a

25   confirmation of his cooperation to be known.

1     There have been public accounts.  They have been

2  extensive in terms of their allegations, but they have been

3  lacking in terms of their corroboration and the government seal

4  of approval, if you will.  The government feels that is an

5  important difference.

6     JUDGE CABRANES:  At this particular proceeding I take

7  it that the government is seeking a temporary injunction, that

8  is, for the time being, during the pendency of the appeal,

9  which presumably would sort out all of these issues.

10     MR. KAMINSKY:  That's correct.  The government

11  certainly envisions a time when part of this docket will be

12  unsealed, and I note to the Court that the actual filing

13  occurred in May, meaning the Southern District complaint that

14  started this whole incident.  But only on February 3 and 4 did

15  Mr. Roe or counsel for Mr. Roe finally make a motion, it was

16  actually a demand below to unseal the docket.  And I do not

17  know what procedures the district court intends to employ.  As

18  U.S. v. Doe from 1995 states, there are numerous ways for a

19  district court to go about determining --

20     JUDGE CABRANES:  How many cases are there, as far as

21  you know, in the Southern District of New York that are

22  arguably related to these matters?

23     MR. KAMINSKY:  Only one, your Honor.

24     JUDGE CABRANES:  Only one?

25     MR. KAMINSKY:  Yes.

1          JUDGE CABRANES:  This is the one before Judge

2   Buchwald?

3          MR. KAMINSKY:  Correct.

4          JUDGE CHIN:  Judge Buchwald never sealed that case,

5   right?  She just sealed the complaint as opposed to the entire

6   case?

7          MR. KAMINSKY:  That's correct.  Your Honor, I stand

8   corrected.  I have not been involved in the civil matters.  I

9   turned to Mr. Doe's counsel.  I have been informed the answer

10  is three, three related matters.

11         JUDGE POOLER:  Counsel, I read an article in the New

12  York Times that seems to have vital information about John Doe.

13  How can you keep it secret when it's been in the New York

14  Times?

15         MR. KAMINSKY:  Your Honor, there are a number of

16  things, a number of responses to that.

17         JUDGE POOLER:  That was submitted to me I didn't go

18  searching for it.  It was submitted with one filing.  I guess

19  must be from Richard Roe.

20         MR. KAMINSKY:  The government alerted the Court to

21  that.

22         JUDGE POOLER:  OK.

23         MR. KAMINSKY:  In that filing, your Honor, there were

24  three individuals who pleaded guilty together as part of the

25  underlying crime who became cooperators together and then who

1    worked for the government. One of those cooperators became

2    disgruntled, spoke to the New York Times and said, I was there

3    I saw it happen. But the Times itself couldn't find any

4    confirmation of that.

5         It may be that during a future determination of how

6    much could be unsealed that article will play a role. But the

7    government feels that opposing counsel's actions in this case

8    of unilaterally deciding to out the cooperator within the

9    context of a current litigation is just not an acceptable way

10   of doing that.

11        However, your Honor, the government also feels that it

12   is a world of difference between the Times speculating about

13   something and it being enough of a government stamp of approval

14   to warrant retaliatory action against somebody. The government

15   feels at this time that the threats are still extensive enough

16   that even with that article it would be extremely dangerous to

17   have Mr. Doe's cooperation revealed.

18        JUDGE CABRANES: To the extent that we may be

19   restraining dissemination of these materials to the press or to

20   other media, I have a number of questions for you. These

21   questions will be a little specific. They might seem a bit

22   redundant, but I want to make sure that we have everything set

23   forth very clearly on this record.

24        And now I'm turning to the famous question of prior

25   restraint. One way of evaluating a prior restraint is to

1   examine the gravity of the evil discounted by the impossibility

2   that it will occur.

3            What exactly is the danger you fear here if the

4   information in these documents becomes public?

5            MR. KAMINSKY:  Your Honor, it's twofold:  I'll start

6   with the, if you will, less grave one first.

7            As this Court stated in <u>Amedeo</u> II, the knowledge that

8   someone who is a cooperator and has gone to the extent that

9   Mr. Doe has will be an outed individual who will have to live

10  his or her life in fear I think is something that will dissuade

11  such cooperation in the future.  As that Court said, if such

12  informants in the present or future cases anticipate that their

13  cooperation will likely become a matter of public knowledge,

14  valuable cooperation might cease.

15           Second of all, I think it's a very real harm that

16  could come to Mr. Doe himself.  The very families that Mr. Doe

17  cooperated against have killed witnesses in the past.  That's

18  been recorded.  And his cooperation --

19           JUDGE CABRANES:  You are speaking of organized crime

20  families?

21           MR. KAMINSKY:  That's correct.  And his cooperation

22  was not just the type of cooperation not to be noticed.  It

23  shut down an enterprise that shut off the valve to tens of

24  millions of dollars.

25           JUDGE POOLER:  Do they know who the cooperator is?

1          MR. KAMINSKY:  Your Honor, there are a number of

2    different individuals whom they may suspect.  But Mr. Doe was,

3    depending how one looks at it, fortunate to not have to testify

4    over his 11-year career as a cooperator and none of the

5    individuals in organized crime had ever received any, as far as

6    the government knows, any official acknowledgement of that

7    cooperation.

8          JUDGE POOLER:  Has he been sentenced for his

9    conviction?

10         MR. KAMINSKY:  Yes.

11         JUDGE CABRANES:  So I take it that in your experience

12   you are telling us that the danger here can be characterized as

13   great and certain?

14         MR. KAMINSKY:  Your Honor, the government certainly

15   affirms the word "great."  "Certain" is something the

16   government is a little bit less comfortable with.  I'm

17   comfortable with the words in Doe of a substantial probability.

18   I believe that probability is substantial.

19         JUDGE CABRANES:  So, if I understand you correctly,

20   you're saying that the critical government interest here is

21   protecting the life of the cooperating witness, among other

22   things?

23         MR. KAMINSKY:  Yes, your Honor.

24         JUDGE CABRANES:  Are there any less intrusive measures

25   other than sealing that would be adequate to prevent the danger

1    we are talking about?

2         MR. KAMINSKY:  The government thinks not, your Honor.

3         The extent of what sealing would be left on this

4    record is still something that is to be worked out.  But the

5    government advocates for a sealing that does not release the

6    real name of Mr. Doe and does not reveal facts that would alert

7    other individuals to his cooperation or conviction.

8         JUDGE CABRANES:  Is it the case that various orders

9    entered by the district court and the Court of Appeals involve

10   no prior restraints on the press or media?

11        MR. KAMINSKY:  That's correct.

12        JUDGE CABRANES:  That is, we are not talking about

13   preventing a news organization from publishing a matter of

14   public concern or impinging on editorial discretion.

15        MR. KAMINSKY:  No, your Honor, and the government

16   feels that's particularly salient in this case.  The Supreme

17   Court in Gentile v. State of Nevada has laid out a clear

18   distinction between attorney speech, especially that in the

19   context of ongoing litigation, meaning not an attorney as a

20   private citizen but as an attorney acting as a hired legal

21   representative and that of the press.  It is regulated by an

22   entirely different standard, and the Supreme Court has said

23   that an attorney's First Amendment rights do not give him a

24   blanket opportunity to commit what are clearly unethical acts.

25        JUDGE POOLER:  Indeed, as we discussed a moment ago,

1  this has been published information about this case has been

2  published.

3          MR. KAMINSKY:  That's correct, your Honor.

4          JUDGE CABRANES:  Let me understand something about the

5  proceedings before Judge Glasser.

6          Do I understand correctly that Judge Glasser only

7  issued a permanent injunction with respect to the presentence

8  report?

9          MR. KAMINSKY:  Correct.

10          JUDGE CABRANES:  And the cooperation agreement, the

11  proffer agreement, and the sealed indictment, what's their

12  status, and do they remain in the possession of Richard Roe?

13          MR. KAMINSKY:  They remain in the possession of

14  Richard Roe.  I believe the copies of these documents remain in

15  the possession of Mr. Roe and other individuals to whom he

16  originally sent them when he filed the complaint.

17          But Judge Glasser has currently not reviewed them, has

18  not resolved that issue.  It was clear to Judge Glasser that

19  the PSR, according to <u>Charmer</u> was a clear issue of law where

20  the document had to be returned by Mr. Roe, but he asked for

21  briefing on what powers he had to ask for documents to be

22  returned that were taken.

23          The issue there was, your Honor, who did the original

24  sealing order apply to, and if Mr. Roe was not a party to that

25  original proceeding did Judge Glasser have the authority to

1   enjoin him.  The government has written on that matter and has

2   briefed the issue that, according to the all writs act, Judge

3   Glasser does have such power.

4          JUDGE CABRANES:  And that matter is still before Judge

5   Glasser?

6          MR. KAMINSKY:  That's correct.

7          I would just like to remind the Court that there was I

8   standstill agreement between Roe and Doe for about four months

9   where nothing happened at all, and then in the fall the

10  litigation resumed again.  And that's when the government filed

11  a letter in furtherance of another injunction.

12         JUDGE POOLER:  Does the government have a theory as to

13  how Roe got ahold of these documents?

14         MR. KAMINSKY:  We do, your Honor.  Judge Glasser held

15  a day of hearings where he called Roe to testify, and Mr. Roe

16  stated that it was a client of his --

17         JUDGE POOLER:  Not John Doe?

18         MR. KAMINSKY:  No.  A client of his had given them to

19  him.  Mr. Doe testified that he kept them in his office, and

20  Judge Glasser came to the conclusion at the end of the hearings

21  that a client of Mr. Roe had stolen them from Mr. Doe, from his

22  office, and had provided them to Mr. Roe.  Judge Glasser said

23  on the record that it was clear that they were taken under

24  less-than-legal circumstances.

25         JUDGE POOLER:  And Mr. Roe still has them?  Attorney

1  Roe still has them.

2          MR. KAMINSKY:  Yes, and copies.

3          JUDGE POOLER:  And copies of them?

4          MR. KAMINSKY:  Yes.

5          JUDGE POOLER:  Have you asked for them back?

6          MR. KAMINSKY:  I don't know if we specifically have

7  spoken on a one-to-one basis with them, but we have certainly

8  made clear our position that they are not entitled to them.

9          JUDGE POOLER:  You have never requested them to be

10 turned in to the U.S. Attorney's Office.

11         MR. KAMINSKY:  Your Honor, Judge Glasser directed

12 Mr. Roe to return the PSR to the U.S. Attorney's Office, and

13 we've never received his copy, so we did not.

14         JUDGE CABRANES:  Did that happen as far as you know?

15         MR. KAMINSKY:  No, we haven't been given anything.

16         JUDGE CABRANES:  You don't know of any reason to

17 believe that the presentence report was returned.

18         MR. KAMINSKY:  At this time the government is positive

19 that Mr. Roe has copies of the PSR that he says that he is

20 under no obligation to return to anyone.

21         JUDGE CABRANES:  But there is an order directing him

22 to return his copies of the PSR?

23         MR. KAMINSKY:  Yes, and he appealed that.

24         JUDGE CABRANES:  But we don't know whether he has

25 obeyed that order.

1    MR. KAMINSKY:  He has clearly not obeyed that order,

2    your Honor.

3    JUDGE CABRANES:  I see.  Are you aware whether any

4    authorities in the federal or state governments are

5    investigating or considering criminal prosecution of the people

6    who apparently stole these documents in the first place?

7    MR. KAMINSKY:  I have.  I recently been in contact or

8    received a call from assistant district attorneys in Manhattan

9    where Mr. Doe's office was.  I guess that would be the

10   jurisdiction for the theft.  But I am not involved in that and

11   don't know how far it's gone.

12   JUDGE CABRANES:  Thank you.

13   Let's hear from -- unless my colleagues have any other

14   questions?

15   JUDGE POOLER:  No.

16   JUDGE CABRANES:  We'll turn to counsel for Roe.

17   MR. KAMINSKY:  Thank you, your Honor.

18   MR. LERNER:  Good afternoon, your Honors.  I would

19   first like to correct the record.  The PSR which Mr. Roe

20   received directly from the former client at the company, who I

21   shall not name, that was handed up to the Court as an exhibit

22   during the proceedings.  That original is in the Court's

23   possession.

24   There was further briefing --

25   JUDGE CABRANES:  In possession of Judge Glasser?

1              MR. LERNER:  Yes.

2              JUDGE CABRANES:  Do you or your client continue to

3    have copies of the presentence report?

4              MR. LERNER:  Yes, electronic copies.

5              Now, there's affidavits -- I don't know whether your

6    Honors have seen the affidavit from the company's general

7    counsel.  He states that when he received the complaint in the

8    Southern District action from Mr. Roe, and this was before

9    there was any injunctive relief or a sealing order issued, that

10   attorney, Mr. Schwartz, disseminated it to many people.

11             JUDGE CABRANES:  Who is Mr. Schwartz?

12             MR. LERNER:  He was the general counsel of the company

13   who I think I am -- shall I name the company here?

14             JUDGE CABRANES:  Yes, I think so.

15             MR. LERNER:  Bay Rock.  He was the general counsel of

16   Bay Rock.  He disseminated when it was received, when that

17   complaint was received from the attorney for Bay Rock.  The

18   firm was Akerman Senterfitt.  Akerman Senterfitt, a Miami firm,

19   represented Bay Rock.  That complaint was provided as a

20   courtesy to the Akerman Senterfitt firm with all of the

21   exhibits.

22             That e-mail was then forwarded to Bay Rock's general

23   counsel who disseminated it.

24             JUDGE CABRANES:  Those exhibits of court documents

25   included the presentence report?

1          MR. LERNER:  Included the presentence report.

2          JUDGE CABRANES:  Anything else?  Any of these other

3   documents?  Cooperation agreement?

4          MR. LERNER:  The complaint, the cooperation agreement,

5   and the criminal information.

6          So what's before the Court below --

7          JUDGE CABRANES:  Well, you've submitted today a letter

8   dated February 11 which I have not been able to fully digest

9   shall we say.  You know the letter I'm referring to.

10         MR. LERNER:  Yes, if I may summarize it, simply

11  indicating the attorneys with whom Mr. Roe has consulted with

12  regard to various issues that are connected with this.

13         JUDGE CABRANES:  Does the list of persons or the

14  number of persons to whom you just referred as having received,

15  electronically or otherwise, these documents, are they listed

16  in your filing?

17         MR. LERNER:  I don't think we mentioned Mr. Schwartz.

18         JUDGE CABRANES:  Are you going to be able to give us

19  that information in another letter?

20         MR. LERNER:  I think we can supplement that.  I

21  indicated that it was to the best of our abilities at the time.

22         JUDGE CABRANES:  But you think you will be able to do

23  that, to supplement it as best you can?

24         MR. LERNER:  I know that I provided full information

25  as to who I personally disclosed it to.

1        And that included --

2        JUDGE CABRANES:  What about your client Richard Roe?

3        MR. LERNER:  Mr. Roe, as he indicated in his

4    declaration, to the best of his knowledge he has disclosed

5    that.

6        JUDGE CABRANES:  This letter to which I have just

7    referred was submitted to the Court.  Was it submitted under

8    seal?

9        MR. LERNER:  It was not.

10        JUDGE CABRANES:  It was not.  Was a copy conveyed to

11    counsel for the government?

12        MR. LERNER:  No.  I indicated in the letter that I am

13    providing privileged information, however, if the Court wishes

14    to disclose it --

15        JUDGE CABRANES:  I am a little confused.  You didn't

16    file it under seal.  You didn't feel it was necessary to keep

17    it from the world.  You felt it was only necessary to keep it

18    from the government.  But, of course, they can go on the

19    electronic site and print it out.  So you don't mind if this is

20    copied and given to the government?

21        MR. LERNER:  I would not strongly object.

22        JUDGE CHIN:  Was it filed electronically?

23        MR. LERNER:  Actually, I did not know that it would be

24    filed in the docket.  I was asked by the calendar clerk to

25    provide the letter by 5:00 p.m., and I faxed it directly to the

1  calendar clerk.

2          JUDGE POOLER:  Attached to your letter is the

3  declaration of Richard Roe using his real name?

4          MR. LERNER:  Yes.

5          JUDGE POOLER:  Wasn't that a violation of previous

6  orders?

7          MR. LERNER:  I don't know that Roe could sign a

8  declaration in the name of Roe.  I don't know.  As I indicated

9  in my letter, I didn't know how to deal with that from a

10  technical perspective.

11          JUDGE CABRANES:  Inasmuch as you have no objection to

12  sharing this letter of February 11 with the government, for the

13  sake of expedition, I am going to give my copy to the clerk to

14  pass it to the government, since we can get our own copy off

15  the computer.

16          MR. LERNER:  I would like to correct another statement

17  that was made earlier, and then I would like to proceed with

18  the argument.

19          The Court directly asked the government whether any of

20  these documents are out in the public domain.  The answer, and

21  now that I can, I think I can fairly -- well, may I state a

22  publication on the record as to where -- OK.  Business Week

23  published an article in 1998.  That article is called, The Case

24  of the Gym Bag that Squealed.  That article indicates that

25  Business Week has a copy of the complaint.  That article is

1    still up on the website.

2            I submit that if Business Week has the right, as they

3    obviously do, to disseminate that complaint and to discuss that

4    complaint, so too --

5            JUDGE CHIN:  Did you say 1998?

6            MR. LERNER:  Yes.  And that article is still up.

7            JUDGE CHIN:  And the complaint, which complaint are

8    you talking about?

9            MR. LERNER:  The complaint in the Eastern District

10   action.

11           JUDGE CHIN:  In the criminal case, OK.

12           MR. LERNER:  The Eastern District action, the criminal

13   case, yes.  That article, which remains on the website,

14   indicates that Business Week has a copy of the criminal

15   complaint, which means that they got it from the government or

16   they got it from the FBI.  OK.  So it is not --

17           JUDGE POOLER:  Why does it naturally follow that they

18   got it from the government or the FBI?

19           MR. LERNER:  Well, one would presume that Mr. Doe did

20   not give it to Business Week.

21           JUDGE POOLER:  And Mr. Roe was not involved at that

22   point?

23           MR. LERNER:  No.  Mr. Roe wasn't involved in anything

24   related to Bay Rock until I believe he was retained to

25   represent the aforementioned person or assist in prepping an

1    individual for a deposition.

2           JUDGE POOLER:  When was that?  When did he come in

3    contact with the facts of this case?

4           MR. LERNER:  Well, he's been involved with the facts

5    of the Bay Rock matter for about two years.  He's been

6    preparing a RICO complaint.  It was only in March of 2010 that

7    the employee at Bay Rock who Mr. Roe was assisting to prepare

8    for a deposition said, I know you are working on this case,

9    these documents might be of use to you.

10          JUDGE CABRANES:  Can you set forth precisely how your

11   client obtained the sealed presentence report, the cooperation

12   agreement, and the other documents from those criminal cases?

13          MR. LERNER:  Yes.  There was testimony on the record

14   that Mr. Row obtained them from that individual who he was

15   assisting to prep for a deposition.

16          We supplemented that with e-mails that we submitted to

17   the judge below.  That indicated that these documents were

18   maintained on the Bay Rock company's website -- I'm sorry,

19   internal computer system.

20          Mr. Doe had directed that witness who I'm referring

21   to, the deponent, as part of his job --

22          JUDGE CABRANES:  Who was that witness?

23          MR. LERNER:  May I state his name?

24          JUDGE CABRANES:  Yes.

25          MR. LERNER:  Bernstein, Joshua Bernstein.

1          -- had instructed Joshua Bernstein to keep backup

2     copies of all documents, all important documents.

3          So, these documents were on the Bay Rock server.  Now,

4     Mr. Doe testified below that he wasn't a partner in the

5     company.  He was a mere employee.  There's nothing in the

6     record to indicate that he had an expectation of privacy as to

7     e-mails, e-mail documents maintained on the company server.

8     But these documents were -- downloading these documents and

9     archiving them and reviewing them was part of Mr. Bernstein's

10    job.

11         JUDGE POOLER:  Is that a public website or --

12         MR. LERNER:  No, it is a private internal company

13    website.

14         JUDGE POOLER:  Right.

15         MR. LERNER:  So it was obtained lawfully.  And I will

16    not point out that under the Pentagon papers case it is

17    irrelevant whether the documents were obtained lawfully or

18    unlawfully.  They may be used and published as --

19         JUDGE POOLER:  The PSR's have their own sealing

20    regimen that does not relate to any order of the court.

21         JUDGE CABRANES:  We are not dealing here with prior

22    restraint of the press or the media.  That's what the Pentagon

23    papers case was about.

24         MR. LERNER:  Well, your Honors, I would respectfully

25    submit that petitioning the government for redress of

1    grievances by filing a complaint in an action --

2         JUDGE CHIN:  Do you acknowledge, right or wrong,

3    whether the sealing order was correctly issued or not correctly

4    issued, do you acknowledge that your client has to comply,

5    subject to his right to appeal?

6         MR. LERNER:  Your Honor, I am not certain which

7    sealing order you're referring to.

8         JUDGE CHIN:  Any order.  If there is an order in place

9    prohibiting him from disclosing certain things, do you

10   acknowledge that he must comply with that order subject to his

11   ability to appeal and get relief from a higher court?

12        MR. LERNER:  May I read directly from the transcript

13   below with respect to that issue?

14        JUDGE CHIN:  I would like it if you would answer my

15   question.

16        MR. LERNER:  The answer to the question was answered

17   on the record by Mr. Roe.  He said, My understanding is that a

18   sealing order is directed to court personnel and it is not an

19   in personam -- it is not an order against other individuals.

20        JUDGE CABRANES:  Judge Chin directed his question to

21   you.

22        MR. LERNER:  My answer is no, a sealing order is

23   directed to court personnel.  It is not directed to

24   individuals.  A sealing order may be accompanied by an

25   injunctive order prohibiting speech.

1          JUDGE CHIN:  What is the point of a sealing order if a

2     party could freely disseminate the document?   It would

3     completely undermine the point of the sealing order.

4          MR. LERNER:  Judge Glasser stated on the record that

5     there is no sealing order in the case, so he could not have

6     violated a sealing order.  Moreover, in the testimony, Mr. Roe

7     stated, My understanding is that a sealing order is not an

8     injunction, and he cited in his testimony a case called Roman

9     Catholic Diocese, a Kentucky case, the Supreme Court.  And

10    Judge Glasser stated, Your understanding is correct.

11         JUDGE CABRANES:  When Roe obtained these documents,

12    were any of them marked in any way that suggested that they

13    were under seal?

14         MR. LERNER:  Not the criminal information, not the

15    complaint, not the cooperation agreement.  There were markings

16    on the PSR.  I don't recall the exact language of the PSR, but

17    it is not a 65(d) injunction, which must be directed to

18    specific individuals.  It must state the basis for the

19    injunction.  It is not a court order directed to

20    Mr. Oberland -- Mr. Roe.

21         JUDGE CABRANES:  You can refer to him by name here.

22    It's all right.  We are all under seal here.  But, of course,

23    you may not believe in sealing orders.  But you can feel free

24    to refer to anyone here by the correct name or the code name,

25    as you wish.

1          MR. LERNER:  Well, the PSR doesn't have injunctive

2     language in accordance with Rule 65(d).  Therefore, it is not

3     subject to -- it is not an injunction.  It could not bar the

4     dissemination by Mr. Roe.

5          JUDGE CABRANES:  Take 60 seconds and wrap up your

6     argument.

7          MR. LERNER:  Your Honors, we are here before the Court

8     on a motion to seal the docket.  There has been no record

9     finding in support of the sealing of the docket.  There's no

10    evidence that has been submitted, there's argument, but no

11    evidence to support the sealing of the docket.  And in order to

12    seal a docket, there must be on-the-record findings

13    demonstrating its propriety.  I would also like to state --

14         JUDGE POOLER:  Don't we have an admission from Mr. Roe

15    that he has these documents?  Isn't that per se evidence?

16    Isn't that enough?

17         MR. LERNER:  To seal the appellate docket?

18         JUDGE POOLER:  Yes.  He has records that the judges

19    thought were under seal already.  He has them and admitted he

20    has them.

21         MR. LERNER:  Yes, he has them.

22         JUDGE POOLER:  Why isn't that enough evidence to seal

23    the record until further order of this court?

24         MR. LERNER:  Because in Hartford Courant this court

25    said it is inappropriate to seal an entire court docket.

1            JUDGE POOLER:  But that is also a newspaper case.

2            MR. LERNER:  I would submit, your Honors, that under

3    Citizens United all individuals have the same First Amendment

4    rights.  The Supreme Court stated it expressly.  We no longer

5    distinguish between newspapers and individuals.

6            JUDGE POOLER:  But newspapers have a special charge in

7    publishing information for citizens.  Mr. Roe doesn't have any

8    charge in making this information available to citizens.

9            MR. LERNER:  Mr. Roe has the charge to represent his

10   clients, who have the charge to represent, as they are acting

11   in a fiduciary role, they represent they are acting

12   derivatively and representing many investors.  So he has a

13   First Amendment right to use and publish these documents as he

14   will.

15           Now I will state very directly, your Honor, the fact

16   that this is not out in the public proves Mr. Roe's good faith.

17   He has never circulated this publicly.  He asserts his absolute

18   right to do so, but he has not done so.

19           We ask that the Court abide by U.S. Supreme Court

20   precedent, and if it is to hold that this proceeding is to be

21   closed, that the docket is to be closed, that record findings

22   be made on evidence, and there is no evidence here to support

23   the burden of proof that is on the government.

24           JUDGE CABRANES:  Let me ask you directly, you have

25   filed a petition for certiorari with the Supreme Court?

1          MR. LERNER:  We have filed a petition to stay this

2    proceeding.  Every name that could give anyone notice as to

3    what is going on here was redacted.  I provided that to this

4    Court in advance before filing it.  I provided it to counsel in

5    advance before filing it.

6          JUDGE POOLER:  Did you file it at noon as you said you

7    were going to do?

8          MR. LERNER:  It was filed precisely at noon.

9          JUDGE CABRANES:  Today?

10          MR. LERNER:  No, it was filed at noon on Friday.

11          JUDGE CABRANES:  Noon on Friday.

12          MR. LERNER:  It was denied.

13          JUDGE CABRANES:  It was denied already?

14          MR. LERNER:  Yes.

15          JUDGE CABRANES:  So there's nothing pending before the

16    Supreme Court at this point?

17          MR. LERNER:  That is correct.

18          JUDGE CABRANES:  Lest there be any confusion, we think

19    that you should make whatever arrangements are appropriate with

20    the Clerk of the Supreme Court to make sure that this

21    now-defunct proceeding remains under seal for the time being.

22    That is for you to apply, and you can indicate to them on

23    notice to the government that you are doing so at the request

24    of the Court.

25          In any event, any further appeals to the Supreme Court

1  should be, unless you hear otherwise from this Court, properly

2  denominated as under seal.  Is that understood?

3        MR. LERNER:  Yes, absolutely, your Honor.

4        JUDGE CABRANES:  It is so ordered.

5        JUDGE CHIN:  Is it understood that it applies not just

6  to Court personnel but to anyone with notice of it, including

7  your client, without prejudice to your position, but otherwise

8  we are going to be right back to square one.

9        MR. LERNER:  I think we will understand it to mean

10  that any petition will not be widely disseminated.  It will go

11  from my hands --

12        JUDGE CABRANES:  Will not be disseminated, period.

13        MR. LERNER:  Will not be disseminated, period.  It

14  will be in my hands, Mr. Roe's hands, counsel's hands.

15        JUDGE CABRANES:  We will recess, and we may have

16  something for you.  We would like you to stand by, and we are

17  going to consult with the Clerk of Court and others and we hope

18  to have something for you promptly.

19        Thank you.

20        (Recess)

21        JUDGE CABRANES:  It is 2:53 p.m.  I have asked the

22  clerk to enter an order that was entered formally at 2:45 p.m.,

23  copies of which are being delivered at this very moment to

24  those counsel who are present.

25        We will take a moment or two to review the order.

1             Page 2 of course is a description of past proceedings.

2             Page 3 deals with the petition information, the writ

3     of mandamus, which you will note has been denied, and the

4     docket in that proceeding and all documents referenced therein

5     shall remain sealed until further order of the Court.

6             On page 4 we turn to the request by the government for

7     injunctive relief.  There will be a remand to the district

8     court for the limited purpose of enforcing this Court's orders

9     and the related district court orders while the appeal goes

10    forward on the merits.  And the appeal will be expedited.

11            There is a briefing schedule on page 5.  This is a

12    remand under U.S. v. Jacobson.  This panel shall retain

13    jurisdiction over the pending appeal both for the disposition

14    of the appeal on the merits as well as with respect to any

15    further motions practice.

16            Any other appeals from the district court's order

17    granting the permanent and temporary injunctions at issue and

18    any appeals arising from any further proceedings in the

19    district court, including any further petitions for

20    extraordinary writs, including the writ of mandamus.  It is so

21    ordered.

22            Is there anything else anyone wishes to.

23            Why don't you come to the microphone so we can have

24    the benefit of your comments?

25            MR. LERNER:  The matter in the Southern District is

1   presently stayed with an order to Mr. Roe to file a

2   supplemental complaint upon the completion of the proceedings

3   before Judge Glasser.

4           We understand that he's been enjoined from making any

5   further applications.  However, he would like to submit

6   application to Judge Buchwald to request further --

7           JUDGE CABRANES:  He has not been enjoined from making

8   any further applications.  You have misread this order.  He has

9   been enjoined from making any dissemination of any of these

10  documents.

11          You can appear before Judge Buchwald at any time you

12  think appropriate, and the only condition that I would place on

13  that would be that you should, in making any presentation to

14  Judge Buchwald, attach to any filing a copy of this order.

15          MR. LERNER:  Thank you, your Honor.

16          JUDGE CABRANES:  It is so ordered.

17          Yes?  Any further applications or comments?

18          MS. MOORE:  Your Honor, my name is Kelly Moore.  I'm

19  with the form of Morgan Lewis & Bockius.  We have been

20  representing Mr. Doe for sometime now.  Unfortunately our legal

21  fees have gone through the roof on this matter, and a couple of

22  months ago he retained a former colleague of mine, Mr. Beys, to

23  represent him in connection with the Southern District.

24          JUDGE CABRANES:  That's fine.

25          Let me just say I handled your application as a

1   one-judge application, but frankly, not knowing what was going

2   on at the time that your application arrived, I denied it

3   without prejudice.  I gather that you are now renewing your

4   application to withdraw and to be substituted?

5           MS. MOORE:  Yes, your Honor.

6           JUDGE CABRANES:  The application is granted.

7           MS. MOORE:  Thank you.

8           MR. BEYS:  Thank you.

9           JUDGE CABRANES:  Anything else?

10          Does the government need any comment or application?

11          MR. KAMINSKY:  Very briefly, your Honor.

12          The government during the brief recess had an

13  opportunity to first look at opposition's letter in terms of

14  which further counsel they've spoken to and submitted the filed

15  documents.  The government is very concerned generally, but

16  particularly concerned about one specific attorney who

17  represents a large amount of individuals accused of being part

18  of organized crime families.

19          JUDGE CABRANES:  I don't mean to minimize the

20  importance of what you are saying, but I think my colleagues

21  will agree that your concerns should now be addressed to the

22  district court.  I think you will wish to contact Chief Judge

23  Dearie to determine who exactly is going to handle the

24  implementation of the court's mandate.  And that judge can hear

25  any concern or application by you with respect to that.

1        On the other hand, you may wish to complete the record

2    before our Court and state whatever you think appropriate.  You

3    may wish to include some of that in the briefing on the merits,

4    but I think if you're asking for relief or you want to apply

5    for relief in that regard, you should take it up in the Eastern

6    District of New York.

7        Is that agreeable?

8        MR. KAMINSKY:  Absolutely, your Honor.  There was just

9    more of a technical question of whether today's sealed

10   proceeding would bar the government from speaking with one of

11   those attorneys and asking for the documents back.

12       JUDGE CABRANES:  No.

13       MR. KAMINSKY:  Thank you.

14       JUDGE POOLER:  Counsel, before you sit down, this

15   matter before us was triggered by your motion for a temporary

16   stay of the unsealing.

17       MR. KAMINSKY:  Yes.

18       JUDGE POOLER:  Do you have reason to believe that the

19   documents were about to be unsealed?

20       MR. KAMINSKY:  Yes.

21       JUDGE POOLER:  What is the basis for that?

22       MR. KAMINSKY:  We spoke to the Clerk of the Court here

23   and we were informed that, unless someone makes a motion, it's

24   going to be unsealed.  It was sealed as a matter of course when

25   the appeal was filed.

1          JUDGE POOLER:  That is, the appeal in this Court?

2          MR. KAMINSKY:  Yes.  Correct.  That was sealed pro

3    forma, and when we called to inquire about it they said not for

4    long, so we made this motion.

5          JUDGE POOLER:  Thank you.  Thank you for clearing that

6    up.

7          JUDGE CABRANES:  Thanks very much.  We are in recess.

8          (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25