UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

UNITED STATES OF AMERICA,       :

           Plaintiff,       :      **FILED UNDER SEAL**

-against-

                               :

JOHN DOE                    :      98 CR 1101 (ILG)
          Defendants.

-against-                      :

RICHARD ROE

                              :
         Non-Party Respondent
                              :

                              :

--------------------------------------------------------------x

## DEFENDANT JOHN DOE'S ("DOE") MEMORANDUM OF LAW IN SUPPORT OF AN ORDER ENJOINING RICHARD ROE FROM DISSEMINATING CERTAIN SEALED AND CONFIDENTIAL DOCUMENTS AND DIRECTING ROE TO RETURN ALL COPIES OF DOE'S SEALED AND CONFIDENTIAL DOCUMENTS

BEYS, STEIN & MOBARGHA LLP
Nader Mobargha, Esq. (NM7162)
Jason Berland, Esq. (JB4136)
The Chrysler Building
405 Lexington Avenue, 7th Floor
New York, New York 10174
212-387-8200
*Attorneys for Defendant John Doe*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS..................................................................................................2

STATEMENT OF THE ISSUES PRESENTED.....................................................................15

ARGUMENT.....................................................................................................................15

   I-  THE FIRST AMENDMENT DOES NOT APPLY TO ROE'S THEFT AND
       ILLEGAL DISCLOSURE OF DOE'S OTHER SEALED AND
       CONFIDENTIAL DOCUMENTS.................................................................15

   II-  UNSEALING DOE'S DOCUMENTS WILL REVEAL DOE'S COOPERATION
       AND VIOLATE THE COURT OF APPEALS'ORDER.................................18

      A.  The Cooperation Agreement ..............................................................19

      B.  The Information and the Proffer Agreements ...................................19

      C.  The Complaint .....................................................................................20

   III-  THE SAFETY OF DOE AND HIS FAMILY OUTWEIGH ROE'S
       PURPORTED FIRST AMENDMENT RIGHT OF ACCESS TO USE STOLEN
       DOCUMENTS AS A TOOL OF EXTORTION IN A MERITLESS
       LITIGATION...............................................................................................21

      A.  Doe has a compelling interest in keeping the Sealed and Confidential
        Documents sealed because his and his family's personal safety is at stake. ...............21

      B.  There are no reasonable alternatives to sealing that can adequately protect Doe.........23

      C.  The prejudice to Doe's and his family's safety overrides any qualified First
        Amendment right to Doe's judicial documents...............................................................23

      D.  Keeping the documents sealed is narrowly tailored to protecting Doe's
        compelling interest ...........................................................................................................24

   IV-  ROE SHOULD PAY DOE'S COSTS AND ATTORNEY'S FEES THAT HE
       HAS INCURRED AS RESULT OF ROE'S INTENTIONAL VIOLATION OF
       THIS COURT'S SEALING ORDER ............................................................25

CONCLUSION..................................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

Alcantra, 396 F.3d at 199 ................................................................................21

Bartnicki v. Vopper, 532 U.S. 514, 535 (2001).............................................16

EEOCv. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n, 753 F.2d 1172, 1178
   (2d Cir. 1985)..............................................................................................25

Florida Star v. BJF, 491 U.S. 524, 541 (1989) ..............................................15

Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d. Cir. 2004)............21

In re Zyprexa Injunction, 474 F. Supp.2d 385 (E.D.N.Y. 2007)....................16

Kriss v. Bayrock Group LLC, et al., 10 Civ. 3959 (PAE)( ..............................11

Lipin v. Bender, 84 N.Y.2d 562, 569 (N.Y. 1994) .........................................16

Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d. Cir. 2006) ...21

Shady Records, Inc. v. Source Enterprises, Inc., 351 F.Supp.2d 64 (S.D.N.Y. 2004)...............25

U.S. ex rel. Bruno v. Herold, 408 F.2d 125, 126-29 (2d Cir. 1969)................22

U.S. v. Alcantra, 396 F.3d 189, 196 (2d Cir. 2005)........................................21

U.S. v. Arroyo-Angulo, 580 F.2d 1137, 1142 (2d Cir. 1978) .........................22

U.S. v. Cojab, 996 F.2d 1404, 1408 (2d Cir. 1993).........................................22

U.S. v. Haller, 837 F.2d 84, 86-87 (2d. Cir. 1988) .........................................21

U.S. v. Mancuso, 2008 WL 2884397, at *9 (E.D.N.Y. July 23, 2008) ...........22

U.S. v. Visa U.S.A., Inc., 2000 WL 1682753, at *1 (S.D.N.Y. Nov. 9, 2000)............16

U.S. v.Doe, 63 F.3d 121, 128 (2d. Cir. 1995) ..................................... 21, 22, 23

Weitzmanv. Stein, 98 F.3d 717, 719 (2d Cir. 1996)........................................25

**Statutes**

18 U.S.C.A. § 3663A .................................................................................23, 24

18 USC §1962.....................................................................................................2

The following is Defendant John Doe's ("Doe") Memorandum of Law in Support of an Order Enjoining Richard Roe from Disseminating Certain Sealed and Confidential Documents, and Directing Roe to return all copies of Doe's Sealed and Confidential Documents.

## PRELIMINARY STATEMENT

Roe has no right to retain Doe's sealed and confidential documents, and no right to continue to "flout court orders." It is undisputed that Roe knew that his client, Joshua Bernstein, had stolen the Bayrock Group's ("Bayrock") hard drive. Nevertheless, Roe solicited and convinced Bernstein to provide him unfettered access to the documents on the drive. Indeed, on one fateful night, Roe plundered Bayrock's hard drive, and stole Doe's sealed and confidential documents, and Bayrock and Doe's privileged communications. He then used these documents to extort potential defendants, including Bayrock (Doe's employer), reputable law firms, and their insurance carriers, by threatening to file a meritless lawsuit and go public with the documents. Roe figured that these reputable institutions would each pay tens of millions of dollars to "settle" the case to avoid being publicly associated with Doe and the sensationalist details of his criminal past and cooperation with the United States Government, the details of which were contained in the sealed and confidential documents he attached to the complaint. When the defendants refused to comply with Roe's extortionate demands, Roe publicly disclosed those documents in knowing violation of a sealing order.

The First Amendment does not protect such conduct. Consequently, Roe cannot rely on the First Amendment – or any other theory – to challenge the continued sealing of Doe's documents.

Yet, even if Roe's conduct – which this Court described as "despicable" - is analyzed under the First Amendment, the documents should still remain sealed because unsealing them

would violate the Court of Appeals' explicit order that, on remand, this Court should not unseal any documents that reference or reveal Doe's cooperation. The sealed documents contain explicit statements referring to Doe's meetings with the Government; his potential placement in the Witness Protection program; "proffers" of evidence to the Government in exchange for a reduced sentence; and admissions to detailed and incriminating allegations – all of which undoubtedly reveal that Doe has cooperated with the Government during the last 13 years. Consequently, unsealing these documents would violate the Court of Appeals' order.

Roe's First Amendment challenge fails for another reason. It is hornbook law that the public's qualified right of access to judicial documents under the First Amendment is not absolute and can be outweighed by other compelling interests. Here, Doe's compelling interest in keeping his and his family safe from violent organizations – both local and international - far outweigh Roe's right to use Doe's documents as a tool of extortion in a civil litigation. Indeed, as the Court of Appeals found, the sealed documents at issue here are of "dubious utility in [Roe's] civil action except as a tool to intimidate and harass Doe by subjecting him to danger." Accordingly, Roe's First Amendment challenge must fail, and Roe should be directed to return all of Doe's sealed documents, including all electronic and hard copies. Finally, Roe should pay all of the costs, including attorney's fees, that Doe has incurred during the last 22 months as a result of Roe's intentional violation of this Court's sealing order.

## STATEMENT OF FACTS

### *Doe pleads guilty to an Information*

On December 10, 1998, John Doe pleaded guilty, pursuant to a cooperation agreement, to an Information charging him with participating in a racketeering enterprise, in violation of 18 USC §1962.

FILED UNDER SEAL                    2

*Doe cooperates with the Government and provides them crucial information about the Mafia and international terrorist organizations*

Following his guilty plea, Doe cooperated with the United States Attorney's Offices in the Eastern and Southern Districts of New York and law enforcement, providing information crucial to the conviction of over 20 individuals, members of La Cosa Nostra ("LCN") and international cyber-criminals, including those responsible for committing massive financial fraud. ▌

▌ *See* Exhibit ("Ex.") 1, Excerpts from U.S. Memorandum of Law in Support of Motion to Seal Docket, dated February 2, 2011 (The "Government's Court of Appeals Brief"), at 2-3.  His cooperation includes the following:

- *LCN:* Doe provided information crucial to the indictment of high-ranking members of LCN. ▌

▌ In part based on information provided by Doe, in March 2000, a federal grand jury returned a RICO, securities fraud and money laundering indictment against 10 of the most important participants in extensive fraud schemes, including high-ranking positions in the Gambino, Genovese and Bonanno Organized Crime Families.  *Id.* at 2-3.



Indeed, this Court specifically found that "releasing proof of Doe's cooperation would cause him irreparable harm and would put his safety at risk" as these organizations would violently retaliate against Doe and his family. *See* Ex. 2, Court of Appeals' Summary Order, dated December 20, 2011 (the "Summary Order"), at 6.

### The Government sentences Doe more than 10 years after his conviction

On October 23, 2009, over ten and half years after his conviction, and after years of extensive cooperation with the Government, the Court sentenced Doe to probation and a $25,000 fine.

### The Court seals the docket in Doe's criminal case and the documents referenced in them

Due to the sensitive nature of Doe's cooperation and the notorious reputation of some of the criminals against whom he cooperated, this Court sealed the docket in Doe's criminal case and the documents referenced in them. The sealed documents include:

(1) 2004 and 2009 Pre-Sentence Reports ("PSR");

(2) A Cooperation Agreement, dated December 10, 1998, between Doe and the Government and an attached United States Department of Justice Financial Statement (the "Cooperation Agreement");

(3) Two Proffer Agreements, dated October 2, 1998, and October 29, 1998 (the "Proffer Agreements");

(4) A draft Information; and

(5) A Complaint and Affidavit in Support of Arrest Warrants against, among others, Doe (filed under Docket No. 98-754M)

(together, "the Sealed and Confidential Documents) (excluding the PSR, the "Other Sealed and Confidential Documents"). These documents have remained sealed for over 13 years because their disclosure, and the information contained in them, pose a grave danger for Doe and his family. All of the Sealed and Confidential Documents disclose, among other information, Doe's identity.

Although Doe's Sealed and Confidential Documents remain under seal, there have been a few limited instances where the Government inadvertently disclosed Doe's cooperation. These limited instances, however, did not result in widespread dissemination. Once the Government discovered its oversight, it immediately resealed the information. *See* The Government's Memorandum of Law in Support of an Order Permanently Enjoining Richard Roe from Disseminating Certain Sealed and Confidential Documents, dated February 7, 2012 ("The Government's Current Brief"), at 4-6.

In addition, 12 years ago, in a March 2, 2000 press release announcing the indictment of 19 defendants, the Government inadvertently referenced Doe's conviction and referred to him by his real name. *Id.* at 5. The press release, however, did not mention Doe's cooperation with the Government. *Id.*

Finally, both *The New York Times* and *Business Week* published articles containing rumors about Doe's criminal case and possible cooperation. The Government has never

corroborated or confirmed the accounts in these articles. Despite these limited disclosures, Doe's Sealed and Confidential Documents have remained under seal since the inception of his criminal case. Unfortunately, this would not remain the case for long.

### *A former employee of Bayrock unlawfully obtains Doe's Sealed and Confidential Documents*

Subsequently, Joshua Bernstein, a former employee of Bayrock, also Doe's employer, unlawfully obtained Doe's Sealed and Confidential Documents during his employment. Doe, Bernstein's superior, had instructed Bernstein to maintain a back-up copy of all Bayrock files from the servers. *See* Ex. 3, Affidavit of Joshua Bernstein, with attached exhibits (the "Bernstein Affidavit"). Following Doe's instructions, Bernstein purchased an external hard drive and began to periodically back up Bayrock's email server onto the external hard drive (the "backup hard drive"). *See id.* at ¶ 3. Bernstein then copied all the data from the back-up hard drive onto multiple DVDs and maintained hard copies of some of the data. *See id.* at ¶ 4. Although Doe had authorized Bernstein to back up Bayrock's files on an external hard drive, he never authorized Bernstein to copy the data onto multiple DVDs and take them to his home. As Bernstein would later discover, the documents on the hard drive – and by extension the back-up hard drive and Bernstein's multiple DVDs - contained extremely confidential information, including (i) Doe's Sealed and Confidential Documents; (ii) privileged communications between Doe and his counsel, and (iii) privileged communications between Bayrock and its counsel. *See id.* at ¶ 5-6.

Bayrock ultimately fired Bernstein, yet even after his termination, Bernstein still refused to return the back-up hard drive to Bayrock. Bayrock made specific requests to Bernstein to return the hard drive, but Bernstein refused to do so because he believed that Bayrock still had not reimbursed him for his expenses. *See id.* at ¶ 8. It apparently did not occur to Bernstein –

**FILED UNDER SEAL** 6

or he simply did not care – that the paltry expenses for which he was seeking reimbursement did not justify his conversion of Bayrock's entire corporate server. The dispute over his expenses, and his unlawful possession of Bayrock's corporate server, resulted in a lawsuit between Bernstein and Bayrock in New York Supreme Court, Westchester County (the "Westchester Action"). *See id.* at ¶ 9.

### *Roe and his client, Jody Kriss, recruit Bernstein to help them in the pursuit of their claims against Bayrock*

Jody Kriss, also a former employee of Bayrock and a friend of Bernstein, was also pursuing claims against Bayrock and knew that Bernstein's possession of Bayrock's entire hard drive could help him in his litigation. Seizing on the opportunity to gain an illegal advantage in his future lawsuit against Bayrock, Kriss told Bernstein that if Bernstein "cooperated" with him and helped him in the pursuit of his claims against Bayrock and other related parties, Kriss would give him a piece of whatever he received from Bayrock. *See id.* at ¶ 11. Kriss's next step was to get his lawyer, Richard Roe, involved.

Roe convinced Bernstein to provide him access to Bayrock's hard drive by falsely convincing him that he would "represent" him in the Westchester Action.[1] Bernstein and Roe discussed the facts and circumstances of Bernstein's Westchester Action and Kriss's future action against Bayrock. *See id.* at ¶ 12. They then discussed Bernstein's possession of Bayrock's hard drive. *See id.* at ¶ 13. Roe assured Bernstein that the documents on the hard drive were not stolen and that, even if they were, Bernstein had every right to possess them. *See*

---

[1] Roe's representation of Bernstein was a sham because, as Bernstein attested in his affidavit, the questions that Roe posed to Julius Schwarz, Bayrock's General Counsel and executive officer, in a deposition in the Westchester Action "did not seem directly related to the Action…but may have been related to the lawsuit that Kriss had against Bayrock." Ex. 3, Bernstein Affidavit, at ¶ 29.

*id.* & Ex. 3 to Bernstein Affidavit ("as i said stolen emails are admissible, period. end of story. i mean admissible into evidence let alone discovery.")

Roe then informed Bernstein that he would like to review the back-up hard drive, along with other related evidence for his case against Bayrock, because he had reason to believe that bad things happened at Bayrock. *See id.* at ¶ 14. Roe also told Bernstein that Bernstein and Kriss may have a common interest against Bayrock. *See id.* Roe then provided Bernstein with a retainer agreement, dated February 28, 2010 (the "Retainer Agreement"), in which he attempted to explain the nature of the "Common Interest Privilege." The Retainer Agreement was a rambling, 7-page document, much of which Bernstein did not understand. *See id.* at ¶ 16 & Ex. 4 to Bernstein Affidavit. Roe also attempted to orally explain the privilege to Bernstein. *See id.* at ¶ 16. Bernstein ultimately signed the Retainer Agreement, but never paid Roe any legal fees for the representation. *See id.* at ¶ 19 & 20.

### *Roe plunders Bayrock's hard drive*

After signing the Retainer Agreement, Bernstein provided Roe with unfettered access to the information on the back-up hard drive. *See id.* at ¶ 21. One night, in late February 2010, Roe came over to Bernstein's apartment in New York City to review the evidence on Bayrock's hard drive. *See id.* Roe and Bernstein were the only ones in the room, and Roe sat at Bernstein's desk and used a search function on Bernstein's computer to search for relevant documents that originated from the back-up hard drive. *See id.* Roe searched for several hours. *See id.* Roe used a variety of search terms, including the names of various law firms that represented Bayrock. *See id.* at 22. Roe printed documents and emailed files. *See id.* at ¶ 21. At one point, Roe asked Bernstein if Bernstein had a "keystroke logger," which tracks what someone types on a keyboard. *See id.*

*Roe lies to Bernstein about Roe's right to access Bayrock's hard drive*

During the night, Roe made a number of false statements to Bernstein to convince him that what was transpiring was legal. First, Roe falsely told his client that he could either obtain the documents as he was doing, or via subpoena. *See id.* at ¶ 23. This was a lie because Roe cannot use subpoena power to obtain privileged or sealed documents. Second, Roe falsely told Bernstein that the documents from the hard drive were not privileged and confidential due to the "crime fraud exception." *See id.* This was an egregious misapplication of the rule, and a conclusion drawn without any formal application to the court that such an exception applies. Finally, Roe told Bernstein that Kriss was entitled to all the documents on the back-up hard drive. *See id.* This was also a lie.

Ultimately, through the use of his search terms, Roe discovered Doe's Sealed and Confidential Documents. The highly sensitive and confidential nature of these documents was evident on their face. Indeed, the PSR, one of the Confidential and Sealed Documents, specifically states that "[i]t is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge." The warning, however, did not deter Roe. Rather, with the considerable leverage he had just gained, he used Doe's Sealed and Confidential Documents to extort Bayrock, Doe, numerous law firms, and their insurance carriers.

Roe made no secret of his extortionate plan. A few days after the fateful night he discovered Doe's Sealed and Confidential Documents, Roe disclosed his plan to Bernstein and his father, Arnold Bernstein:

> i am so not kidding this is not a game this is not a $150,000 case anymore and DO NOT READ THIS WRONG this is a team and my job is to shake the living daylights out of them and it starts NOW

*Id.,* at Ex. 3 to Bernstein Affidavit. For Roe, Doe's Sealed and Confidential Documents had just increased the price of his lawsuit even though none of the information contained in them was legally relevant to his claims.

Armed with these documents - and numerous privileged communications between Bayrock and its counsel, and between Doe and his counsel - Roe drafted a rambling, 165-page, 785-paragraph complaint (the "SDNY Complaint") on behalf of both Kriss and another plaintiff, Michael Ejekam. The SDNY Complaint essentially accuses a group of Bayrock employees and principals (including John Doe), accountants, law firms, and other corporate entities of a massive RICO conspiracy, with Doe's criminal past as the foundation, and demands a king's ransom. The SDNY Complaint is nonsensical, and the list of defendants equally bizarre. Roe attached Doe's Sealed and Confidential Documents to the SDNY Complaint as exhibits and disclosed intricate details from these documents in his allegations.

Roe then extorted the defendants, threatening to disclose Doe's sensationalist criminal past and conviction if they did not comply with his demands for payment. On May 10, 2010, Roe sent an email to Ronald Kriss – Bayrock's former counsel, a partner at the law firm of Akerman Senterfitt and the father of Jody Kriss – attaching the SDNY Complaint and the Exhibits, and threatening to go public with everything if Doe and Bayrock did not comply with his demands (the "May 10th Email"). Specifically, in the May 10th Email, Roe states as follows:

> I recommend you forward this to Julius[2] with the comment from me that there are three alternatives here:
>
>   (a) I file publicly today
>
>   (b) I file under seal today
>
>   (c) He arrange a tolling agreement with EVERY defendant but nixon peabody.

---

[2] "Julius" refers to Julius Schwarz, the general counsel and an executive officer of Bayrock.

I don't care how many people he has to get on the phone and how fast he has to work. He had years to give back the money and now it's over. He can get Brian Halberg to help him.

I believe it's possible to get this in under seal if Bayrock joins in a joint motion in part 1 to seal the complaint pending a redaction agreement with the assigned judge but there are never any guarantees.

Thanks,

FMO

Roe knew that Doe did not have millions to pay him or his co-conspirators. His true goal – and the reason for suing law firms, accountant firms, and an insurance carrier – was to force these businesses to cut a big check to make him and any potential bad publicity go away. However, they refused to comply with Roe's demands.

Three days later, on May 13, 2010, Oberlander filed his 165-page complaint in the U.S. District Court for the Southern District of New York (*Kriss v. Bayrock Group LLC, et al.*, 10 Civ. 3959 (PAE) (the "SDNY Matter"), publicly disclosing the extraordinarily sealed and sensitive information which Roe knew, if disclosed, could endanger not only Doe's life, but also his family's. This Court would ultimately find that, by "unilaterally deciding" to disclose information in Doe's sealed criminal case, Roe had "knowingly and intentionally flouted a Court order." *See* Ex. 4, Scheduling Order, dated March 23, 2011 (the "Scheduling Order"), at 4.

On May 18, 2010, this Court issued an order, enjoining further dissemination of the Sealed and Confidential Documents and ordered a hearing to determine how the Sealed and Confidential Documents were obtained and to whom they had been disseminated. The hearing took place on June 21, 2010. At the conclusion of the hearing, this Court issued a permanent injunction against the dissemination of the 2004 PSR and the information contained in it, and directed Roe to return the document to the United States Attorney's Office. Regarding the

"Other Sealed and Confidential Documents", the Court extended its temporary restraining order until July 20, 2010, with Roe's consent, and requested that the parties brief whether the Court had the authority to permanently enjoin the dissemination of the Other Sealed and Confidential Documents.

On July 20, 2010, this Court held another hearing and recited the following factual findings: (1) Roe knew the documents at issue were sealed prior to his public filing of those documents; (2) Bernstein had "wrongfully taken" and had "no legal right to those documents"; and (3) the dissemination of the documents would cause "irreparable harm, which is imminent to Doe…[and] would put Doe's safety at risk." *See* Ex. 2, Summary Order, at 4. Over Roe's objection, this Court re-affirmed its June 21, 2010 ruling regarding the permanent injunction against dissemination of the PSR and extended its TRO with respect to the "Other Sealed and Confidential Documents." This Court further ordered that all originals and copies of such documents were to be returned or destroyed until Roe met his "burden with respect to whether or not there is some need to maintain those documents or to keep them." *Id.*

Roe brazenly violated this order (and numerous other orders). Roe failed to return the electronic copies of the PSR until April 2011 – over nine months later – and only did so because Judge Cogan, whom the Court of Appeals had given jurisdiction to implement and police its and this Court's orders, threatened to hold Roe in contempt if he did not return them. *See* Ex. 5, Transcript Excerpts from April 1, 2011 Hearing ("April 1st Hearing"), at 14:3-6. Judge Cogan further threatened to put Roe in the Metropolitan Detention Center if he continued to violate orders. *See* Ex. 5, April 1st Hearing, at 10:10-20. Although Roe did return copies of the PSR to avoid a contempt finding and prison time, he still failed to comply with this Court's order to return copies of the "Other Sealed and Confidential Documents."

*Roe is on a mission to disseminate Doe's Sealed and Confidential Information to national newspapers and countries all around the world*

From the moment Roe discovered Doe's Sealed and Confidential Documents, he has been threatening to disseminate sealed information – and in many instances, actually has disseminated sealed information – to the public and the press. As early as November 9, 2010, Roe made his threat explicit, in a letter to Doe's counsel:

> If you wish Doe's activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything uploads to PACER and goes public. The only way to try to prevent worldwide notoriety will be a globally stipulated sealed confidentiality order accompanying a global settlement. No prior restraint was ever possible and thanks to your litigation in the EDNY and what it revealed and the transcripts thereof, all you have accomplished now is to guarantee massive public interest in the cover-ups not only of the Doe conviction but the super sealed files and the evasion of mandatory restitution of the [dollar amount] (give or take) that Plaintiffs can allege Doe took out of [the company] and the wrongful concealment of the [dollar amount and cause of action] chose in action available against Doe, concealments themselves RICO predicates, which by definition make all these matters of public interest so beyond any First Amendment threshold as to make sill any attempt to enjoin.

*See* Ex. 6, Redacted Letter from R. Roe to B. Herman, dated November 9, 2010 ("November 9[th] Letter"), ¶ 3 (emphasis added). Roe further threatened to put Doe's sealed information "on the front pages everywhere, including New York, Iceland, Turkey, and Khazakhstan…" *Id.* at ¶ 5. His threats continued: "If this case is not settled quickly, it will surely go viral. If you obstruct a settlement instead of helping get there, everything will go public with clockwork inevitability. This is not a threat, it is mathematics. And it is certain." *Id.* at ¶ 6. Full-scale publicity of sealed information has been Roe's goal from day one.

Most recently, Roe and his attorney, Richard Lerner, gave an interview to *The New York Times*, which later published an article about Doe entitled, "By Revealing Man's Past, Lawyer tests Court Secrecy". Roe and Lerner brazenly revealed Roe's true name and identity in

violation of the Court of Appeals' unambiguous order to keep Roe's identity under seal.[3]  In addition, Lerner and Roe posed for a half-page photo, identifying themselves by face.  Now the press not only knows their true identities, but also can recognize their faces around the courthouse.

Worse yet, they gave their interview to the *New York Times* after Judge Cogan previously had accused Roe of seeking permission to disclose information that is the subject of the Court of Appeals' – and this Court's – sealing order:  "It seems obvious that Roe is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render then ineffective."  *See* Ex. 2, Summary Order (quoting Judge Cogan), at 5.  To date, Judge Cogan has denied all of Roe's requests to publicize information to the press.  Roe appealed all of Judge Cogan's, and this Court's orders.  The Court of Appeals rejected all of Roe's appeals.  Consequently, this time Roe and Lerner decided to publicize sealed information without the Court's blessing.

### *After rejecting all of Roe's appeals, the Court of Appeals remands the case to this Court with the order that Doe's cooperation not be revealed*

After summarily rejecting all of Roe's appeals and arguments, the Court of Appeals, in a Decision and Order, dated December 20, 2011, remanded the remainder of the case to this Court "for proceedings consistent with [its] order and with instructions …to issue a final determination regarding whether the dissemination of the other (non-PSR) sealed documents in John Doe's criminal case, particularly those that refer to Doe's cooperation should be enjoined, and (ii) in the event that a final determination regarding the dissemination of the other sealed documents does not result in an injunction against the dissemination of documents referring to Doe's

---

[3] In its Summary Order, dated February 14, 2011, the Court of Appeals explained that the reason it was using Roe as "a legal placeholder [was] because the disclosure of his true identity in this litigation context may, for the time being, lead to the improper disclosure of the materials at issue."

cooperation, to enter an order temporarily staying the unsealing of any documents referring to

Doe's cooperation pending an appeal by the government to our Court." *Id.* at 2-3.

Accordingly, the issue now before this Court is whether Doe's "Other Sealed and Confidential

Documents" should remain under seal.

## STATEMENT OF THE ISSUES PRESENTED

1.   Whether the First Amendment is implicated where Roe (i) knew that Doe's Other
     Sealed and Confidential Documents were unlawfully obtained and (ii) publicly
     disclosed the documents in knowing violation of a sealing order.

2.   Even if the First Amendment is implicated, whether unsealing these documents
     would reveal Doe's cooperation, and therefore, violate the Court of Appeals'
     Order.

3.   Whether, under the First Amendment, Doe's interest in keeping the Other Sealed
     and Confidential Documents sealed to protect his and his family's safety from
     retaliation from local crime families and ███████████████████████████
     outweighs Roe's interest in using those documents as a tool of extortion in a
     meritless litigation.

## ARGUMENT

## I-   THE FIRST AMENDMENT DOES NOT APPLY TO ROE'S THEFT AND
       ILLEGAL DISCLOSURE OF DOE'S OTHER SEALED AND CONFIDENTIAL
       DOCUMENTS

The First Amendment does not protect a thief's right to publish information that is not

rightfully his, nor does the First Amendment grant him the right to use stolen information to

extort settlements in a civil litigation by threatening to illegally unseal that information if

defendants do not comply with his demand.  Rather, the First Amendment has been broadly

applied by the Supreme Court to protect publication of "lawfully obtained" information. Florida

Star v. BJF, 491 U.S. 524, 541 (1989).  While the Supreme Court has recognized that an

innocent downstream recipient of stolen information may have the rights to such information

because "a stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern," the Supreme Court has never held that a thief can steal information and hand it off to his lawyer for publication in some concerted and concocted litigation scheme. Bartnicki v. Vopper, 532 U.S. 514, 535 (2001).

The Eastern District of New York, in In re Zyprexa, echoed the Supreme Court in holding that the First Amendment does not apply to stolen information. *See* In re Zyprexa Injunction, 474 F. Supp.2d 385 (E.D.N.Y. 2007). In enjoining the dissemination of sealed documents in that case, Judge Weinstein rejected claims that the First Amendment was impinged upon, concluding that any restriction on stolen documents was content neutral in that it "does not depend on the nature of the content of idea that the enjoined individuals wish to express but only on the materials that would be the medium of expression." Zyprexa, 474 F. Supp.2d at 423. The court further held:

> In granting this injunction, the court has balanced the harm to petitioner if relief is denied against the harm to respondents if relief is granted…The harm imposed by the injunction is minimal. They are required to return stolen documents over which they enjoy no property rights…Their freedom of speech is not impinged upon.

In re Zyprexa, 474 F. Supp.2d at 425 (emphasis added); *see also* U.S. v. Visa U.S.A., Inc., 2000 WL 1682753, at *1 (S.D.N.Y. Nov. 9, 2000)(holding that "third parties who gain access to sealed material inadvertently disclosed cannot be allowed to retain those documents."); Lipin v. Bender, 84 N.Y.2d 562, 569 (N.Y. 1994) (Court of Appeals affirmed *dismissal* of plaintiff's complaint after plaintiff removed opposing counsel's documents from table, calling plaintiff's action "heinous and egregious, a threat to…the rule of law."). Applying these principles here, Roe has no First Amendment rights to Doe's Sealed and Confidential Documents.

The following facts are undisputed: Roe solicited documents he knew were stolen; plundered an adversary's entire hard drive in circumvention of the Federal Rules of Civil

Procedure; and publicly disseminated the documents that he knew were under seal. After an evidentiary hearing on how Roe had obtained Doe's Sealed and Confidential Documents, this Court found that "[i]n unilaterally deciding that such an order did not exist, or if it did exist, it was binding on court personnel only; or in any event, he had a First Amendment right to publish that which was sealed, he knowingly and intentionally flouted a court order." *See* Ex. 4, Scheduling Order, at 4. In addition, the Court found that Bernstein, who initially gave Roe access to these documents, was a "converter [who had] no title to those documents, [and] no legal right to those documents…" *See* Ex. 7, Transcript Excerpts from July 20, 2010 Hearing, at 19 ("July 20th Hearing"). By extension, this Court found that Roe had "no title" to those documents either. *Id.* at 20. Furthermore, Bernstein's affidavit, with the attached exhibits, confirms that Roe knew Bernstein was a "converter," but solicited the stolen information from him anyway. Roe even went so far as to tell Bernstein that the fact the documents were stolen was irrelevant. *See* Bernstein Affidavit, at ¶ 13 & Ex. 3 ("as i said stolen emails are admissible, period. end of story. i mean admissible into evidence let alone discovery."). Thus, Roe is not some innocent downstream recipient of stolen documents. He is the agent of and co-conspirator with the thief. *See* Ex. 7, July 20th Hearing ("[S]omething bad was done, something very bad and perhaps despicable was done."), at 20.

Rather than defend his defenseless actions, Roe's continuously raises meritless issues about oral versus written sealing orders, and whether sealing orders are directed at only court personnel, or whether they also extend to unscrupulous attorneys who should know better. This Court, Judge Cogan, and the Court of Appeals have rejected all of Roe's arguments. Judge Chin of the Court of Appeals emphatically rejected Roe's argument by sternly asking Roe's counsel if he "understood that it applies not just to Court personnel but to anyone with notice of it,

including your client…" *See* Ex. 8, Transcript excerpts from February 14, 2011 Hearing before

Court of Appeals, at 36:5-12; *see also* 32:1-3 (in response to Roe's argument that a sealing order

is only directed at court personnel, Judge Chin pointedly asked "What is the point of a sealing

order if a party could freely disseminate the document? It would completely undermine the point

of the sealing order."). Furthermore, as this Court found, even if Roe believed that the sealing

order was invalid, or did not apply to him, his belief is not enough to justify publication of sealed

information. Indeed, "[i]t is a fundamental principle that court orders carry an initial

presumption of validity and must be obeyed even if it is later shown to be erroneous." *See* Ex. 4.

Scheduling Order, at 4. Roe must follow a certain protocol and procedure if he wants to

challenge the validity of an order. *See* Ex. 5, April 1st Transcript, at 3:7-19 (Roe himself

disavows the position that "a sealing order can be challenged by violating it."). Publicly

disclosing the documents in violation of the order and without a formal application to the Court

is not one of them.

Roe should suffer severe penalties for his unlawful and unprotected conduct and for

keeping Doe's Other Sealed and Confidential Documents for over a year and half in violation of

both this Court and Judge Cogan's orders.

## II- UNSEALING DOE'S DOCUMENTS WILL REVEAL DOE'S COOPERATION AND VIOLATE THE COURT OF APPEALS' ORDER

Even if Roe's conduct in stealing and disclosing documents in knowing violation of this

Court's orders implicates the First Amendment, the documents should still remain under seal

because they confirm Doe's cooperation with the Government. In its Summary Orders, the

Court of Appeals has held that any disclosure of information that reveals Doe's cooperation with

the Government is prohibited. *See* Ex. 2, Summary Order, at 2-3 & 6 (forbidding "disclosure of

docket entries or underlying documents that reference John Doe's cooperation with the government"). Here, unsealing any of Doe's Other Sealed and Confidential Documents would violate the Court of Appeals' order because it would reveal, often directly, Doe's cooperation with the Government, exposing Doe and his family to retaliation from violent local and

█████████████████████████ Consequently, each of the following documents should remain under seal.

### A.     The Cooperation Agreement

The Cooperation Agreement, by its very nature, reveals Doe's cooperation with the Government. It not only reveals Doe's cooperation in the title of the document, but also in numerous statements contained in the document. In the Cooperation Agreement, Doe "agrees to be fully debriefed … concerning his participation in and knowledge of all criminal activities" and "agrees to testify at any proceeding." In addition, the Agreement contemplates various meetings with the United States Attorney's Office for the Eastern District and discusses Doe's potential placement in the "Witness Protection Program." Finally, the Agreement references a potential 5K1.1 letter Doe would receive with full cooperation. Consequently, unsealing this document would be an official confirmation by the Government of Doe's cooperation.

### B.     The Information and the Proffer Agreements

The Information and Proffer Agreements, by their very nature, illustrate that Doe likely cooperated with the Government. First, a defendant who pleads guilty to an Information – especially one as detailed and incriminating as the one at issue here – is likely doing so because he plans to cooperate with the Government in exchange for a reduced sentence. Similarly, a defendant who enters into a Proffer Agreement is likely doing so because he plans to "proffer"

evidence to the Government in exchange for a reduced sentence. Consequently, both documents demonstrate the likelihood of Doe's cooperation with the Government.

Moreover, these documents cannot be viewed in a vacuum. The unsealing of either the Information or the Proffer Agreements would be even more devastating should any of the Other Sealed and Confidential Documents become unsealed. Information discusses Doe's ties and business dealings with members of organized crime, and it is not a stretch to conclude that an individual with Doe's ties would be extremely valuable to the Government. This reality, coupled with confirmation of Doe's proffer sessions, paints a picture of a man with access to organized crime figures and a desire to cooperate.

### C.    The Complaint

Unsealing the Complaint – without unsealing the criminal docket or any other information about Doe's criminal case – would confirm that Doe cooperated in this action. The Complaint discloses Doe's name and contains similar allegations to those contained in *The New York Times* and *Business Week* articles. If the Complaint were unsealed, the Government would effectively be corroborating the accounts in those articles, and confirming the fact of Doe's cooperation, which the articles also discuss. *See* Government's Current Brief, at 18, n. 9 (citing cases which recognize the difference between media reports asserting a fact and government documents confirming that fact).

The disclosure of Doe's identity, which would naturally accompany the unsealing of the Complaint, would also undercut the Court's purpose of using that alias in the unsealed proceedings in June and July 2010. The general public would be able to tie Doe's identity to the substance of those proceedings, including testimony concerning the PSR, which contain details about his participation in the arrest and conviction of multiple Government targets.

In sum, unsealing any of these documents, or any portion of them, would reveal Doe's cooperation and violate the Court of Appeals' Summary Order. Consequently, they should remain sealed.

### III- THE SAFETY OF DOE AND HIS FAMILY OUTWEIGH ROE'S PURPORTED FIRST AMENDMENT RIGHT OF ACCESS TO USE STOLEN DOCUMENTS AS A TOOL OF EXTORTION IN A MERITLESS LITIGATION

The First Amendment grants the public and the press a "qualified right of access to criminal court proceedings and judicial documents. Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d. Cir. 2004)(emphasis added); *see also* Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d. Cir. 2006) (same). In deciding whether to unseal Doe's Other Sealed and Confidential Documents, the Court must consider two legitimate and competing concerns. The first concern is the Press and the public's First Amendment "right of access to plea hearings and to plea agreements." U.S. v. Haller, 837 F.2d 84, 86-87 (2d. Cir. 1988); *see also* U.S. v. Alcantra, 396 F.3d 189, 196 (2d Cir. 2005). The second concern arises where the Court makes "specific, on the record findings…demonstrating that [sealing] is essential to provide higher values and is narrowly tailored to serve that interest." Alcantra, 396 F.3d at 199. To determine the outcome of this balancing test, the Court must apply a four-prong test. U.S. v. Doe, 63 F.3d 121, 128 (2d. Cir. 1995). In affirming this Court's judgment permanently enjoining the dissemination of Doe's PSR, the Court of Appeals found that Doe satisfies this test. The same finding should apply to the Other Sealed and Confidential Documents. Nevertheless, we will analyze each prong separately as it applies to these documents.

#### A. Doe has a compelling interest in keeping the Sealed and Confidential Documents sealed because his and his family's personal safety is at stake.

Doe satisfies the first prong of the test since there is a "substantial probability of

**FILED UNDER SEAL**                    21

prejudice to a compelling interest of his." *Id.* Doe's "compelling interest" in keeping his Other

Sealed and Confidential Documents sealed is keeping himself and his family safe from

retaliation from local and international terrorist organizations.[4] *Id.* ("Compelling interests may

include…danger to persons and property."); *see also* U.S. v. Cojab, 996 F.2d 1404, 1408 (2d Cir.

1993) (closure proper "where publicity might put at risk the lives or safety of government agents

engaged is undercover activities"); U.S. v. Arroyo-Angulo, 580 F.2d 1137, 1142 (2d Cir. 1978)

(closure upheld to protect safety of co-defendants who has signed cooperation agreements); U.S.

ex rel. Bruno v. Herold, 408 F.2d 125, 126-29 (2d Cir. 1969) (partial closure of trial upheld to

prevent the intimidation of a witness).

The threat of retaliation is real from both a local (i.e., organized crime families) and

███████████████████████████████████████ The history ███████████

shows that they have little compunction about retaliating against individuals whom they perceive

as wronging them or posing a threat to them. *See, e.g.,* U.S. v. Mancuso, 2008 WL 2884397, at

*9 (E.D.N.Y. July 23, 2008) ("[T]he Bonanno family's willingness to interfere with the judicial

process, particularly by perpetrating violence against cooperating witnesses, is well

documented."). Increasing this likelihood of retaliation is Roe's stated intention to disseminate

Doe's documents, and by extension, confirmation of his cooperation with the Government, to

███████████████████████████ *See* Ex. 6, at ¶ 5 (threatening to put Doe's sealed information "on

the front pages everywhere, including New York, Iceland, Turkey, and Khazakhstan…"). As the

Government acknowledged in its papers, "given the fact that some of the organizations against

---

[4] Roe may try to argue that the threats against Doe and his family are not imminent. However, all the Court must do is find "an inference of a substantial probability of danger…This does not mean, however, that the production of evidence constituting a direct threat or corroborating an affiant's allegations is a strict condition precedent to a district's court's granting of a closure motion." Doe, 63 F.3d at 130. In sum, an actual threat does not have to be made for a court to grant a closure motion where there is a substantial probability of danger.

which Doe provided information primarily operate overseas, it is difficult for law enforcement to assess or monitor the threat these organizations pose to Doe." *See* The Government's Current Brief, at 23. ████████████████████████████████████

████ ▌▌ ████████████████████████████████████

████████████████████████████████

Consequently, there is "a substantial probability of prejudice" to Doe's interest, and one that could mean life or death.

### B. There are no reasonable alternatives to sealing that can adequately protect Doe

Doe also satisfies the second prong of the test because there are no "reasonable alternatives that can adequately protect [Doe's] compelling interest" in his and his family's security. Doe, 63 F.3d at 128. Any action short of keeping these documents under seal would expose Doe's cooperation with the Government, and compromise Doe and his family's safety.

### C. The prejudice to Doe's and his family's safety overrides any qualified First Amendment right to Doe's judicial documents

Doe satisfies the third prong of the test since "the prejudice to [Doe's] compelling interest," his and his family's safety, "overrides Roe's qualified First Amendment right of access" to Doe's Other Sealed and Confidential Information. *Id.* at 128. As discussed *supra*, the threat of retaliation by violent organizations is real if Doe's documents are unsealed. In contrast, Roe's interest is minimal. Roe does not seek to unseal Roe's documents as a member of the media with the special charge of bringing undisclosed facts to light, but rather seeks to use these documents as a tool for extortion in his civil RICO action in the Southern District.[5] *See* the SDNY Matter.

---

[5] In addition, Roe tries to spin the entire sealing issue as one concerning the victims' rights under the Mandatory Victims Restitution Act (the "MVRA") to recover restitution from Doe, and that continued

One of the primary reasons the Court of Appeals kept Doe's PSR under seal was that it recognized that "Doe's conviction (as opposed to his cooperation) remains available from other public documents – including a press release by the United States Attorney's Office for the Eastern District of New York." *See* Ex. 2, Summary Order, at 7. With this information already available, "the PSR is of dubious utility in the civil case except as a tool to intimidate and harass Doe by subjecting him to danger." *Id.* The same logic applies to Doe's Other Sealed and Confidential Documents. Roe's threats of international public dissemination of Doe's documents further corroborate the Court of Appeals' finding that Roe's true purpose is to "intimidate and harass Doe." *See* Ex. 6, ¶ 5 (Roe threatens to splash Doe's sealed information "on the front pages everywhere, including New York, Iceland, Turkey, and Khazakhstan…"). Consequently, Roe's interest in unsealing Doe's documents is minimal and far outweighed by the grave danger it could expose to Doe and his family.

### D. Keeping the documents sealed is narrowly tailored to protecting Doe's compelling interest

Finally, Doe satisfies the fourth part of the test, which requires that a sealing be devised that, "while not necessarily the least restrictive means available to protect the endangered interest, it is narrowly tailored to that purpose." Doe, 63 F.3d at 128 (citations omitted). Keeping Doe's Other Sealed and Confidential Documents sealed is narrowly tailored to protect

---

sealing of Doe's documents somehow prevents that. *See* 18 U.S.C.A. § 3663A. This is a red herring. First, Roe is not a victim of Doe's alleged crimes, nor does he represent those victims as their attorney. Consequently, he lacks standing to assert any claims under the MVRA. Furthermore, the MVRA applies to "any offense in which an identifiable victim or victims has suffered…pecuniary loss." *See id.,* at § 3663A(c)(1)(B)(emphasis added). Under the MVRA, "[i]f the number or identity of the victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court." The Probation Department specifically states in the 2009 PSR that "[d]ue to the thousands of victims affected by the defendants' conduct, it would be impracticable to request Affidavit of Loss from each victim. The case agent was unable to provide a list of victims to the Probation Department. Furthermore, the Government advised that the account records are no longer in existence, and the restitution amounts owed to specific victims are unknown." PSR, at ¶ 49. For all the foregoing reasons, Roe's arguments concerning the MVRA lack merit.

the safety of Doe and his family primarily; indeed, it is the *only* means to protect Doe and his family. Furthermore, Roe has shown no interest in a "narrowly tailored" solution; rather he has demonstrated that nothing short of widespread international disclosure of Doe's cooperation will satisfy him.

## IV- ROE SHOULD PAY DOE'S COSTS AND ATTORNEY'S FEES THAT HE HAS INCURRED AS RESULT OF ROE'S INTENTIONAL VIOLATION OF THIS COURT'S SEALING ORDER

Roe should pay all of the costs, including attorney's fees, that Doe has incurred during the last 22 months as a result of Roe's intentional violation of this Court's sealing order. As the Southern District noted:

> It is well settled in this circuit that a party may be held in civil contempt for failure to comply with an order of the court if the order being enforced is clear and unambiguous, the proof of the noncompliance is clear and convincing, and the defendants have not been reasonably diligent and energetic in attempting to accomplish what was ordered.

Shady Records, Inc. v. Source Enterprises, Inc., 351 F.Supp.2d 64 (S.D.N.Y. 2004), citing EEOC

v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n, 753 F.2d 1172, 1178 (2d Cir. 1985).

The Court of Appeals has further held that an award of attorney's fees would be an appropriate sanction if [a party] is held in contempt, whether or not the contempt was willful. Shady

Records, Inc., 351 F.Supp.2d at 67-68.[6]

In sum, Roe has willfully violated this Court's Sealing Orders and, as a direct cause of his illegal and unprotected conduct, has unleashed litigation in three different courts spanning almost 22 months. Accordingly, Roe should be ordered to pay Doe's legal fees for this litigation.

---

[6] It is an open question in the Second Circuit whether a finding of willfulness is a prerequisite for an award of attorney's fees. Shady Records, Inc., 351 F.Supp.2d at 67. However, although "willfulness may not necessarily be a prerequisite to an award of fees and costs," a finding of willfulness "strongly supports granting them." Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). This distinction is moot here, as Roe's conduct in violating this Court's sealing order was blatantly willful.

**FILED UNDER SEAL** 25

## CONCLUSION

For all the foregoing reasons, we respectfully request the Court to:

(1) deny Roe's motion to unseal Doe's Other Sealed and Confidential Documents;

(2) order that Roe return all of Doe's Sealed and Confidential Documents, including all electronic and hard copies; and

(3) order Roe to pay all of the costs, including attorney's fees, that Doe has incurred during the last 22 months as a result of Roe's intentional violation of this Court's sealing order.

Dated:  New York, New York
        February 21, 2011

                                    BEYS, STEIN & MOBARGHA LLP


                                    Nader Mobargha, Esq. (NM7162)
                                    Jason Berland, Esq. (JB4136)
                                    The Chrysler Building
                                    405 Lexington Avenue, 7th Floor
                                    New York, New York 10174
                                    212-387-8200
                                    *Attorneys for Defendant John Doe*