Beys, Stein & Mobargha LLP

Nader Mobargha

**TO BE FILED UNDER SEAL**

March 21, 2011

**BY HAND DELIVERY AND FACIMILE (718) 613-2236**
The Honorable I. Leo Glasser
United States District Judge
Easter District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RECEIVED
3/23/11
Chambers of
I. Leo Glasser
U.S.D.J.

Re:   **United States of America v. Felix Sater**
      **Criminal Docket No. 98 CR 1101 (ILG)**

Dear Judge Glasser:

We represent Defendant Felix Sater in the above-captioned matter and write in response to Mr. Lerner's letter, dated February 3, 2011, demanding that the Court "immediately docket all events that have occurred in this case from its inception," and to the Government's letter in response, dated March 17, 2011 (the "March 17th Letter").

**PRELIMINARY STATEMENT**

In brief, we believe that the District Court no longer has jurisdiction to hear issues concerning the unsealing of the docket in the above-referenced criminal proceeding because the matter is currently pending before the Court of Appeals. Last month, Richard Roe ("Roe") filed a Petition for a Writ of Mandamus with the Second Circuit requesting that it order the District Court to unseal the docket. In denying Roe's petition on February 14, 2011, the Second Circuit ordered that "[t]he docket in this proceeding (Docket No. 11-479) and all documents referenced therein shall remain SEALED until further order of this court." *See* Exhibit ("Ex.") 1, Summary Order, dated February 14, 2011 ("Summary Order"), at 3:24-25 (emphasis added).

Even if this Court retains jurisdiction over this matter, the interests of Felix Sater in keeping the docket sealed far outweigh any interest of Richard Roe, as a private litigant in a civil action, in unsealing it. Sater's interest in keeping the docket sealed is extremely high: Any

The Chrysler Building
405 Lexington Avenue
7th Floor
New York, New York 10174
212-387-8200 (Main)
212-387-8229 (Fax)
nmobargha@bsmlegal.net

disclosure of his cooperation with the Government against infamous organized crime families and ███████████████ would pose a substantial probability of prejudice to the safety of Sater and his family.

The Government recognizes this risk, but believes it can still unseal a portion of the docket. Specifically, in its March 17th Letter, the Government seeks to unseal "specific docket entries and documents that do not directly reference [Sater's] cooperation." *See* March 17th Letter, at 2. However, unsealing any docket entries – including those that do not directly reference Sater's cooperation - would *indirectly* reveal the fact of Sater's cooperation, an unacceptable result by the Government's own standard. Consequently, to the extent the Court retains jurisdiction over the matter, it should deny the Government's application.

## FACTUAL BACKGROUND

Felix Sater cooperated with the Government for 11 years, providing them information of national and international consequence about New York City's and the World's most dangerous criminal organizations. The organizations are a who's who of violence and terrorism, both on a local and international level. ███████████████ (ii) La Cosa Nostra; (iii) the Gambino, Genovese and Bonanno organized crime families; and ███████████████████████ ███████████████████████████ the following:

████████████████████████████████████████████

The Government itself recognizes that "Mr. Sater's cooperation was of an extraordinary depth and breadth, almost unseen, at least in the United States Attorney's office." *See* Ex. 2, Transcript of February 14, 2011 Oral Argument before Second Circuit ("Transcript"), at 12:12-15. As a result, during the past 13 years, the Government has gone to extraordinary lengths to keep both Sater's conviction, the fact of his cooperation, and the details of his cooperation under seal. Despite this effort, however, some of this information has leaked into the public sphere. Articles in both the *New York Times* and *Businessweek* mention Felix Sater by name, discuss his role in the RICO conspiracy, and speculate about his conviction.

In addition, we have recently learned that over 11 years ago, in a March 2, 2000 press release announcing the indictment of 19 other defendants on RICO charges, the Government inadvertently disclosed Sater's identity in a footnote and that he had pleaded guilty to RICO charges, a fact that the Government had gone to extraordinary lengths to keep under seal for 13 years.

## ARGUMENT

**I- The District Court no longer has jurisdiction over the sealing of the docket in criminal proceedings**

As a threshold matter, we believe that the District Court does not have jurisdiction to determine whether its docket should be sealed; the matter is now before the Second Circuit. Recently, the Second Circuit ordered that "[t]he docket in this proceeding (Docket No. 11-479) and all documents referenced therein shall remain SEALED until further order of this court." *See* Ex. 1, Summary Order, at 3 (emphasis added).

At a February 14, 2011 oral argument, the Second Circuit acknowledged that there were two cases before it, Docket No. 10-2905-cr and Docket No. 11-479-cr. Docket No. 10-2905-cr involves Roe's appeal from this Court's order "permanently enjoining distribution of the Presentence Investigation Report and temporarily enjoining Roe and his clients from further disseminating other sealed documents filed in Sater's criminal proceedings before the District Court." *See* Ex. 1, The Summary Order, at 2. Docket No. 11-479 concerns Roe's "consolidated petition for a Writ of Mandamus directing the court to make public the docket of this criminal case." *Id.* (emphasis added). Roe's Petition for a Writ of Mandamus – which the Second Circuit ultimately denied - officially brought the issue of whether the docket should remain sealed before

---

[1] The substance of these facts were taken from the Government's Declaration in Support of Motion to Leave to File a Supplemental Memorandum, dated February 2, 2011.

the Second Circuit. Consequently, the question of whether to unseal the docket in this criminal proceeding is now squarely before the Second Circuit.[2]

**II-**    **Even if this Court has jurisdiction to unseal the docket, it should refrain from doing so since it will substantially prejudice the safety of Felix Sater**

 **A.** *The legal standard for sealing a docket*

  In its March 17th Letter, the Government articulates the standard for sealing a docket: "In essence, the Second Circuit's cases concerning sealing require the Court to balance the public's qualified First Amendment and common law right to judicial documents against other compelling factors." *See* March 17th Letter, at 5. Here, compelling factors, such as the "safety of [Sater] and his family and law enforcement's interest in procuring cooperation from other defendants," far outweigh Richard Roe's qualified right to access a few docket entries of a 13-year old, dormant case, the contents of which are already publicly accessible. *Id.*

 **B.** *Sater's interest in keeping his criminal docket sealed is to protect his and his family's safety*

  The Government has articulated Sater's strong interest in keeping the docket in this criminal proceeding sealed as follows:

> If [Sater's] cooperation against [organized crime families and ███████████ ██████████] was to be revealed in a public and officially- sanctioned manner, there is good reason to believe that the defendant's safety would be in jeopardy."

*See* March 17th Letter, at 6. The Government even cites to decisions that specifically recognize the danger of the very organizations against whom Sater cooperated. *See, e.g.,* U.S. v. Mancuso, 2008 WL 2884397, *2 (E.D.N.Y. July 23, 2008)("[t]he Bonanno family's willingness to interfere with the judicial process, particularly by perpetrating violence against cooperating witnesses is well-documented.")(emphasis added); U.S. v. Cirillo, 2005 WL 2300217, *2 (2nd Cir. Sept. 21, 2005)("the District Court's factual finding that the Genovese crime family routinely employs violence to further its interests…was amply supported.")(emphasis added).

  To ensure Felix Sater's safety from these organizations and from other infamous ████████████████████████ the Government has strongly urged that "documents essential to preserve the defendant's safety and the government's ability to secure cooperation from other individuals" be kept under seal. *See* March 17th Letter, at 6.

---

[2] The Second Circuit also assigned Judge Cogan "with the limited mandate of implementing and overseeing compliance with [its] orders and the orders previously entered into by Judge Glasser." *See* Ex. 1, Summary Order, at 5:1-4.

However, in its March 17th Letter, the Government mistakenly argues that it can differentiate between docket entries that disclose the fact or details of Sater's cooperation from entries that only disclose Sater's conviction and sentence. This is elevating form over substance. Indeed, unsealing any of the docket entries – especially those proposed by the Government – would be a dead giveaway that Sater cooperated with the U.S. Government – a fact, which if disclosed, the Government has repeatedly stated would place Sater's life in danger.

First, the length of time between Sater's conviction on December 10, 1998 and his sentencing on October 23, 2009, nearly 11 years, would reveal his cooperation. Even a lay person with the most basic knowledge of the federal criminal justice system would know that, based on this time lag, Sater cooperated with the Government. An 11-year time span between conviction and sentencing is extraordinary even for cooperating witnesses. It would be impossible, however, for so much to elapse in the case of a criminal defendant convicted in the ordinary course.

Second, Sater's waiver of indictment and plea to a criminal information would also reveal his cooperation. Under no circumstances would a defendant convicted of racketeering or securities fraud waive indictment and be prosecuted by information unless he were cooperating with the Government. Again, any person with basic knowledge of our justice system would know, without question, that a defendant pleading guilty to an information is a cooperating witness.

Third, the sentence itself would reveal Sater's cooperation. Given that Sater pleaded guilty to racketeering, Sater's sentence of a $25,000 fine could only mean he cooperated with the Government. Only a cooperating witness who provided substantial and extraordinary assistance to the Government could receive such a light sentence given the crimes charged.

Finally, these entries, when combined with the public news accounts and rumors of Sater's cooperation, would all but confirm that Sater cooperated with the Government and that his cooperation was, in fact, against New York City's and the ██████████████████████.

This was the Government's initial position as well. At oral argument before the Second Circuit on February 14, 2011, the Government stated ████████████████████████████

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

Since the Government made these statements, there have been no new developments concerning the safety of Sater or the danger posed to him. The only development is the

Page 6 of 8

Government's recent discovery of an inadvertent disclosure it made 11 years ago concerning Sater's conviction. Despite 13 years of attempting to keep both Sater's cooperation and his conviction under seal, in a press release, dated March 2, 2000, the Government inadvertently disclosed the identity of Sater in a footnote and the fact that he had been convicted of RICO crimes. As a result, the Government now believes it has no choice but to unseal multiple docket entries of Sater's criminal proceeding, including those which detail his pleading to an information and his sentencing. What the Government fails to realize is that unsealing docket entries that only concern Sater's conviction and sentencing also indirectly reveal his cooperation with the Government.

**C.** ***Richard Roe has no interest in unsealing the docket since the information he seeks is already publicly available***

In contrast to Sater's compelling interest in maintaining a sealed docket, Richard Roe's interest in unsealing the docket is minimal. Roe does not represent a news organization. He is not trying to vindicate a lofty right with ramifications for the public at large. He is simply a private litigant seeking to expose sensitive information about Sater in order to extract an unmerited settlement in a separate lawsuit. *See* Ex. 2, Transcript, at 29:2-6 (Roe's attorney admits that Roe "came in contact with the facts of this case" in the context of "preparing a RICO complaint."). This is not a paramount interest of the First Amendment.

Indeed, in its oral argument before the Second Circuit, the Government noted that the Supreme Court distinguishes between the First Amendment right of the press and that of an attorney in a civil lawsuit:



*Id.,* at 19:16-24.

This distinction was not lost on the Second Circuit.

Far from having or wanting to discharge such a duty, Mr. Roe's only motive for wanting to disclose sensitive information about Sater is to extort defendants in a separate action in the

---

[3] The cite for <u>Gentile</u> v. <u>State Bar of Nevada</u>, is 501 U.S. 1030, 111 S.Ct. 2720 (1990).

Southern District of New York (*Kriss et al.* v. *Bayrock Group LLC et al,* 10 Civ. 3959 )(the "SDNY Action"), including law firms such as Nixon Peabody LLP, Akerman Senterfitt LLP, and their insurance carriers, into paying money to avoid the "embarrassment" of being associated with a convicted RICO felon like Sater.[4]

Furthermore, even if the function of Mr. Roe's First Amendment right of access was identical to that of a news organization – which it is not – Mr. Roe *already has access to the very information he is seeking.* Indeed, he has ready access to the public news articles and the Government's inadvertent disclosure in its press release, all of which provide information about Sater and his criminal proceeding. Normally, the public availability of information in a sealed docket is grounds for unsealing the docket. However, this case is different. Here, unsealing the docket would expose information *in addition* to that which is publicly available and information which the Government deems unsafe. It would expose Sater's cooperation with the Government, a revelation the Government itself admits would pose substantial and unnecessary prejudice to Sater's safety.

Finally, in assessing Roe's interest, we also ask the Court to consider the context in which all this litigation arose. As this Court is aware, Roe obtained stolen documents, which he knew to be privileged, sealed, and confidential, unlawfully filed those documents publicly in the SDNY action, and blatantly disregard this Court's orders to return some of the documents.[5] So brazen has been Roe's conduct that the Second Circuit has seen fit to appoint a separate judge for the sole purpose of policing the enforcement of its orders and the orders of this Court.

## III- If the Court decides to unseal the docket, it should consider alternatives to disclosing Sater's identity and revealing his conviction or sentence

Nevertheless, if the Court finds that the public should have access to some of the docket entries the Government proposes in its March 17th Letter, then we would like the opportunity to propose some alternative solutions. One solution could be to unseal only docket entries which do not, even indirectly, reveal Sater's cooperation. A second solution would be to unseal the entire docket without revealing Sater's identity, with all entries only referring to "John Doe." This would address Roe's concern "as a citizen" that the judiciary is not maintaining a "secret docket" and operating under a shroud of secrecy, while simultaneously maintaining the safety of Sater and his family.

---

[4] Mr. Roe has a specifically told several defendants' counsel in that case that Sater should just "get out of the way," so he can go after the law firms and their insurance carriers because "that's where the money is."

[5] Roe has also disregarded and violated numerous orders of the Second Circuit and the Southern District. For the sake of brevity, we will not catalogue all these violations for the Court.

 

At the very least, we would like to have a hearing to explore these options before unsealing a docket that the Government has found necessary to keep sealed for 13 years.

Respectfully Submitted,

By: _____

Nader Mobargha
*Counsel for Felix Sater*

Cc:     Judge Brian M. Cogan

       Counsel for Richard Roe, Esq.
       Richard Lerner, Esq.

       The United States Attorney's Office
       Todd Kaminsky
       Elizabeth J. Kramer

VANDATE

10-2905-cr, 11-479-cr
USA v. Doe

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to summary orders filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the ___14th___ day of _February_ two thousand and eleven.

PRESENT:

    JOSÉ A. CABRANES,
    ROSEMARY S. POOLER,
    DENNY CHIN,
          *Circuit Judges.*

UNITED STATES COURT OF APPEALS
FILED
FEB 1 4 2011
Catherine O'Hagan Wolfe, Clerk
SECOND CIRCUIT

2:45 pm

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RICHARD ROE,

        *Appellant,*

        v.             Nos. 10-2905-cr, 11-479-cr

UNITED STATES OF AMERICA,

        *Appellee,*

JOHN DOE,

        *Defendant-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FOR RICHARD ROE:**      RICHARD E. LERNER, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY..

**FOR APPELLEE:**         TODD KAMINSKY, Assistant United States Attorney, United States Attorney's Office for the Eastern District of New York, Brooklyn, NY.

1

MANDATE ISSUED ON 02/14/2011

Case 1:98-cr-01101-ILG Document 194*SEALED Filed 03/23/11 Page 11 of 58 PageID #: 2092

FOR DEFENDANT-APPELLEE:     KELLY ANNE MOORE, Morgan, Lewis & Bockius LLP, New York, NY.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, following a hearing on the record on February 14, 2011, that an injunction *pendente lite* shall enter to prevent the dissemination by an party, their officers, servants, employees and attorneys, and all who are in active concert or participation with them, of materials placed under seal by orders of this Court or of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*) .

Richard Roe ("Roe") is an attorney at law whose identity is known to all participants in this litigation and who has been given the name "Richard Roe" as a legal placeholder because the disclosure of his true identity in this litigation context may, for the time being, lead to the improper disclosure of the materials at issue here.

Roe appeals from orders of the District Court permanently enjoining distribution of a Presentence Investigation Report ("PSR") prepared for sentencing purposes in a criminal proceeding before Judge Glasser and temporarily enjoining Roe and his clients from further disseminating other sealed documents filed in Doe's criminal proceedings before the District Court (Docket No. 10-2905-cr).

We also have before us a separately docketed but consolidated petition for a writ of mandamus directing the District Court to make public the docket of the criminal case in question (Docket No. 11-479-cr).  In turn, the United States (the "government") seeks a temporary injunction, pending the disposition of this appeal, to restrain Roe and his counsel and clients, and all persons acting in concert with them, from the threatened dissemination of the sealed materials at issue here by (1) filing and pursuing civil actions in other federal or state courts in which the sealed materials are annexed to pleadings or otherwise referred to or made public, and (2) by conveying copies of these materials or the contents thereof to third-parties, including the media.

We assume the parties' familiarity with the remaining facts and procedural history of the case.

(i)

We turn first to Roe's petition for a writ of mandamus. The All Writs Act empowers us to "issue all writs necessary or appropriate in aid of [our] respective jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). One such writ is the writ of mandamus, an "extraordinary remedy" that has been used "both at common law and in the federal courts . . . to confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction." *Cheney v. U.S. Dist. Crt. for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (brackets and internal quotation marks omitted). We issue a writ of mandamus only in "exceptional circumstances amounting to a judicial 'usurpation of power' or a 'clear abuse of discretion.'" *Id.* (citations and some internal quotation marks omitted); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir.2008) ("A district court has abused its discretion if it [has] based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or [has] rendered a decision that cannot be located within the range of permissible decisions." (brackets, citations, and internal quotation marks omitted)).

Roe falls well short of his heavy burden to secure a writ of mandamus directed to the District Court. Here, the District Court reviewed the sealed documents and the voluminous submissions by the parties, conducted four days of hearings inquiring into how Roe had obtained the documents and how he intended to use them, and explained in detail and on the record its well-reasoned decision to issue a permanent injunction against further distribution of the PSR and a temporary injunction against further distribution of the other sealed documents. Under the circumstances, we see no basis upon which to conclude that the District Court in any way usurped its power or clearly abused its discretion. *See Cheney*, 542 U.S. at 380. Accordingly, the petition for a writ of mandamus (Docket No. 11-479-cr) is DENIED.

Our decision to deny the petition for a writ of mandamus may be further elaborated in due course in a published opinion.

The docket in this proceedings (Docket No. 11-479-cr) and all documents referenced therein shall remain SEALED until further order of this Court.

3

(ii)

Pending a full review of the merits of Roe's appeal by a panel of this Court, the government, by a sealed motion of January 26, 2010 and accompanying affidavit, requests a temporary stay of the unsealing of Docket No. 10-2905-cr and of the materials placed under seal by Judge Glasser pending the appeal of this matter. In light of the serious, indeed grave, concerns expressed by the United States regarding the possible consequences of unsealing these documents, and the absence of any sufficiently persuasive countervailing considerations expressed by Roe, the government's motion is hereby GRANTED.

Accordingly, pursuant to this order and to our orders of January 28, 2011 (granting government's motion for an emergency stay of unsealing the docket in No. 10-2905); February 9, 2011 (granting government's motion for an emergency stay of unsealing the docket in No. 11-479 and ordering Roe not to publicly file any additional documents or cases that referred to matters subject to sealing orders in Nos. 10-2905-cr and 11-479-cr); February 10, 2011 (re-emphasizing, *inter alia*, that Roe was not to reveal or distribute sealed documents, nor contents thereof, to any third-parties, including members of the public or the media); and February 11, 2011 (re-emphasizing, *inter alia*, that all previous orders of this Court and of the United States District Court for the Eastern District of New York with respect to the documents at issue remained in full force and effect until further order of this Court), we hereby ORDER that ALL PARTIES, THEIR OFFICERS, AGENTS, SERVANTS, EMPLOYEES, AND ATTORNEYS, AND ALL OTHER PERSONS WHO ARE IN ACTIVE CONCERT OR PARTICIPATION WITH THEM, *see* Fed. R. Civ. P. 65(d)(2), are TEMPORARILY—and WITHOUT PREJUDICE to any claims or arguments that may be asserted by the parties on the merits of these appeals or on the orders in effect during the consideration of the appeals—ENJOINED from publicly distributing or revealing in any way, to any person, or in any court, proceeding or forum, except to those persons directly involved in the parties' own legal representation, any documents or contents thereof subject to sealing orders in Docket No. 10-2905-cr or in any related proceedings before the District Courts for the Eastern District of New York and Southern District of New York.

For the purpose of enforcing this Court's orders and those of the District Court for the Eastern District of New York during the panel's consideration and adjudication of the pending appeal, we

1    REMAND the cause (Docket No. 10-2905-cr) to the District Court for the Eastern District of New

2    York with instructions to the Chief Judge of that Court to assign a United States District Judge from

3    that Court with the limited mandate of implementing and overseeing compliance with our orders and

4    the orders previously entered by Judge Glasser.  Of course, Judge Glasser, an experienced and able jurist

5    who has shown admirable patience and forbearance in the face of extraordinary provocations, shall

6    retain jurisdiction over the underlying (and long-lived) criminal proceeding involving John Doe.

7            Furthermore, in all other respects and pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir.

8    1994), this panel shall retain jurisdiction over (1) the pending appeal, both for the disposition of the

9    appeal on the merits as well as with respect to any further motions practice; (2) any other appeals from

10   the District Court's order granting the permanent and temporary injunctions at issue; and (3) any

11   appeals arising from any further proceedings in the District Court, including any further petitions for

12   extraordinary writs, including the writ of mandamus.

13

14                                      (iii)

15           Without in any way limiting the effect of this summary order and the Court's previous orders,

16   we further ORDER:

17           (1) This appeal (Docket No. 10-2905-cr) will be EXPEDITED.

18           (2) The briefing schedule will be as follows:

19                   a. Roe's opening brief shall be filed no later than Monday, February 28, 2011.

20                   b. The government's opening brief shall be filed no later than Monday, March

21           14, 2011.

22                   c. Roe's reply brief shall be filed no later than Monday, March 21, 2011.

23                   d. The government's sur-reply brief shall be filed no later than Thursday, March

24           24, 2011.

25

## CONCLUSION

To summarize:

(1) the petition for a writ of mandamus in Docket No. 11-479 is DENIED, and the docket of that case shall remain SEALED pending further order of our Court;

(2) the government's motion for a temporary stay of unsealing of the docket in No. 10-2905-cr pending full review of the merits of Roe's appeal is GRANTED;

(3) the parties and all who are in active concert or participation with them are TEMPORARILY ENJOINED, pursuant to the terms of the order stated above;

(4) we REMAND the cause to the United States District Court for the Eastern District of New York for a limited purpose and under the terms noted above.

The limited mandate described above shall issue forthwith.


FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court


A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit