# THE LAW OFFICE OF RICHARD E. LERNER, P.C.

Richard E. Lerner, Esq.
122 West 27th Street, 10th Floor
New York, New York 10001
Phone: 917.584.4864
Fax: 347.824.2006
richardlerner@msn.com

April 17, 2018

**Via ECF**

Hon. I. Leo Glasser, USDJ-EDNY
225 Cadman Plaza East
Brooklyn, New York 11201

        Re: United States v. Felix Sater
           Docket No. 98-cr-1101

Dear Judge Glasser:

  I submit this letter in behalf of my client Frederick M. Oberlander in reply to the letter of April 13, 2018 (Docket Entry 240), submitted by the government (as to which Felix Sater joined by "me-too" letter of same date, Docket Entry 241) with respect to Mr. Oberlander's motion to unseal the unlawfully sealed transcripts dated April 27, 2011 and January 10, 2012.

  Frankly, Mr. Oberlander had hoped that by now everyone would have been tired of the ritual, but apparently not. Hitherto, it has always been understood that – whatever the metes and bounds of the public's right to know, the public's right to receive, and the public's right to transmit information – the First Amendment provides a point beyond which, no matter what else, the government may not get in the way.

  Mr. Oberlander, who studied mathematics at the University of Wisconsin in Madison during the tumultuous early 1970's before going on to research at the Defense Department, reminds the court that it was there that a fellow student came to publish an article in 1978 in *The Progressive*, describing how to build a hydrogen bomb. While much has been written about the case, the court will remember that the government, although it had zealously sought to enjoin dissemination of the magazine, dropped the case and went away. *Why?* – Because of the futility doctrine. When the government learned that the secrets had already been published or were on their way to being published in journals from Scientific American to an obscure Swedish technical journal that was on the stacks of a library at the University of Moscow, remembering the then-recent Pentagon Papers defeat, when other papers began publishing the same documents, simply gave in.

  But in Mr. Sater's case, the information regarding his cooperation is all over the internet, and while such information might possibly even be available to a few speakers of Swedish, it is quite certainly available to billions of speakers of English, Russian, Spanish, Chinese, Hebrew and many other languages. One would think that the government would concede, as they did in the H-Bomb case, the futility of attempting to impede the flow of information about Sater, which

is far less threatening to civilization as we know it than information about how to build a nuclear bomb.

But, no, it appears that the government is still more worried about the risk of embarrassment due to the fact that they let Sater keep the money he stole, and due to the fact that they let him continue to defraud investors, banks and insurance companies in partnership with Donald J. Trump, than they were about the risk of world annihilation in the case of *The Progressive*.

Imagine that in *The Progressive* case the Department of Justice had argued – instead of conceding futility – that there should nonetheless be a permanent injunction. What if the argument were instead that there is no constitutional insult because, although the information is not available here, one could, if one wishes, go get it, if not from Scientific American, then off the shelf of the University of Moscow? Surely, the court would have ruled against the government, on grounds of futility. This court should do no less.

*\*\*\**

I realize that the tone of this letter might seem acerbic; that is not my intent. But it must be said – backed by U.S. Supreme Court and Second Circuit authority – without hesitation, that the transcripts of April 27, 2011 and January 10, 2012 were "unlawfully" sealed because there was no prior notice to the public or to the undersigned in advance of the proceedings that the court would entertain closure, nor do the docket entries for the proceedings even show that the proceedings were marked "sealed." And with respect, the burden of proof is always on the proponent of secrecy, and it cannot be met by stating that there "must have been" a factually and legally adequate formal order.

It is black-letter law that the requisite factual findings supportive of sealing must be made by clear and convincing evidence *at the time of sealing*, because an unconstitutional sealing may not later be retroactively validated: *ABC v. Stewart*, 360 F.3d 90, 102 (2d Cir. 2004):

> Under the standards set forth in *Press-Enterprise I* and *II*, the district court was required to state the reasons for closure at the time the January 15 Order was entered; the government's after-the-fact rationalization is therefore insufficient to overcome the presumption of openness. See *United States v. Antar*, 38 F.3d 1348, 1361 (3d Cir.1994) ("Under the procedure established in *Press-Enterprise I* and the subsequent right of access cases, closure may not be retroactively validated.")

Thus, as a matter of law, the transcripts were not "sealed," but instead have been merely *hidden* from the public, because – quite manifestly – there was no signed, docketed sealing order issued with respect to the proceedings, with the requisite findings supportive of sealing, much less advance public notice that closure of the proceedings, and sealing of the transcripts thereof, would be entertained.

So, the question presented is no more and no less than this: Will this court, at long last, abide by its obligations, or will it instead just keep making a special case of Felix Sater, unlawfully hiding from the public transcripts and documents that were never lawfully sealed?

The government does not dispute that advance notice was *not* given to the public that the court would entertain closure. The government does not dispute that *no* sealing order was ever even issued. Moreover, **I was present at the conference on April 27, 2011, and, to the best of**

*my recollection, there was not even an oral application to seal the proceedings, much less was there even a sua sponte order issued at that time that sealed the proceeding*.

      Additionally, as I was present at the April 27, 2011 conference, inasmuch as it was a public proceeding, any information regarding Sater's cooperation, integrity of investigations, or safety of persons that was discussed during the conference may be freely disseminated by me. I am free to speak of anything that was said during that conference, and it is therefore futile to redact a single word, for, as the Supreme Court held in *Craig v. Harney,*[1] what occurs in the courtroom is "public property," and no one may ever, ever be punished for reporting what he has seen or heard in that courtroom. This must be why your honor acknowledged that it could never, ever bar Mr. Oberlander from revealing that he saw the man he knew to be Felix Sater testifying as John Doe in open court, or anything else that was said in open court. See transcript of July 21, 2010, pp.116-117 (available at Second Circuit Docket 10-2905, Docket Entry 142-9, pdf pp.53-54):

| | |
|---|---|
| Ms. Moore: | Your Honor, given the history, I would also ask everyone present in the courtroom be directed that they not advise anyone [that] the John Doe referenced in the document is my client. |
| | … |
| The Court: | Ms. Moore, there is I think an extent even to which the broad enormous powers of Federal Courts do not extend and I think the limit to which you're requesting that power be extended is beyond the borders of Federal Court power, which is quite enormous, but if exercised carelessly can be quite inappropriate. I'm not directing the court or the world at large with respect to this proceeding, John Doe or everybody here. |
| | It seems to me that in addition to purely legal issues there are issues of professional responsibility which are quite significant. There may be some DR, disciplinary rule, with respect to the obligation of attorneys regarding the use of documents which are marked sealed, whatever they may be. Whether that would provide a basis for injunctive relief or not I don't know. It is a matter which may be explored. I suppose if one thinks imaginably one may think of a lot of reasons why an order may or may not be issued providing for injunctive or other relief. With respect to the last request you made it is denied. |

      Notwithstanding that your honor was quite mindful of the principle enunciated by the U.S. Supreme Court in *Craig v. Harney*, then U.S. Attorney Loretta Lynch wrote to the Second Circuit on June 23, 2011 stating: (See exhibit "A" hereto) (Available at Second Circuit docket 10-2905, Docket Entry 290) (emphasis added).

> [Oberlander] argues that because Judge Glasser conducted an evidentiary hearing on June 21, 2010, which was open to the public, and "declined to order anyone in the court not to say who Mr. [Sater] is," he is free to disclose the information …. *It would prove a remarkable development if the very hearing investigating a possible breach of a court's sealing order led to the publication of facts subject to that order. It was also clear that Judge Glasser did not intend to allow [Sater's]*

---

[1] *Craig v. Harney*, 331 U.S. 367 (1947).

>*identity to become a public fact as a result of the hearing.* This is evidenced by his order to the court reporter at the conclusion of the hearing that any reference to Sater's name be changed to John Doe in the transcript of the proceedings.

Presumably, Ms. Lynch never thought that that letter would see the disinfecting light of day. Mr. Oberlander respectfully assumes that your honor – after having recognized that no federal judge has the power to enjoin a person from telling anyone what he saw and heard in open court – would be appalled that a U.S. Attorney on her way to becoming *the* Attorney General of the United States, would postulate that a person could nonetheless be enjoined from saying what was seen and heard in open court, because it would be "remarkable" to think that there might actually be limits on the power of a federal judge.

Subsequent to the Second Circuit's unsealing of the 10-2905 docket, Felix Sater has been telling everyone who will listen the details of his cooperation. The court may take judicial notice of the fact that, unlike Monty Python's parrot, Mr. Sater is not quite dead. Everyone knows that Sater gave information about members of organized crime families, yet he has not been killed. And isn't it time to end the charade? Don't you think, your honor, that the members of organized crime that Sater informed on back in the early years of the millennium knew that he was a cooperator?

After all, the government issued a press release on March 2, 2000 that stated that Sater, along with Salvatore Lauria and Gennady Klotsman, had pled guilty to the RICO charges. *Dayenu*? (See exhibit "B").

Sater was identified during an open-court proceeding in the *Coppa* matter (Docket 00-cr-196, before the Honorable I. Leo Glasser, on February 2, 2001, as being a cooperator. *Dayenu*? (See exhibit "C").

The government disclosed to *Coppa* defendant Lawrence Ray on November 20, 2001 that Sater was a cooperator, and had worn a wire during conversations with Mr. Ray. That letter was immediately docketed and publicly filed, we have a copy so stamped, and has been publicly available to this day. *Dayenu*? (See exhibit "D").

Though Sater (through counsel) concocted a story that Daniel Persico had made a threat in 2012 to harm Sater when he learned that Sater was a cooperator, in point of fact the government had disclosed to Persico years earlier that Sater would be a witness against him, and Salvatore Lauria's lawyer and FBI handlers told your honor at his 2004 sentencing, as that transciprt confirms, of his reports that Persico was threatening him for his role in the cooperation. *Dayenu*? (See exhibits "E" and "F," respectively).

At his open-court public sentencing on October 23, 2009, Sater's cooperation was openly discussed, including the fact that he informed against La Casa Nostra in general, and the Bonanno crime family in particular. *Dayenu*? (See exhibit "G," especially p.14).

All that happened before Mr. Oberlander was handed Sater's PSR, proffer, criminal information and cooperation agreement by Joshua Bernstein. But what happened over the past several months makes continued sealing utterly unfathomable: Felix Sater has been telling all who will listen that he was a government cooperator. *Dayenu*? And if a sealing order *is* tantamount to a gag order, why hasn't the government charged Sater with contempt?

\*\*\*

4

   In any event, since I was present at the April 27, 2011 conference, there is no reason whatsoever that, at the very least, the transcript of that conference should not be "unsealed" at least as to me, just as it was unsealed as to the government and as to Sater, so that I may review it. I was there, so there can be no harm in my seeing it.

   As for the January 10, 2012 conference, it is because it was conducted *ex parte*, without prior notice to me, and discussed the First Amendment issues that were raised by my client Oberlander, it should be unsealed in its entirety, because, it is most respectfully submitted, the *ex parte* conference was, if not illegal, then unethical, in that the canons of judicial ethics flatly prohibit *ex parte* communications.

***

   Finally, I am currently writing a sequel to my article entitled "Secret Prosecutions and the Erosion of Justice," which is available at https://www.law360.com/articles/688835/secret-prosecutions-and-the-erosion-of-justice (a PDF copy of which is submitted herewith as exhibit "H"), and require maximum transparency so that I may reveal to my readers what I consider to be governmental and judicial misconduct.

Respectfully submitted,

**THE LAW OFFICE OF RICHARD E. LERNER, P.C.**

*/s/ Richard E. Lerner*

Richard E. Lerner

cc:  To Parties -- Via ECF

Exhibits:  (Note: Exhibits "A" through "G" are highlighted for the convenience of the court).

   A  Government's 6/23/11 letter to the Second Circuit.
   B  Press release dated 3/2/00.
   C  Transcript of open court proceeding on 2/2/2001 in the *Coppa* matter.
   D  Government's 11/20/01 letter to Lawrence Ray.
   E  Government's undated 3500 disclosure of Sater as a cooperating witness in *U.S. v. Persico* case.
   F  Transcript of 2/5/04 sentencing of Salvatore Lauria.
   G  Transcript of Sater's open-court, 10/23/09 public sentencing of Felix Sater.
   H  Article by Richard E. Lerner entitled "Secret Prosecutions and the Erosion of Justice"