# THE LAW OFFICE OF RICHARD E. LERNER, P.C.

**Richard E. Lerner, Esq.**
**122 West 27th Street, 10th Floor**
**New York, New York 10001**
**Phone: 917.584.4864**
**Fax: 347.824.2006**
**richardlerner@msn.com**

January 1, 2019

**Via ECF**
Hon. I. Leo Glasser, USDJ-EDNY
225 Cadman Plaza East
Brooklyn, New York 11201

                Re:     **United States v. Felix Sater**
                          **Docket No. 98-cr-1101**

Dear Judge Glasser:

      Motions to unseal two separate transcripts (dated 4/27/11 and 1/10/12) that I made in behalf of my client Frederick Oberlander have been *sub judice* for about nine months, since April 17, 2108. About seven months ago, on June 7, 2018, the Second Circuit issued an order reconfirming that you have the authority to decide these motions. That Second Circuit order was docketed in this matter, 98-cr-1101, at Docket Entry No. 243.

      As I previously indicated, their unsealing is necessary for me to complete an article that I am writing about this case, but regardless of my need for the transcripts, the public also has a First Amendment right to access these transcripts.

      Moreover, since my filing of the original motion, additional evidence has come to light that supports unsealing.

      First, there is now official governmental confirmation that this 98-cr-1101 case was either never sealed, or if it had been sealed, it became unsealed long ago – in 2004 – well before my client's involvement in this matter.

      Pursuant to FRE 230 I submit for the court's notice a June 8, 2018, letter, Ex. A, from Ms. Stephanie Mark, Supervisory Archives Specialist at the Lee Summit National Archives. It documents that the files for the *Felix Sater*, *Salvatore Lauria* and *Gennady Klotsman* criminal proceedings were all sent to the National Archives, Lee's Summit Federal Record Center, by the clerk of the Eastern District of New York in 2004. Critically, Ms. Mark confirms that ***these records arrived at the archives <u>unsealed</u> and were <u>"immediately available to the public."</u>***

      This revelation confirms that at least by then, 2004, there was "no sealing order" in Sater's case – ***as your honor conceded at the June 14, 2010, hearing***. Accordingly, since his case wasn't sealed, and since it was, according to the National Archives, made available to the public when it was sent to the National Archives in 2004, there is no basis to fail to unseal the requested transcripts. In other words, not only was Sater's conviction made public by the government in its March 2000 press release, his cooperation was made public by the clerk of the Eastern District no later than that 2004 delivery to the National Archives of the entirety of Sater's 98-cr-1101 file.

Moreover, while the Archives confirms that your honor pulled the *Sater* file from its public situs there in 2010, no one has ever pulled (other than copied, leaving the originals there at the Archives) the *Lauria* file, which the Archives confirms was publicly shelved there at the same time in 2004. It has remained there ever since. And that means that Document Number 12 on the *Lauria* docket, 98-CR-1102, was made public in 2004 and has been public ever since. That item is a letter, now again available on ECF, written by the DOJ in 2002 which overtly describes both Sater and Lauria as cooperators who had pled guilty.

Second, after full submission of my motion, in May 2018 Mr. Joseph Giannini came forward to me without notice, of his own accord, and established that he was the attorney for Daniel Persico Jr. during the related *U.S. v. Coppa* case (00-cr-196), which – your honor will recall – was the case in which Sater, Lauria and Klotsman were cooperating as unindicted co-conspirators. (Exhibit "B").

Your honor will also recall that the government and Mr. Sater's counsel maintained that Sater's co-conspirator Salvatore Lauria was assaulted by Daniel Persico Jr. in Brooklyn, and that Persico had threatened to kill or otherwise harm Lauria and Sater ***because Persico had only just recently learned (because of alleged disclosures by Oberlander and/or Lerner) that Sater and Lauria were cooperators***. Specifically, the government and Mr. Sater's counsel represented to this court that Persico only learned of Sater's cooperation because Oberlander and/or Lerner passed this information to Mr. Persico's attorney Gerald Shargel.

In fact, Sater's counsel not only repeated these allegations before Judge Cogan in seeking contempt sanctions, he did so under oath, under penalty of perjury.

Mr. Giannini's affidavit puts the lie to those claims, and demonstrates that a fraud has been perpetrated on, and in, these courts, as well as on Mr. Oberlander, on me, and on the public. And there is little doubt that the United States Supreme Court was also misled when it was told in 2013 that while there had never before been any evidence of any risk to Sater and his family, just recently his fellow cooperator Lauria had been assaulted by Persico and his life threatened.

Mr. Giannini's documents show that he and his client Persico knew that Lauria and Sater were cooperators as far back as 2000, not only because it was obvious from the nature of the charging instruments, but because the government provided 302's and other information that confirmed it.

Additionally, Mr. Giannini makes clear that he, not Mr. Shargel, was Persico's lawyer from the inception. The Giannini affidavit demonstrates that Sater and his lawyers have submitted provable fabrications, even under oath, in their filings before the EDNY to paint a false story that Oberlander and Lerner were putting Sater's life in danger by revealing information to attorney Shargel, who in turn would (and allegedly did) reveal such to Persico. Yet, Shargel was not even the lawyer for Persico in the *Coppa* case—a fact that is no longer easily demonstrable from the PACER docket, which has apparently been altered. We can say that because we have copies of the docket going back years, in several iterations, which show that it was changed to remove identifying information as to who was Persico's counsel. Early iterations of the docket show that Mr. Giannini was Persico's counsel, but sometime after the government and Sater's counsel alleged that Shargel was Persico's counsel, Mr. Giannini's information was removed.

2

Mr. Giannini states in his affidavit that he "stand[s] ready to testify" regarding these matters, and will – if asked to do so – sufficiently establish the validity of his written testimony, with documentary evidence demonstrating that Persico knew from the day of his arraignment – March 2, 2000 – that Sater was a cooperating witness who would testify against him. That is, the cat was out of the bag in 2000. Mr. Giannini will further testify that Mr. Shargel was never involved in Mr. Persico's representation.

Accordingly, it is respectfully submitted that, as there is and has been for fifteen years, at least, no legitimacy to the idea that Mr. Sater will suffer harm – other than a long-overdue disgrace for his and his counsel's roles in this fraud – by the disclosure of his identity as a cooperator, I request that the transcripts be unsealed immediately *in their entirety, but certainly at least for now to the extent to which the government and Mr. Sater have already stipulated.*

Respectfully, in closing I repeat and emphasize that, as motions to unseal must be taken up immediately, your honor must unseal the requested transcripts immediately and in their entirety, because there was never a lawful sealing in this case. Your honor yourself stated years ago in this very case, when the docket was "accidentally" made public in August 2012 by the EDNY clerk, that this circuit has held what should be obvious anyway – that no court can pretend to the authority to reseal a document which the government or court has allowed loose into the public domain.

In the case your honor referred to, *Gambale v. Deutsche Bank*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) ("[o]nce [in-formation] is public, it necessarily remains public" and further stating that "[o]nce the cat is out of the bag, the ball game is over"). In *Gambale*, the document in question, a settlement agreement, had been made public by an SDNY court and stayed public all of three months, and that was enough for the Second Circuit to confirm that it had lost any authority it had ever had to restrict public access to it.

Here, on the other hand, that material was made public in the National Archives fifteen years ago, and most of it remains untouched there to this day, the rest, again, removed by your honor after it had been sitting there publicly open and available for six years – as your honor yourself noted during the July 20, 2010 hearing, when your honor stated that you had pulled the Sater file back from the National Archives and found no indication of any sealing order in it.

Mr. Giannini stands ready to testify, in the event the court wishes to lay to rest any doubt of the fraud perpetrated here, or simply wishes to expose Mr. Giannini to that great engine of truth, cross-examination.

Respectfully submitted,

THE LAW OFFICE OF RICHARD E. LERNER, P.C.

Richard E. Lerner

cc:     To Parties -- Via ECF

Enclosures:   Exhibit A:   Letter of June 8, 2018 from the National Archives.
              Exhibit B:   Affidavit dated May 29, 2018 of Mr. Joseph Giannini, with exhibits A through I