C. Collins
ccollins1600@gmail.com
Budapest, Hungary

June 20, 2019

RECEIVED

JUL 11 2019

Chambers of
I. Leo Glasser
United States District Judge

United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

United States Court of Appeals
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re: United States v. Felix Sater, Eastern District of New York Docket 98-cr-01101
(Honorable I. Leo Glasser, United States District Judge)

Dear Judges Irizzary, Pooler, Chin, and Cabranes:

I am a U.S. citizen and investigative reporter currently residing in Budapest, Hungary.

For several years, I have been examining and writing about Felix Sater's connections to Donald Trump. I have published several articles about this topic.

After careful consideration, I requested Judge Glasser to unseal Mr. Sater's docket in its entirety. He has as yet not ordered oral arguments for that motion.

I have closely examined Mr. Sater's docket as currently presented, as well as the docket of the affiliated *U.S. v. Coppa* (the case in which Mr. Sater originally cooperated and initiated his 11-year-long stretch as a cooperating witness, which formally concluded when he was sentenced in October 2009).

Upon inspection, it is evident that there are so many anomalies, so much that is problematic, so many questions raised, that I urge the court to consider the unsealing of Mr. Sater's full docket.

I suggest that the most pressing question at hand is whether continued sealing is simply protecting bad acts by numerous persons in this long-running drama, which have now had enormous and ongoing ramifications. These consequences could not have been imagined in 1998, when Mr. Sater first agreed to cooperate with the Eastern District or in the years after. Yet here we are.

It appears to this observer that Judge Glasser's good faith effort to protect certain persons and processes was seemingly abused, and further, efforts have been undertaken to obscure subversions of the process. We must ask why.

Since 2010, when Mr. Fred Oberlander filed his civil RICO case against Mr. Sater and associates in *Kriss v. Bayrock*, there have been ever-more-convoluted efforts to conceal Mr. Sater's identity and apparently protect him from prosecution. This has paralleled efforts to target Mr. Oberlander and Mr. Richard Lerner, his attorney, for sanction and prosecution.

In a single example, in an *ex parte* conference in April 2011 with Judge Glasser (the transcripts of which were only recently unsealed) in which Mr. Oberlander and Mr. Lerner were excluded, Mr. Sater and his lawyer Mr. Michael Beys claimed that Mr. Sater's life would be at risk if his docket were unsealed. They raised the names of people such as Gambino family–affiliated Mr. Daniel Persico, whom they claimed posed an imminent threat to Mr. Sater.

A straightforward reading of the transcript indicates that Mr. Beys and Mr. Todd Kaminsky for the government were seemingly working in tandem.

Mr. Beys then claimed, in an August 2012 letter to Judge Cogan, that Mr. Oberlander had willfully put Mr. Sater's life at risk by informing Mr. Persico's lawyer of Mr. Sater's informant status, intentionally endangering him in an effort to extort, and that as a result Mr. Persico in July 2012 attacked a cooperating co-defendant while threatening the life of Mr. Sater.

All of these claims have been shown to be spurious. Mr. Persico's lawyer, Mr. Joseph Giannini, has stated in an affidavit that all the defendants knew that Mr. Sater was cooperating from the moment the indictments were unsealed in March 2000. Further, Mr. Beys named not Mr. Giannini but an unaffiliated attorney as the person whom Mr. Oberlander had supposedly tipped off. Mr. Giannini further states that after the alleged attack, no one from the FBI contacted him, even though he was well known as the lawyer of not only Mr. Persico but also his brother and father. And now, incredibly, the docket of *Coppa* has been redacted to hide that fact.

Let me repeat that: a docket in federal court has been redacted in an apparent effort to hide the falsity of Mr. Sater's lawyer's claims. Mr. Persico and Mr. Giannini have been removed from the top of the docket — simply erased.

By January 2012, according to the transcript of another recently unsealed *ex parte* conference before Judge Glasser, Mr. Sater was cooperating, as would have been true at the time of the alleged attack. (He was said to not have been cooperating in April 2011.) Yet instead of alerting Judge Cogan that Mr. Sater was cooperating in 2012 when he was allegedly attacked, Mr. Beys apparently fabricated a lie that smeared Mr. Oberlander, one he continues to use: that Oberlander

had purposely endangered Mr. Sater in an effort to extort by revealing his identity, to a lawyer it turns out had nothing to do with Mr. Persico. Further, notable and evident in that transcript is that the U.S. attorney had asked Judge Glasser to maintain the seal despite direction from the Court of Appeals to unseal. Thus, neither the Court of Appeals nor Judge Cogan were apprised of the U.S. Attorney's request to maintain the seal because of an "ongoing investigation." Why?

Parallel to these events, persons apparently affiliated with this case initiated a disinformation campaign that continues to this day, with multiple phony websites in the names of Mr. Oberlander and Mr. Kriss that actively, demonstrably misstate facts. My understanding is that Mr. Oberlander and Mr. Lerner are gagged about numerous matters, and thus they cannot present evidence or arguments to defend themselves. This tactic — of creating disinformation while certain matters are under seal — is now used at the highest levels of our government.

I offered a single example. There are others. How can this continue? How can we maintain faith in our system? Who and what is really being protected here? Why?

The reasonable necessity of protecting the informant system as well as ongoing investigations seem to have devolved here into an effort to conceal bad acts by further bad acts that undermine our judicial system.

Further, by all appearances and for whatever reasons, the overarching consideration was apparently that Mr. Sater and his associates had to be protected at all costs, despite his continuing credibly alleged crimes, including those represented in the case recently brought by the City of Almaty in the Southern District of New York. Why? Does that protection not give Mr. Sater and those affiliated with Mr. Sater *carte blanche* in ways that go against the notion of equal protection that underpins our system? Lastly and crucially, does that protection not foster a very real sense of inviolability, which I submit has had very far-reaching consequences in this case?

I suspect this reality has placed Judge Glasser and others in a very difficult position: reveal the truth about this problematic case or allow the lies to fester and advance the agendas of those who profit from continued secrecy, even if those agendas currently undermine core tenets of our democratic system.

Please recall that Mr. Sater's role and status were never supposed to be revealed.

Reading the transcript of the *ex parte* status conference with Judge Glasser in April 2011, one is struck that Mr. Sater literally begs the judge to maintain a seal on his docket, and that he and his lawyer then created false reasons for doing so.

Why was it so important for Mr. Sater to maintain his protected status? Does it have to do with activities alleged by the City of Almaty, for example? Why is there such desperation from both Mr. Sater and government attorneys to keep so much sealed? It begs the question of who else benefitted from Mr. Sater's activities.

Yet the protection of Mr. Sater allowed not only alleged continuing crimes.

Critically, this protection also meant that the true nature of Mr. Sater's relationship with Mr. Donald Trump was not revealed during the presidential campaign, including their financial relationship. Questions went unasked about how much Mr. Trump and the Trump Organization benefitted from payments via Mr. Sater. As Mr. Sater was protected at the highest levels, a profound opacity surrounded his businesses, their true nature, and his business dealings with Mr. Trump, depriving the public of crucial information; examples include the failed project in Fort Lauderdale (in which many small investors lost their savings) and the Trump SoHo.

It is worth noting that the U.S. attorney with jurisdiction over Fort Lauderdale while that project was under development — Mr. Alex Acosta—now has a cabinet-level position in this administration. Acosta's confirmation came even as his agreement with confessed pedophile Jeffrey Epstein has come under scrutiny for allegedly circumventing the Mandatory Victims Restitution Act and Crime Victims' Rights Act, apparently in exchange for Mr. Epstein's cooperation. Mr. Oberlander and Mr. Lerner have made similar allegations about the agreement with Mr. Sater; namely, that the MVRA and CVRA were simply ignored during Mr. Sater's sentencing. It is a curious coincidence.

Mr. Sater's protection allowed him to aggressively push the Trump Tower project in Moscow during the presidential election, while he promised Mr. Michael Cohen to elicit "buy in" on Mr. Trump's campaign and the project from the Kremlin.

Consider that: a long-term informant for the U.S. — super empowered, super protected, and financially rewarded for almost 20 years — who was involved in U.S. efforts to gain information on international criminal networks used that protection to assist his business "partner" Donald Trump during the presidential campaign with promises of support of a hostile foreign power so that both could benefit financially and politically. The Moscow development would have created for Mr. Sater a golden sinecure of ongoing cooperation into infinity, one that would reward and protect him forever. Or so it would seem.

All the while, the U.S. legal system contorted itself to protect Mr. Sater and associates.

And the American people had no inkling of any of these matters before the presidential election.

Mr. Trump is now attacking any persons or institutions that know the truth of his relationship with Mr. Sater as well as the FBI, among others.

And Mr. Sater has made a deal with prosecutors during the Mueller investigation to avoid prosecution.

It seems to me that what we see is a corrupt racket, a racket that those within the system cannot expose because it will reveal much ugliness and corruption that was never intended to be revealed. The informant system has been used against itself, as by all appearances Mr. Sater's financial crimes were considered the price to be paid for important intelligence, and others shielded themselves under Mr. Sater's protective cloak.

How did this happen?

Isn't it likely that certain foreign governments have some, most, or all of the information that has been kept from the U.S. public, information that the president is desperate to keep from being revealed? Which gives them enormous leverage, of course. What might it show? Could it be that Mr. Trump was in reality a failed businessmen propped up by monies from U.S. law enforcement–approved projects who served their purposes? And now Frankenstein's monster is going after those who gave him life.

Ms. Leslie Caldwell, formerly of the Department of Justice as well as Mr. Sater's attorney at sentencing, recently tweeted that it "seems that the best way to protect the Presidency is to let the truth about this President come out."

I agree. The nature of the relationship between Mr. Sater and Mr. Trump should be made clear to the American public. That also includes Mr. Sater's relationship with the government.

It is imperative now that the public have faith in the institutions meant to administer justice.

Revealing the truth — and allowing the chips to fall where they may — will create the clarity demanded at this critical moment in our nation's history.

That truth requires the unsealing of Mr. Sater's full docket.

Respectfully,

C. Collins


cc: via Fax (with request that this letter be immediately docketed)
Judge I. Leo Glasser



C. Collins
Budapest, Hungary
c/o Hilton Hotel NYC

US v. Sater
Unsealing motions

NEW YORK NY 100
09 JUL 2019 PM 11 L

USMS

Judge I Leo Glasser
225 Cadman Plaza East
Brooklyn NY 11201

11201-183299