UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

                                       MEMORANDUM & ORDER
                                       98-CR-1101 (ILG)

     *v.*

FELIX SATER,

               Defendant.
--------------------------------------------------------x
GLASSER, Senior United States District Judge:

## BACKGROUND

More than 20 years ago, on December 10, 1998, Defendant Felix Sater (**"Sater"**) pleaded

guilty, pursuant to a cooperation agreement, to an information charging him with participating in

a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act

(RICO), 18 U.S.C. § 1962. From 1998 onward, he cooperated extensively with the United States

Government, passing along valuable foreign intelligence as well as information concerning some

of the most elusive and dangerous criminals of interest to U.S. law enforcement. As

characterized by the Government, Sater "was one of the best cooperators we worked with. There

was nothing he wouldn't do. No task was too big." (Sentencing Tr. at 12:22-23). The criminal

proceedings terminated when Sater was sentenced on October 23, 2009.

The case and its docket sheet were sealed at Sater's 1998 guilty plea. However, as a result

of various public disclosures and gradual unsealing orders, Sater's conviction and the fact of his

cooperation has been public knowledge for some time. The Court will not burden the reader by

recalling the titanic amount of litigation that has dominated this docket. Suffice it to say that

every document filed in this matter after Sater's 2009 sentencing has pertained, not to the crime

for which he was sentenced or of which he was convicted, but to the law of sealing; that is,

whether, and the extent to which, the documents pertaining to the criminal proceedings should remain unavailable to the public. Ever hydra-like, those filings spawned yet more filings, which themselves became subject to more unsealing requests. In 2013, after receiving a steady drumbeat of such requests and undertaking an exhaustive review of the docket, the Court unsealed a large number of documents and determined that a smaller number should remain under seal, in whole or in part. That determination was affirmed by the Second Circuit in 2014. *See In re Applications to Unseal 98 CR 1101(ILG)*, 568 Fed. Appx. 68 (2d Cir. 2014) (summary order).

Since that time, the public's interest in Sater has mushroomed as a result of his highly-publicized relationship with Donald J. Trump, with his former attorney Michael Cohen, and with the Trump Organization. Sater himself has whetted the public's interest by granting numerous media interviews in which he has divulged extensive details concerning not only these relationships, but also his significant activity on behalf of United States intelligence and law enforcement agencies.

Citing the renewed public interest in Sater's background, cooperation history, and association with President Trump, certain Intervenors affiliated with the publication The Intercept (the **"Intervenors"**)[1] moved in February and March of 2019 to intervene and unseal various documents in this case. The documents they seek to unseal can be classified into two groups. First, the Intervenors request that the following docketed items be unsealed: Dkt Nos. 16, 36, 57, 63, 64, 91, 109, 132, 158, 197, 200, and 202 (the **"Docketed Items"**). (ECF No. 247, at

---

[1] The Intervenors are First Look Media Works, Inc. (**"FLMW"**), which publishes The Intercept, and Johnny Dwyer, a journalist for The Intercept.

2; ECF No. 252-1, at 1-2).[2] Second, they request that the Court unseal certain sentencing-related

records, namely, the "5K Letter" (ECF No. 247, at 1; ECF No. 252-1, at 1), various "letter[s]"

and "communication[s]" referenced at Sater's sentencing (ECF No. 247, at 1), and "[a]ll

sentencing memoranda and exhibits" (ECF No. 252-1, at 1). The only documents responsive to

this latter request are (1) the Government's written motion of August 27, 2009, pursuant to

Section 5K1.1 of the United States Sentencing Guidelines (**"Section 5K1.1"**), requesting a

downward departure from Sater's sentencing guidelines in view of his cooperation (the **"5K**

**Letter"**); (2) an October 19, 2009 letter from Leslie R. Caldwell and Kelly A. Moore of Morgan

Lewis & Bockius LLP, then-counsel to Sater, submitted to the Court in connection with his

sentencing (the **"ML Letter"**); and (3) one peripheral third party letter to the Court related to

Sater's sentencing.

On April 17, 2019, the Court held an open hearing at which counsel for the United States,

Sater, and FLMW appeared. (ECF No. 270). During that conference, the Court afforded counsel

for FLMW an opportunity to be heard on the motion and announced that it would review the

documents sought to be unsealed *in camera. See In re Applications to Unseal*, 568 Fed. Appx. at

70; *United States v. Haller*, 837 F.2d 84, 88 (2d Cir. 1988); *Application of The Herald Co.*, 734

F.2d 93, 100 (2d Cir. 1984). Two such *in camera* conferences were held, one in person on May

15, 2019, and one by telephone on July 3, 2019, at which counsel for the United States and Sater

were present. (ECF Nos. 273, 281). The Court also received sealed written submissions from the

United States and/or Sater on April 9, May 27, June 7, and July 12, 2019.

---

[2] The request to unseal Dkt No. 16 was mooted on March 27, 2019, when the Court ordered it
unsealed. (ECF No. 260).

# DISCUSSION

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), the Supreme Court held

that there is a common law "presumption … in favor of public access to judicial records." *Id.* at

602. The Second Circuit has held that some judicial records are also entitled to a presumption of

openness under the First Amendment. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110,

120 (2d Cir. 2006). Neither the Government nor Sater dispute that the records at issue enjoy a

qualified right of access under both the common law and the First Amendment. The merits of

this application, therefore, need only be analyzed under the "stronger" First Amendment right.

*U.S. v. Erie County, N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014).[3]

---

[3] The trend in this Circuit and around the country has been to accord Section 5K1.1 memoranda a presumptive right of access under the First Amendment or, at minimum, the common law. *See United States v. Chang*, 47 Fed. Appx. 119, 122 (3d Cir. 2002) (unpublished); *United States v. Doe*, No. 19-CV-27 (AWT), 2019 WL 1081675, at *4 (D. Conn. Mar. 6, 2019); *United States v. Harris*, 204 F.Supp.3d 10, 15 (D.D.C. 2016); *Vance v. Wilson*, No. 10-CV-300 (HRW), 2011 WL 3794380, at *2 (E.D. Ky. Aug. 25, 2011); *United States v. McLaughlin*, No. 06-CR-965 (RJS), 2009 WL 4729877, at *1 (S.D.N.Y. Dec. 10, 2009); *United States v. Raybould*, 130 F.Supp.2d 829, 833 (N.D. Tex. 2000). Nevertheless, during the July 3, 2019 telephone conference, the United States argued that Section 5K1.1 memoranda should be treated as presumptively confidential in their entirety, gesturing to their similarity to presentence reports, to which the common law and First Amendment right of access does not apply. *See United States v. Charmer Industries, Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983); *Roe v. United States*, 428 Fed. Appx. 60, 66 (2d Cir. 2011) (summary order). While this comparison may be superficially attractive, it fails in an important respect: sentencing memoranda are submitted by the parties, while presentence reports are prepared by the court's own probation services system. Presentence reports, therefore, are an internal court document. *See Charmer Indus.*, 711 F.2d at 1170 ("In preparing such a report, the Probation Service acts as an arm of the court"). While it is true that presentence reports are "relevant to the performance of the judicial function and useful in the judicial process," *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995), the same could be said of many other internal court documents to which a common law right of access indisputably does not attach, such as bench memoranda or early, unpublished drafts of judicial opinions. *See Washington Legal Foundation v. United States Sentencing Commission*, 89 F.3d 897 (D.C. Cir. 1996) (holding that the "federal common law" right of access to public records did not extend to the "internal documents and memoranda" of an Advisory Working Group of the United States Sentencing Commission). A Section 5K1.1 memorandum, being a "filed item," *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016), does

4

The literature and judicial discussion of the law of sealing and unsealing is voluminous and largely well-settled. An abbreviated recitation of it would be that, where a First Amendment presumption of access attaches to a judicial document, the document must be made public unless the court makes "specific, on the record findings ... demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (citations and quotation marks omitted). These higher values—or, as they are often described, "compelling interests," *e.g., United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008)—"may include ... privacy interests of the defendant, victims or other persons; the integrity of significant government activities entitled to confidentiality, such as ongoing undercover investigations or detection devices; and danger to persons or property," among other things. *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995). The burden of proof that sealing or its continuance is warranted is borne by the party asserting it, and the "burden is a heavy one." *In re Application to Unseal 98 Cr. 1101(ILG)*, 891 F.Supp.2d 296, 299 (E.D.N.Y. 2012). This skeletal statement is the law of sealing in a nutshell, imparted with consciousness of the observation that "it is one thing to put a case ... in a nutshell and another thing to keep it there." W. Barton Leach, *Perpetuities in a Nutshell*, 51 Harv. L. Rev. 638, 638 n. a1 (1938) (quoting Van Grutten v. Foxwell, [1897] A.C. 658, 671).

Where "the contents of the documents on their face implicate compelling interests," a court may evaluate them *in camera* with only the interested parties present and afforded an opportunity to be heard, *In re Applications to Unseal*, 568 Fed. Appx. at 70, so long as the court "articulate[s] the basis for any closure order, supplying sufficient basis for appellate review," on

---

not enjoy the same immunity from the common law and First Amendment right of access that internal court documents do.

the public record, *Herald*, 734 F.2d at 100; *accord Haller*, 837 F.2d at 88. That prerequisite was met here. At the April 17, 2019 hearing, the Court announced that further *in camera* proceedings would be necessary because any detailed discussion of the merits of the Intervenors' unsealing requests would itself compromise the very interests sought to be protected. For these same reasons, portions of the Court's present analysis are set forth in a sealed statement of reasons (the **"Sealed Statement of Reasons"**), filed concurrently herewith, which, together with this public memorandum and order, may be the subject of any desired appellate review. *See Aref*, 533 F.3d at 82 ("[W]hile the findings must be made on the record for [appellate] review, such findings may be entered under seal, if appropriate") (citations and internal quotation marks omitted).

In this case, the Court is persuaded that, while the vast majority of the documents can be unsealed, in whole or with trivial redactions, they nevertheless contain certain information which would prejudice the Government, Sater, or third parties if unsealed. Those interests in continued secrecy are summarized briefly below and analyzed more thoroughly in the Sealed Statement of Reasons.

*First*, the documents contain information that, if made public, could place certain individuals in personal danger. *See Doe v. Lerner*, 688 Fed. Appx. 49, 50 (2d Cir. 2017) (summary order); *United States v. Armstrong*, 185 F.Supp.3d 332, 336 (E.D.N.Y. 2016); *United States v. Loera*, No. 09-CR-466 (BMC), 2018 WL 5906846, at *5 (E.D.N.Y. Nov. 11, 2018); *Walker v. City of New York*, No. 15-CV-500 (NG) (ST), 2017 WL 2799159, at *6 (E.D.N.Y. Jun. 27, 2017); *United States v. Doe*, No. 14-CR-438 (PKC), 2014 WL 11515832, at *2 (E.D.N.Y. Oct. 30, 2014).

*Second*, the documents contain information that implicates law enforcement interests, including information that may identify the target, subject or status of a particular government

investigation. *See Strauss v. Credit Lyonnais, S.A.*, Nos. 06-CV-702, 07-CV-914 (DLI) (MDG), 2011 WL 4736359, at *6-*7 (E.D.N.Y. Oct. 6, 2011); *United States v. Strevell*, No. 05-CR-477 (GSS), 2009 WL 577910, at *4 (N.D.N.Y. Mar. 4, 2009) ("[S]ome law enforcement interests are routinely accepted as higher values and countervailing factors, including: the protection of law enforcement techniques and procedures; the protection of the confidentiality of sources; the safety of witnesses and police officers; the privacy and reputation interests of those involved in an investigation, including victims, witnesses and potential targets; the protection of ongoing investigations in terms of preventing interference, flight, or other obstructionist activities; the protection of grand jury secrecy; and, the protection of national security") (collecting cases).

*Third*, the documents contain information derived from confidential presentence reports. *See Lerner*, 688 Fed. Appx. at 50-51 ("The District Court ... properly determined that sealing was appropriate for John Doe's Pre-Sentence Report ('PSR')[] [and] documents containing information sourced from the PSR....").

*Fourth*, the documents implicate the privacy interests of Sater or third parties with no public ramifications. *See U.S. v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995); *Martoma*, 2014 WL 164181, at *6 ("Although courts consider the defendant's privacy interest, it is generally the privacy interests of innocent third parties that weigh heavily in a court's balancing equation") (internal citations, quotation marks, and alterations omitted); *Strevell*, 2009 WL 577910, at *4 ("Numerous courts have found privacy interests worthy of protection such as business and financial records, account information, personal identifiers, third-party letters of support, and family matters such as medical conditions or embarrassing conduct with no public ramifications") (collecting cases).

*Fifth*, the documents contain reproductions of the complaint in *Kriss v. Bayrock Group LLC*, No. 10-CV-3959 (S.D.N.Y.), which remains partially under seal in the Southern District. In the interests of judicial comity, information sealed by the Southern District in *Kriss* should remain sealed here as well. *See Lerner*, 688 Fed. Appx. at 50-51 ("The District Court ... properly determined that sealing was appropriate for ... documents sealed in related proceedings...."); *Accent Delight International Ltd. v. Sotheby's*, No. 18-CV-9011 (JMF), 2019 WL 2602862, at *9 (S.D.N.Y. Jun. 25, 2019) (holding that, under principles of comity, where a foreign court has taken under advisement whether to keep a document sealed, the District Court would permit the foreign court to "rule on the issue in the first instance" rather than decide whether to unseal a duplicative document on its own docket).

In addition to determining whether unsealing would raise a substantial probability of prejudice, the Court must "determine whether, under the circumstances of the case, the prejudice to the compelling interest overrides the qualified First Amendment right of access." *Doe*, 63 F.3d at 128. Implicit in this requirement is the premise that unsealing may constitutionally be required, even in the face of compelling interests for continued secrecy, if those interests are outweighed by an even more compelling need for disclosure. *See, e.g., United States v. Cohen*, Memorandum & Order, No. 18-CR-602 (WHP), Dkt No. 47, at 2 (S.D.N.Y. Jul. 17, 2019). The more it can be said that disclosure "allows the public to understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern," *Bernstein*, 814 F.3d at 141, the stronger the argument that the First Amendment right of access overrides any competing interests for sealing.

The paramount interest that the Intervenors have asserted in obtaining the documents in question is that they will reveal the sinews of Sater's relationship with President Trump. The

Court does not for one moment minimize the want to gather information about Sater and the President. However, among the materials that will remain under seal, there is not a jot or tittle that mentions the President in relation to Sater. The materials that are sealed relate solely to Sater's prior conviction, the assistance that he provided the Government in the investigation and prosecution of other matters, proceedings in this Court seeking to prevent disclosure of that cooperation, and prior unsealing motions. They contain no information which even the most inquisitive member of the public might find interesting or helpful in understanding President Trump or his associates.

Finally, the Court must issue a sealing order "narrowly tailored" to serve the needs for continued sealing it has identified. *Lugosch*, 435 F.3d at 120 (citations and quotation marks omitted). "[D]istrict courts [should] avoid sealing judicial documents in their entirety unless necessary," *Aref*, 533 F.3d at 83, and have no "power to seal information that, although once sealed, has been publicly revealed," *In re Application to Unseal*, 891 F.Supp.2d at 300 (collecting cases). Here, the Court has conscientiously parsed the documents in issue with a view to determining whether the presumption of access has been rebutted by a compelling interest in secrecy, and its sealing order is narrowly drawn.

The Court is mindful that members of the public are at a structural disadvantage whenever a court entertains an unsealing request, in that they must by necessity be excluded from any *in camera* proceedings going to the merits of the request. Furthermore, when sealing or its continuation is sought by the United States for reasons grounded in the needs of law enforcement and national security, the Court is generally in no position to second-guess its representation that prejudice will ensue and must rely on the assumption that the Government— and *especially* the Government—is acutely aware and respectful of the people's constitutional

9

right of access to judicial documents. Correspondingly, it is the obligation of any party that requests sealing or its continuation to supply a concrete and particularized basis for the request. The Court has taken seriously its obligation to ensure that every word and letter redacted from these judicial records has been justified by something more than a "[b]road and general" appeal to safety, security, or the like. *Lugosch*, 435 F.3d at 120.

## CONCLUSION

For the reasons stated in this memorandum and order and in the Sealed Statement of Reasons:

1.     The Intervenors' motions to unseal are **GRANTED IN PART** and **DENIED IN PART.**

2.     The Clerk of Court is respectfully requested to **UNSEAL** all documents marked **"Unseal"** in the Appendix to this order.

3.     Redacted versions of the documents marked **"Redact"** in the Appendix to this order shall be made publicly available forthwith.

4.     The 5K Letter and the ML Letter shall be docketed and unsealed with the redactions indicated in the Sealed Statement of Reasons; *provided*, however, that the docketing and unsealing of these two items shall be **STAYED** for 30 days, and, if the United States files a notice of appeal within that time period, thereafter until further order from the Court.

5.     Dkt No. 158 and the peripheral third-party sentencing letter shall remain under seal.

SO ORDERED.

Dated:     Brooklyn, New York
           July 22, 2019

                                    /s / I. Leo Glasser
                                    I. Leo Glasser                        U.S.D.J.