Eastern District of New York - Live Database Version 4.0.3-Query                    https://ecf.nyed.uscourts.gov/cgi-bin/iquery.pl

# Query

**Search Clues**

| | | |
|---|---|---|
| Case Number | [ 98-cr-1101 ] | This case is under seal. |

**or search by**

Case Status:       ○ Open    ○ Closed    ○ All

Filed Date          [          ] to [          ]

Last Entry Date    [          ] to [          ]

Nature of Suit
```
0 (000)
110 (Insurance)
120 (Contract: Marine)
```

Cause of Action
```
0 (00:0000)
02:0431 (02:431 Fed. Election Commission: Failure Enforce C)
02:0437 (02:437 Federal Election Commission)
```

Last/Business Name    [                    ] (Examples: Desoto, Des*t)

First Name    [                ]    Middle Name [                ]

Type    [          ]

[ Run Query ]    [ Clear ]

**JUDGE BUCHWALD**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NY

JODY KRISS and MICHAEL EJEKAM, directly and derivatively on behalf of
BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; and
BAYROCK WHITESTONE LLC;

Plaintiffs,

v.

**10 CIV 3959**

BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ;
FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA;
ALEX SALOMON; JERRY WEINRICH; SALOMON & COMPANY PC;
AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN;
DUVAL & STACHENFLED LLP; BRUCE STACHENFELD;
DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT;
ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL;
MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100;
BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC:
BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.; and
NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;

Defendants

and

BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC, and
BAYROCK WHITESTONE LLC

Nominal Defendants (Derivative Plaintiffs)

**VERIFIED
COMPLAINT**

**JURY TRIAL
DEMANDED**

U.S. DISTRICT COURT
FILED
MAY 10 2010
S. D. OF N.Y.

Plaintiffs Jody Kriss ("Kriss") and Michael Ejekam ("Ejekam"), through their counsel, allege:

**INTRODUCTION**

1.     Plaintiffs, members in and creditors of Bayrock limited liability companies, directly and

derivatively seek relief from Arif, Satter, Schwarz, for violations of substantive and conspiracy

provisions of the Racketeer Influenced and Corrupt Organizations Act; from Halberg, Salomon,

Weinrich, Salomon & Co., Roberts & Holland, Pisem, Duval & Stachenfeld, Stachenfeld, Granin,

Brown, and Dogan for violations of its conspiracy provision; and variously from all Defendants

for violations of substantive, aid and abettance, and conspiracy provisions of state law.

C. **Bayrock Merrimac, LLC** is, and was at all times relevant, a duly organized and existing Florida limited liability company. It is the holding company for Bayrock insider interests in the Trump International hotel condominium project in Fort Lauderdale.

D. **Bayrock Whitestone LLC** is, and was at all times relevant, a duly organized and existing Delaware limited liability company. It is the holding company for Bayrock insider interests in the Waterpointe mixed use project in New York City.

E. **Bayrock Ocean Club LLC** is, and was at all times relevant, a duly organized and existing Florida limited liability company. It is the holding company for Bayrock insider interests in the Trump Ocean Club hotel condominium project in Fort Lauderdale.

THE BAYROCK RICO DEFENDANTS

21.     **Tevfik Arif** is a natural person residing in New York. Arif, a native Russian, started Bayrock as a party *apparatchik* in Moscow in 1989 at the fall of communism, backed by oligarchs and money they stole from the Russian people. He came to the United States in 2000 to establish a presence for Bayrock, forming Bayrock Group LLC in 2002. Until Satter joined, Arif had sole, if nominal, direct or indirect ownership and control of Bayrock Group LLC. He has always been a member and has always participated in its operation with the title "Chairman".

22.     **Felix Satter** ("Satter") aka Felix Sater, is a natural person residing in New York, a native Russian who emigrated to the United States in the 1970s. He joined Bayrock in 2002 with an organized crime history. By 2003, Arif had given him majority ownership in, and shared control of, Bayrock. He is been a member of all five Subs and of Bayrock Group LLC and has always participated in its operation, with the title "Chief Operating Officer" or "Managing Director".

23.     *Julius Schwarz* ("Schwarz") is a natural person residing in New Jersey. Bayrock hired him as Executive V.P. and General Counsel in early 2005, and since November 2005 he has been a member of all five Subs and of Bayrock Group LLC, and has always participated in its

7

94.     These five categories all mutually overlap, because one illicit transaction typically involved multiple concealments. Superimposed is the overarching theme of tax fraud, since tax frauds dominate this action and by themselves, given the 15 year forward money laundering tenor of that $250,000,000 scheme, ¶92, satisfy both closed and open continuity and relatedness. FIGURE 3.



**FIGURE 3**

95.     Not every concealment was of ownership. Not every concealment of ownership was for tax fraud[4]. Not every tax fraud relied on concealed ownership[5]. Not every concealment of ownership involved Satter, or only Satter. But, as the diagram shows, all the frauds were related to each other, and all satisfy *Daidone* relatedness, all related to the enterprise and all with the common goal of lining the pockets of Arif, Satter, and Schwarz with the proceeds of their racketeering.

96.     **The Story (cont'd).** When Plaintiffs joined Bayrock in 2003, Arif and Satter told them Satter had a "nominal" interest in the firm, only in subsidiaries, and while he had a prison record for assault, he was turning his life around. Because his guilty plea to criminal RICO, proffer, and cooperation agreement, Exh. A, were sealed as he was aiding the prosecution of his Mafia and Russian organized crime confederates, Arif and Satter were able to hide his history of securities fraud, money laundering, ███████████████████████████ from Plaintiffs and

---

[4] For example, as alleged, ¶84, the Bayrock RICO Defendants often concealed all the owners other than Arif from lenders, to hide Satter and to hide their perpetual violation of loan covenants which required certain Bayrock Subs to be bankruptcy remote single purpose entities, which they were not.

[5] However, every tax fraud impacted every partner. By partnership taxation, Bayrock's criminally fraudulent tax accounting harmed all the partners, even the innocent, who received either fraudulent K-1's, or no K-1's at all as part of the concealment of their status and identity from the IRS, and who received illegally diminished tax distributions, or no tax distributions, as a proximate result of the illegally understated Bayrock partnership taxable income.

others for almost five years, though Schwarz, who joined in 2005, learned the truth by 2007 and used it in an attempt to extort Arif and Schwarz, *infra*.

97.     Plaintiffs agreed to join Bayrock, as did others, because Arif and Satter promised them "sweat equity", with comparatively modest, or no, regular additional cash compensation.

98.     This meant these service providers' ultimate compensation would be heavily dependent on the entrepreneurial success of Bayrock operations; this was the essence of all their bargains.

99.     Sometimes, as with Ejekam, the sweat equity was limited in scope to depend on the success of specific projects, and sometimes, as with Kriss and Schwarz, it was broadly scoped to depend on the success of almost every project in the Bayrock Organization.

100.    Sweat equity rights were encapsulated in, and conveyed to service providers by having Bayrock companies issue them, membership interests, making them members.

101.    Those service providers whose sweat equity was limited in scope received membership interests in one or more Subs. For example, referring to the EQUITY CASH FLOW diagram, Pg. 9, Ejekam, whose sweat equity was limited in scope to the Trump SoHo and Waterpointe projects, received membership interests in Bayrock Spring Street LLC and Bayrock Whitestone LLC.

102.    Those service providers whose sweat equity was broadly scoped, like Kriss and Schwarz, received membership interests in all five Subs, plus membership interests in other companies, including Bayrock Group LLC itself. Satter's membership interests were also broadly scoped, while Arif has had membership interests only in Bayrock Group LLC.

103.    Thus, as the projects paid off and cash flowed up from the lower-tier companies, what remained after Bayrock outsiders got their distributions from lower tiers would eventually flow upstream to the Subs, and once there, the limited scope and broad scope service providers and Satter would get their distributions, the remainder distributed upstream to Bayrock Group LLC, where Arif, Satter, and the broad scope service providers would get additional distributions.

104.    At least this is what was supposed to happen. It did not.

21

204.     Satter committed these crimes in connection with his founding (with several partners in crime, one of whom, Sal Lauria, he would take with him to Bayrock) and operation of a Russian and Mafia stock brokerage "pump and dump" operation variously known as "White Rock Partners" and "State Street Capital Markets", which defrauded its victims of $40,000,000[7].

205.     Although he ▓▓▓▓ and agreed to cooperate in 1998, Exh. A, Satter was not convicted until 2004, Exh. C, well within the 10-year window of FRE 609(b), and the nature and degree of his crimes, the number of victims and the amount they were defrauded of, about $40,000,000, would qualify for the 609(b) exemption in any event.

206.     His criminal activities eventually attracted the attention of the FBI's Russian organized crime squad, largely because he and a Russian mob confederate, Gennady Klotsman, who has since returned to Russia after serving his term for these crimes, left a locker full of incriminating documents and TEC-9 assault weapons without paying the rent and it was eventually broken into by the owner. Their ensuing investigation culminated in a 1998 ▓▓▓▓▓▓▓▓

---

▓▓▓▓ was deposed Marcy 9, 2010 in *Bernstein v. Bayrock Group LLC*. Here is his testimony about his racketeering:

Q.     Were you ever convicted of a crime?

A.     Yes.

Q.     What was the crime you were convicted of?

A.     I was convicted of assault one.

Q.     Were you ever convicted of any other crimes?

A.     On the advice of counsel, I am not going to answer that question as I don't have to incriminate myself nor does this business litigation have anything to do or bearing on whether I am convicted of any crimes or not. On the advice of counsel, I won't answer past what I have already answered.

Q.     You already answered you were convicted of assault?

A.     Yes.

Q.     If you have actually been convicted, the fact that you have been convicted cannot constitute any testimony against your own interests and goes to your credibility depending upon what the nature of conviction was and if it goes to a conviction related to something related to any sort of fraud, et cetera, it is relevant to your credibility as a witness in this case.

A.     Probably not a very credible witness to begin with.

39

226.   Arif, Satter, and Schwarz never respected the skims as "loans", for good reason: When he joined Bayrock, supposedly his only asset was his Bayrock interest. No creditor would have lent him millions as he had nothing ex Bayrock to repay it with. Nothing he would admit, anyway. ▮



227.   It's possible ▮ "couple million dollars" of racketeering proceeds survived his conviction and sentencing and that he showed Arif he had it stashed overseas so was a good credit risk, and this knowledge reassured Arif; this cannot be known until disclosure, though it is unlikely Satter or Arif will actually testify Satter had these illegally obtained millions to support his "credit."

228.   Meanwhile Schwarz, Bayrock's general counsel, knew all along these "loans" were shams and were tax evasion. Evidence of that comes from a Schwarz himself:

229.   One example is Schwarz's recent deposition testimony in an unrelated case that he was aware of those constant, month after month, continuing payments of cash to Satter and that he believed they weren't "loans", but compensation[12].

---

[12] From Schwarz's March 5, 2010 deposition in *Bertnstein v. Bayrock Group LLC* (for brevity slightly redacted):

Q.   Felix Sater was given money by Bayrock group LLC in exchange for his services? True or false?

A.   Yes.

Q.   What did Felix Sater do or promise to do in return for the money?

A.   His job was to source and obtain transactions for the company.

Q.   Was the money paid to him in consideration for his doing that or was it lent to him in consideration for his repaying [it]?

A.   I would stay it was -- I guess in my view he was paid for him in consideration of doing that.

Q.   Then it was not a loan; it was pay?

A.   I would say that is probably correct.

46

> Just fyi. I have not reviewed. Please forgive [the tax partner's] last sentence. We have the
> accountant's advice defense, and can also treat the incremental payment, should we chose
> to make it, as insurance. I would recommend it to you.

772.    Salomon will be no doubt gratified to read this, that all these lawyers were conspiring to

blame it all on him, will drafting him to do all the labor.

773.    Finally, two points. First, while Plaintiffs cannot know until disclosure what exactly

Schwarz and Satter told the IRS in their testimony that Gilbert refers to, and may not even then

(not surprisingly, but illegally, in a recent deposition in an unrelated case Schwarz has refused to

discuss any of the terms under which this or other money was paid to Satter, or the terms of the

trust planned into which they would transfer Satter's membership interests to hide his ownership

going forward; Schwarz claimed somehow that the financial terms of this cover-up were all

"privileged"). From the prior allegations it is clear enough that they lied to make Satter look like

an employee, to be consistent with all the frauds they had perpetrated, the condominium

offerings, the bank documents, and the tax frauds and took Gilbert's hint to make sure this was

presented to the IRS "without the IRS looking at documents".

774.    Second, what did Gilbert say on December 22, 2008 about those concealed documents?

> ...*Felix has a 50% membership interest in Bayrock LLC and various affiliates*...

775.    Plaintiffs will determine in disclosure what happened after this in detail, but can allege

that Satter had $1,600,000 of his taxes paid, that $1,600,000 of income to him concealed, and that

he was given $52,000 a month for some time, that he was paid $1,500,000 in the form of a sham

"investment" in Defendant Bayrock Group Inc. to evade tax on that as well.

**AGAINST ALL DEFENDANTS**

785.    Each and every such prayer for relief explicitly or implicitly stated herein or as may be available is hereby demanded, in each combination, (i) directly, by Plaintiff Kriss; (ii) directly, by Plaintiff Ejekam; and (iii) derivatively, by Plaintiff Kriss on behalf of Bayrock Group LLC, Bayrock Spring Street LLC, and Bayrock Whitestone LLC; and by Plaintiff Ejekam on behalf of Bayrock Spring Street LLC and Bayrock Whitestone LLC.

===== end =====

**COUNSEL:**

Signed this 10th day of May, 2010

Frederick M. Oberlander, Counsel for Plaintiffs

**THE LAW OFFICE OF FREDERICK M. OBERLANDER**
Frederick M. Oberlander, Esq. (FO1955)
28 Sycamore Lane, Box 1870
Montauk, New York 11954
212.826.0357   Tel
212.202.7624   Fax
fred55@aol.com

164

United States District Court
Southern District of NY

JODY KRISS and MICHAEL EJEKAM, directly and derivatively on behalf of
BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; and
BAYROCK WHITESTONE LLC;

     Plaintiffs,
     v.

BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ;    **VERIFIED**
FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA;    **COMPLAINT**
ALEX SALOMON; JERRY WEINRICH; SALOMON & COMPANY. PC;
AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN;    **JURY**
**TRIAL**
DUVAL & STACHENFLED LLP; BRUCE STACHENFELD;    **DEMANDED**
DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT;
ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL;
MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100;
BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC:
BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.; and
NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;

     Defendants
     and

BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC, and
BAYROCK WHITESTONE LLC

     Nominal Defendants (Derivative Plaintiffs)

## VERIFICATION

I, Jody kriss, pursuant to 28 USC 1746, declare as follows:
I am over eighteen years of age and have personal knowledge of the facts contained in this
Declaration. I have read the foregoing Complaint, which I declare to be true and correct to the
best of my knowledge, information, and belief. I declare under the penalty of perjury that the
foregoing is true and correct.

Executed on May 10, 2010
    2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
UNITED STATES OF AMERICA,                              :

                                     Plaintiff,          **Notice of Cross-Motion**
                                            :

                   - against -                                **98 CR 1101 (ILG)**
                                            :

FELIX SATER,                                          **FILED UNDER SEAL**
                                Defendant.
------------------------------------------------------- x

**Please take notice** that upon the attached declaration of Thomas W. Hyland, affirmed on

**June 7, 2010** and upon the attached declaration of Fred M. Oberlander, affirmed **on June 7,**

**2010**, non-party Fred M. Oberlander will move this court, before I Leo Glasser, U.S.D.J., in

Room 8B South United States Courthouse, located at 225 Cadman Plaza East, Brooklyn, NY

11201, , on the 8th day of June, 2010 at 9: 30 a.m. or as soon thereafter as counsel can be heard,

for an order granting Oberlander leave to contact the third-person who gave him the documents

at issue herein, together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
           June 7, 2010

                                    Respectfully submitted,

                                    WILSON, ELSER, MOSKOWITZ,
                                    EDELMAN & DICKER LLP

             By:
                                    Thomas W. Hyland
                                    *Attorneys for Fred M. Oberlander*
                                    150 East 42nd Street
                                    New York, New York 10017
                                    (212) 490-3000
                                    07765.00155

To:    Kelly Moore, Esq.
       Morgan, Lewis & Bockius LLP
       101 Park Avenue
       New York, NY 10178-0060
       212.309.6000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
UNITED STATES OF AMERICA,             :   98 CR 1101 (ILG)

                 Plaintiff,           :   **FILED UNDER SEAL**

   - against -               :

                             :   **Declaration of Thomas W. Hyland in**
FELIX SATER,                        **Support of Cross-Motion and in**
                                  **Opposition to Main Motion**
                 Defendant.

------------------------------------------------------- x
FREDERICK M. OBERLANDER, ESQ.,

                 Non-Party Respondent.

------------------------------------------------------- x

      I, Thomas W. Hyland, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as

follows:

      1.     I am a member of the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP,

counsel for attorney Frederick M. Oberlander, Esq. This declaration and the exhibits hereto are

filed under seal. I make this declaration based upon my review of the file maintained for the

defense of Oberlander. However, my file does not include the documents at issue on this motion.

Pending a ruling on this order to show cause, I have directed Oberlander to maintain the status

quo, and show the documents to no one, not even me or anyone in my law firm.

      2.     I submit this declaration in opposition to order to show cause brought by

defendant Felix Sater. Sater seeks the following relief:

      a)     As per the OTSC, the immediate return of certain purportedly protected materials.

      b)     As per the OTSC, an inquiry into how certain persons acquired the purportedly
              protected materials, and to whom they were distributed.

      c)     As per the OTSC, a temporary restraining order against further dissemination.

      d)     Apart from the relief sought in the OTSC, defendant Sater's memorandum seeks
              costs and attorney's fees.

3.      I also submit this declaration in support of the affirmative relief sought by cross-motion, by which Oberlander requests leave of the court to contact the client who gave him the documents at issue, who – it is expected – would avow by affidavit how he obtained the documents and from whom, and that they were not obtained from a sealed court file.

4.      The following exhibits are submitted herewith:

| | |
|---|---|
| Exhibit "A" | Declaration of Frederick M. Oberlander, Esq. |
| Exhibit "B" | Complaint in matter of *Kriss v. Bayrock.* |
| Exhibit "C" | Excerpts of deposition of Joshua Bernstein, dated March 8, 2010 (Bernstein v. Bayrock Group, LLC, Supreme Court, Westchester County, Index No. 02579/09). |

5.      The relief sought by Sater should be denied in all respects. However, should this court find a colorable argument in defendant Sater's favor, the issue should be resolved by United States District Judge Naomi Reice Buchwald, S.D.N.Y., in the context of the ordinary discovery process in the underlying civil RICO matter of *Jody Kriss, et al. v. Bayrock Group LLC, et al.,* S.D.N.Y. Docket No. 10-cv-3959. We respectfully submit, however, that there is absolutely no colorable argument in Sater's favor. This is so because the only thing that has been sealed is the court's own file. The documents at issue did not come from the court file. Oberlander did not obtain them improperly.

   --      *Summary of the allegations in the complaint against Sater*
            *in Kriss v. Bayrock.*

6.      In behalf of Jody Kriss and others, Oberlander has instituted a derivative action in the United States District Court for the Southern District of New York against Sater, *et al.* The action sounds in fraud, tax evasion, money laundering, embezzlement, breach of fiduciary duty, and, importantly, substantive and conspiracy violations of RICO. Significant in the schemes and conspiracies is that Sater was – as alleged – the majority owner of the Bayrock Organization,

though he hid his ownership, *inter alia*, (a) to avoid millions of dollars of personal tax liability;

(b) to launder money; and (c) ████████████████████████████████████████

(See *Kriss v. Bayrock* complaint, ¶83: "... Arif and Sater agreed to conceal Sater's majority

ownership of the Bayrock Organization. They concealed it from plaintiffs and others at

Bayrock.... ██████████████████████████████████████████████

████████████████████████████████████ They concealed it, and his million dollar

skimmed income, from the IRS....")

      7.     Indeed, according to the complaint, Sater felt the need to hide his ownership

interest in Bayrock precisely because ████████████████████████████████████████

Yet at the same time that he was representing ██████████████████████ that he had

no money, he was – as alleged – skimming millions from Bayrock, defrauding the tax

authorities, and depriving his previous fraud victims of potential restitution. I again state that

these are the allegations in the complaint, to which I myself have no personal knowledge.

      --     *Sater's motion must be denied, because he has failed to make a*
           *prima facie showing of entitlement to relief.*

      8.     The court will note that Sater's OTSC contains no affidavit from Sater himself.

He does not state that Oberlander – or indeed anyone – obtained these documents in violation of

any sealing order, or for that matter that Oberlander – or indeed anyone – obtained them from the

court. And in fact Oberlander did not get them from the court file.

      9.     Moreover, Sater does not state that he never gave his personal copies of the

documents to any third person. In fact, it appears that his counsel concedes that he kept copies of

the documents at Bayrock, and since it is apparently his position that he had no ownership in the

Bayrock Organization, it is not quite clear what expectation of privacy he maintained by keeping

them at the Bayrock offices. In any event, since Sater failed to avow that he did not give out

copies, and since he failed to avow that he protected his copies, he has failed to eliminate the possibility that he himself released the documents into the world, without preserving their purportedly protected status.

10.     By his failure to state that Oberlander obtained the documents from the court files and by his failure to rule out these obvious scenarios – *a fortiori* by his failure to state either – Sater has failed to make a *prima facie* showing of entitlement to any relief whatsoever; thus, this court should summarily deny the order to show cause.

11.     Even if this court is not inclined to deny the motion summarily, the first inquiry must focus on Sater, not Oberlander. This is to say, before this court conducts any inquiry into how Oberlander obtained the documents, it must be established whether Sater ever gave them to anyone else (other than perhaps his own attorney) or otherwise made them – or any purportedly protected information contained in them – available. If he answers *Yes*, then the court need not go any further. See, *e.g.*, *Bradley v. C.I.R.*, 2006 WL 3780767 (2d Cir. 2006) (holding that the privilege of attorney-client communications is waived when the documents are disclosed to an accountant); *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) (holding that disclosure of attorney-client communications in an extra-judicial setting constitutes waiver of the privilege in all court proceedings). So if Sater himself disclosed or failed to protect the documents or the information in them then he has forsaken any privilege that may have attached to them and no further inquiry is warranted about how Oberlander obtained them.

12.     Conversely, further inquiry might be warranted only if Sater will avow, under penalty of perjury, that he has never given the documents or the information to anyone or allowed them to become known.

13.     There is good cause to believe that Sater failed to maintain the privilege that may attach to his own documents. Joshua Bernstein testified in the matter of *Bernstein v. Bayrock* at pages 194-195 that "at the direction of Felix Sater I downloaded regularly files from [the] hard drive and the server [of the Bayrock computers]." Felix further directed Bernstein "to keep …offsite, an archival copy [of] as much of the server as [he] could." (Excerpts of the deposition are included as an exhibit hereto).

14.     If Sater was not an owner of the Bayrock organization, then any personal privilege was, at least arguably, shattered if he put these documents on the company's computer and when he directed that all documents, including the ones at issue, be accessed by Bernstein and saved offsite at Bernstein's home. (Bernstein deposition, p. 219: "*Q.* Where did you keep them? *A.* In my files. *Q.* At home? *A.* Yes.")

15.     Given this testimony, before this court proceeds any further Sater should be asked a line of questions like this: *Q.* Did you give the documents at issue here to anyone? *Q.* If so, to whom? *Q.* Did you put any of your own personal documents on the Bayrock computer system? *Q.* How many copies did you leave lying around at Bayrock? *Q.* Where? *Q.* Were they always under lock and key? *Q.* Who else had access to your files? *Q.* How many copies did you leave lying around in other places? *Q.* Did you have any ownership interest in Bayrock? *Q.* If not, what makes you think you didn't waive any privilege if you put them on the computer?

--     *If the court entertains the motion, Oberlander should be granted leave to contact the client who it is believed obtained the documents from Sater and who in turn gave them to Oberlander.*

16.     As for how Oberlander got the documents, the answer is simple: As he states in his declaration, they were given to him without his solicitation by a client. Oberlander must be circumspect in stating who it was that gave him the documents, however, as he is duty-bound to

preserve an attorney-client privilege. Oberlander states in his declaration that he did not obtain them from the court file. Rather, unsolicited, they were given to him by a client. [Again, by "client" we mean to be circumspect, as the term could refer to either a present or former client].

17.     Because this OTSC is under seal, Oberlander has not contacted this client to ask if he would submit an affidavit in opposition to this order to show cause. It is believed that if this court were to permit Oberlander to contact the client, then the client would readily submit an affidavit stating that he obtained the presentencing report, the proffer agreement, the cooperation agreement and the United States Department of Justice financial statement from Sater, either by his having been given a hard copy of the documents or an electronic copy.

> --   *Oberlander did not take the documents from the court file. He obtained them lawfully.*

18.     As set forth in the Oberlander declaration, he came into possession of information showing why Sater was hiding his personal assets from a client, lawfully, not from the court.

### Argument

> —   *The court's privilege has not been violated. Assuming Sater himself even had any privilege to begin with and then disclosed the documents to others, that's his problem.*

19.     While courts may not freely disseminate PSR's (or other sealed materials), the privilege is the court's. The court cannot prevent third-persons in possession of the documents from giving them to another. Since, as he states in his declaration – and this is uncontested – Oberlander did obtain the documents from someone other than the court, he did not violate any sealing order or other court privilege, Sater's motion must simply be denied.

20.     Contrary to what Sater's counsel asserts in his memorandum of law,[1] Criminal Procedure Rule 32(e)(2) is not a prohibition against the disclosure of a PSR beyond the usual participants in a criminal prosecution – *i.e.*, the court, prosecutors, defense counsel, and the defendant. Federal Rule of Criminal Procedure, 32(e)(2) states:

> *Minimum Required Notice.* The probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period.

21.     This is nothing more than a scheduling rule. As set forth in the margin, the history of Rule 32 proves this.[2] The 1983 amendment[3] (which is the source of Rule 32[e][2]) is a procedural scheduling provision. It is this amendment that Sater's counsel incorrectly characterizes as some kind of substantive rule. Indeed, the Second Circuit's observation in *United States v. Charmer Indus. Inc.*, 711 F.2d 1164, 1172 (2d Cir. 1983) with respect to this 1983 version of Rule 32 remains accurate still. There, the Second Circuit stated that although the rule "sets the standards for release of presentence reports to defendants, their counsel, and the prosecuting attorneys, it is silent as to whether and under what circumstances such reports may be disclosed to 'third persons,' – by which we refer to persons or entities other than the courts,

---

[1] See Sater memorandum at 5 (arguing that Rule 32(e)(2)of the Federal Rules of Criminal Procedure "specifically limits the disclosure of pre-sentencing and other probationary reports only to defendants, their counsel, and prosecuting attorneys").

[2] For decades, presentence reports were not disclosed to defendant or counsel. Only in 1967 did Rule 32 first permit – but not require – the trial court to disclose the report to defendant and counsel, in the court's discretion. A 1973 amendment first required – but only on request of the defendant – disclosure to defendant and counsel. A 1983 amendment eliminated the request condition, requiring disclosure by the court to defendant and counsel, but also requiring they return the documents.

[3] Id.

and defendant, Federal law even requires the disclosure of the PSR's to third parties, who

themselves are under no prohibition against further redistribution.[7]

> --     *The court's privilege is not absolute. Upon a showing of*
> *compelling need, the documents may be unsealed.*

25.     Moreover, the court's privilege is not absolute.[8] A court will order disclosure of a

PSR to third parties "so as to ensure the accuracy and truthfulness of all information before this

and other courts, and to prevent respondent from taking inconsistent, self-serving positions

regarding his financial condition" in a civil lawsuit. *United States v. Watkins*, 98 CR 1142 (JSR),

2009 U.S. Dist. LEXIS 58220 at *9.[9]

> --     *The court's privilege is not absolute. Upon a showing of compelling*
> *need, the documents may be unsealed.*

26.     As noted in *Charmer*, disclosure of presentence reports to third-parties is

permitted upon a showing of a compelling need for disclosure to meet the ends of justice. 711

---

[7] For example, in 2003, Congress passed the PROTECT Act, which amended 28 USC 994(w) to require courts to submit to the Sentencing Commission information regarding a defendant's sentencing, including the PSR, and requires that the commission, on request, transmit the presentence report to the House and Senate Judiciary Committees and the Attorney General. Neither the Freedom of Information Act nor the Privacy Act apply to the Sentencing Commission, or to Congress, and thus there is no law which, directly or indirectly, prohibits subsequent rediscloure of a PSR by either body.

[8] To be sure, as *Charmer* and subsequent decisions have made clear, presentence reports are generally not considered public records but "*confidential*"court documents. *United States v. Watkins*, 98 CR 1142 (JSR), 2009 U.S. Dist. LEXIS 58220 (S.D.N.Y. 2009) at *4, citing *United States v. Charmer Indus., Inc.*, 711 F.2d at 1177. I have put the word "confidential" in quotes, because the word is too often confused with "privilege." Here, a "confidence" can be ordered to be disclosed, or disclosed even if obtained wrongfully; a "privilege" is inviolate, absent very narrow and special circumstances, such as the crime-fraud exception. Here, the court document was "privileged," meaning the *court* couldn't be ordered to disclose it (again, absent special circumstances). Indeed, contrary to Sater's counsel's position, the holding of *Charmer* is exactly this: *Charmer* held that a probation service clerk -- an employee of the judiciary -- had no authority to release a PSR from the court file. Only the court itself could exercise that authority. The case is inapplicable to the distribution of PSR's from a defendant to a third-party, or a third-party to another third-party.

[9] Furthermore, several district court cases within the Second Circuit recognize that sentencing memoranda and letters attached to or specifically referenced in a sentencing memorandum filed with the court are generally accessible to the public. See *United States v. Sattar*, 471 F.Supp.2d 380 (S.D.N.Y. 2006); *United States v. Roeder*, 05-CR-6161L, 2009 U.S. Dist. LEXIS 11395 (W.D.N.Y. Decided Feb. 13, 2009); *United States v. Lawrence*, 167 F. Supp. 2d 504, 506 (N.D.N.Y. 2001); see also *United States v. Kushner*, 349 F. Supp. 2d 892, 902 (D.N.J. 2005). As the *Kushner* court noted, 349 F. Supp. 2d at 905, "a strong presumption of access attaches to sentencing memoranda." Also, sentencing memoranda and exhibits attached to it, may bear directly on the Court's Article III duties, "perhaps the most important of judicial duties." 349 F. Supp. 2d at 905.

F.2d at 1175; see also *United States v. Lewter*, 402 F.3d 319 (2d Cir. 2005); *United States v. Moore*, 949 F.2d 68, 72 (2d Cir. 1991). This standard likewise applies to applications for the disclosure of federal probation records. See *In re Lobel*, 03 CR 296, 2005 U.S. Dist. LEXIS 5869, at *2-3 (S.D.N.Y. April 6, 2005).

27.     In a remarkably similar situation, the *Watkins* court found compelling need existed where a civil defendant sought to estop that the plaintiff from claiming in 2008 that he had ten years earlier in 1998 purchased half ownership of a business for $600,000 while at the very same time in 1998 the very same plaintiff was lying to the court and to the Probation Department during his sentencing for a drug conviction (like Sater hiding his ownership in the business, as alleged in the *Kriss* complaint) and hiding the $600,000, claiming he had no money or assets to avoid a fine. The *Watkins* court ordered the release to the defendant of (1) the plaintiff's presentence report and (2) other statements the defendant had made to the Probation Department regarding his financial condition. See also *United States v. Harris*, 617 F. Supp. 2d 99 (E.D.N.Y. 2007) (granting Family Court presiding over mother's demand for custody of her son access to the mother's probation records in particular the results of mother's drug tests).[10]

28.     Here, there is no basis to try to put any genie back in the bottle (or cat back in the bag), because the documents at issue would inevitably be ordered to be disclosed, in accord with *Watkins*. As alleged, Sater has engaged in schemes and conspiracies to defraud plaintiff Kriss and many others, by hiding that he was an owner – indeed the majority owner – of the Bayrock organization, and skimming millions of dollars. ████████████████████

─────────────────────

[10] In somewhat similar vein, in *United States v. Huckaby*, 43 F.3d 135, 140 (5th Cir. 1995), the Fifth Circuit upheld the district court's order releasing the defendant's presentence report, so as to address the defendant's claim that his prosecution and conviction for felony tax crimes (instead of a misdemeanor) was racially motivated.

████████████████████████████████████████████████████████████

████████████████████████████ and as violations of either, or both, 18

USC §§1341 and 1343, since Sater employed jurisdictionally significant use of mail or wire (or

both) as part of this fraud with the additional, multi-objective specific intent, *inter alia*, of

depriving his racketeering victims of money or property (i.e., restitution).

29.    The court must be aware of the distinction between "sealed" court documents,

which would be generally inaccessible to the public, versus those same documents being

disclosed by others, such as Sater himself. The court must also be aware of the distinction

between the sealed documents, versus the information contained therein. This court can only

prevent someone from obtaining the court documents; it cannot prevent anyone from learning the

information from other sources. While Sater's counsel harps on the fact that the *Kriss v. Bayrock*

complaint refers to the documents as "sealed," apparently to show Oberlander's *scienter*, the

complaint merely alleges that certain documents were at one time, years ago, sealed, and Sater

utterly fails to appreciate the distinctions noted above. The documents were indeed "sealed" –

past tense – by the court. The documents that are in the court file, if any, may still be "sealed."

However, the documents that Oberlander obtained, and certainly the information in them, are not

·"sealed."

30.    Upon perusal of the complaint in the *Kriss v. Bayrock* action, the court will see

that it was drafted with utmost care. Sater's motion pits a convicted racketeer, tax-evader, money

launderer, and fraudfeasor against a zealous advocate, but without any evidentiary basis having

been shown to show that the miscreant has any basis for obtaining the relief that he seeks. Sater's

counsel has not demonstrated, through an affidavit of Sater himself, that he never gave the

documents to any third person and has not demonstrated he otherwise protected them at all, assuming the existence of any protectable privilege to begin with. Therefore, the motion must be denied in all respects.

31.     In the event the court even entertains this motion, it is respectfully requested that this court grant the relief sought via cross motion – *viz.* leave to contact Oberlander's client – so that Oberlander may request that the client submit an affidavit showing how and from whom he got the documents at issue.

--     *Any relief granted should be granted only to a minimal extent.*

32.     Importantly, the RICO complaint as filed included as attachments only the proffer, the cooperation agreement, and five pages extracted from the PSR. The complaint does not include the financial statement or any of the putatively more confidential information in the PSR, and importantly does not include any of the typically "questionable" PSR provisions such as hearsay statements of co-defendants. The extracts were chosen with care, to include only those portions establishing ██████████████████████he racketeering victims, and others (including where Sater and his co-conspirators and co-defendants failed to disclose his history of criminal securities fraud, for example when they filed fraudulent condominium documents for Trump SoHo, intentionally omitting Sater's then-62% ownership of Bayrock and his criminal past and are continuing that fraud on the buyers by concealing it from them, and from the attorney general of New York).

33.     Any relief should be carefully tailored to these narrow aspects.

### Conclusion

34.     Sater failed to submit an affidavit indicating that he maintained the purportedly protected nature of the documents at issue here. Therefore, the relief requested must be denied. If

the court nonetheless opts to consider the motion, then Oberlander's cross-motion should be granted, permitting him to contact the client who gave him the documents

35.     Sater's application must be denied also because Oberlander states in his declaration that he obtained the documents from a third-person – a client – and not the court.

36.     Finally, the application must be denied because these documents would be ordered to be unsealed in any event, because – as alleged in detail in the *Kriss v. Bayrock* complaint – ██████████████████████████████████████ while hiding his true ownership, and skimming of millions of dollars, from the Bayrock organization. (I conclude by repeating that these are the allegations, unknown to me personally).

37.     If this court finds any colorable argument in Sater's favor, the documents at issue should be ordered turned over to Sater's counsel and held pending a determination of their discoverability in the *Kriss v. Bayrock* matter.

Dated:     New York, New York
           June 7, 2010

                              Respectfully submitted,

                              WILSON, ELSER, MOSKOWITZ,
                              EDELMAN & DICKER LLP

                              By
                                 Thomas W. Hyland
                              Attorneys for non-party respondent Fred M.
                              Oberlander
                              150 East 42nd Street
                              New York, New York 10017
                              (212) 490-3000

4020238.2

Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------  x
UNITED STATES OF AMERICA,
                  Plaintiff,

    - against -

FELIX SATER,
               Defendant.
------------------------------------------------------------  x
FRED M. OBERLANDER, ESQ.,
            Non-Party Respondent.
------------------------------------------------------------  x

98 CR 1101 (ILG)

FILED UNDER SEAL

**Declaration of Fred M. Oberlander**

I, Frederick M. Oberlander, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am an attorney duly admitted to practice before the courts of the State of New York, as well as the United States District Court for the Southern District of New York. I submit this declaration in opposition to the order to show cause that has been filed seeking the return of certain "sealed" and "confidential" documents.

2.     In order to maintain the status quo, I have not shown the documents to anyone, pending the hearing and determination of this motion.

3.     I obtained the documents at issue from a client. I did not solicit them from the client.

4.     I did not obtain them from the court.

4020238.2

5.      I verily believe that, if I were permitted to contact the client, he would agree to submit an affidavit that would describe how he obtained the documents at issue, and that he, in turn, gave them to me, unsolicited.

Dated:      New York, New York
            June 4, 2010

_____
Frederick M. Oberlander

4020238.2