𝒟

Beys, Stein & Mobargha LLP

Nader Mobargha

**TO BE FILED UNDER SEAL**

March 21, 2011

**BY HAND DELIVERY AND FACIMILE (718) 613-2236**
The Honorable I. Leo Glasser
United States District Judge
Easter District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RECEIVED
3/22/11
Chambers of
I. Leo Glasser
U.S.D.J.

     **Re:**   **United States of America v. Felix Sater**
            **Criminal Docket No. 98 CR 1101 (ILG)**

Dear Judge Glasser:

     We represent Defendant Felix Sater in the above-captioned matter and write in response to Mr. Lerner's letter, dated February 3, 2011, demanding that the Court "immediately docket all events that have occurred in this case from its inception," and to the Government's letter in response, dated March 17, 2011 (the "March 17[th] Letter").

**PRELIMINARY STATEMENT**

     In brief, we believe that the District Court no longer has jurisdiction to hear issues concerning the unsealing of the docket in the above-referenced criminal proceeding because the matter is currently pending before the Court of Appeals. Last month, Richard Roe ("Roe") filed a Petition for a Writ of Mandamus with the Second Circuit requesting that it order the District Court to unseal the docket. In denying Roe's petition on February 14, 2011, the Second Circuit ordered that "[t]he docket in this proceeding (Docket No. 11-479) and all documents referenced therein shall remain SEALED until further order of this court." *See* Exhibit ("Ex.") 1, Summary Order, dated February 14, 2011 ("Summary Order"), at 3:24-25 (emphasis added).

     Even if this Court retains jurisdiction over this matter, the interests of Felix Sater in keeping the docket sealed far outweigh any interest of Richard Roe, as a private litigant in a civil action, in unsealing it. Sater's interest in keeping the docket sealed is extremely high:  Any

The Chrysler Building
405 Lexington Avenue
7th Floor
New York, New York 10174
212-387-8200 (Main)
212-387-8229 (Fax)
nmobargha@bsmlegal.net

disclosure of his cooperation with the Government against infamous organized crime families and international terrorists would pose a substantial probability of prejudice to the safety of Sater and his family.

The Government recognizes this risk, but believes it can still unseal a portion of the docket.  Specifically, in its March 17th Letter, the Government seeks to unseal "specific docket entries and documents that do not directly reference [Sater's] cooperation."  *See* March 17th Letter, at 2.  However, unsealing any docket entries – including those that do not directly reference Sater's cooperation - would *indirectly* reveal the fact of Sater's cooperation, an unacceptable result by the Government's own standard.  Consequently, to the extent the Court retains jurisdiction over the matter, it should deny the Government's application.

## FACTUAL BACKGROUND

Felix Sater cooperated with the Government for 11 years, providing them information of national and international consequence about New York City's and the World's most dangerous criminal organizations.  The organizations are a who's who of violence and terrorism, both on a local and international level.  They include:  (i) Al Qaeda; (ii) La Cosa Nostra; (iii) the Gambino, Genovese and Bonanno organized crime families; and (iv) leaders in Afghanistan.  Sater's cooperation over this 11-year span includes, but is not limited to, the following:

- *La Cosa Nostra:*  Sater provided information crucial to the conviction of over 20 individuals, including those responsible for committing massive financial fraud, members of La Cosa Nostra ("LCN") and international cyber-criminals.

- *Gambino, Genovese and Bonanno Organized Crime Families:* ████████████ ████████████████████████████  In part based on information provided by Sater, in March 2000, a federal grand jury returned a RICO, securities fraud and money laundering indictment against 19 of the most important participants in extensive fraud schemes, including some with high-ranking positions in the Gambino, Genovese and Bonanno Organized Crime Families.

- *Arms dealers in Afghanistan:*  Sater relayed information regarding the willingness by leaders in Afghanistan to sell Stinger missiles.

- *Al Qaeda:*  Sater passed on specific information about key leaders in Al Qaeda and affiliated groups, including information that could help the Government locate those individuals.

- *Post 9/11 Al Qaeda:* Following September 11, 2001, Sater traveled back to the Middle East at the direction of the FBI and gathered additional valuable intelligence regarding Al Qaeda and affiliated groups.[1]

The Government itself recognizes that "Mr. Sater's cooperation was of an extraordinary depth and breadth, almost unseen, at least in the United States Attorney's office." *See* Ex. 2, Transcript of February 14, 2011 Oral Argument before Second Circuit ("Transcript"), at 12:12-15. As a result, during the past 13 years, the Government has gone to extraordinary lengths to keep both Sater's conviction, the fact of his cooperation, and the details of his cooperation under seal. Despite this effort, however, some of this information has leaked into the public sphere. Articles in both the *New York Times* and *Businessweek* mention Felix Sater by name, discuss his role in the RICO conspiracy, and speculate about his conviction.

In addition, we have recently learned that over 11 years ago, in a March 2, 2000 press release announcing the indictment of 19 other defendants on RICO charges, the Government inadvertently disclosed Sater's identity in a footnote and that he had pleaded guilty to RICO charges, a fact that the Government had gone to extraordinary lengths to keep under seal for 13 years.

## ARGUMENT

**I-     The District Court no longer has jurisdiction over the sealing of the docket in criminal proceedings**

As a threshold matter, we believe that the District Court does not have jurisdiction to determine whether its docket should be sealed; the matter is now before the Second Circuit. Recently, the Second Circuit ordered that "[t]he docket in this proceeding (Docket No. 11-479) and all documents referenced therein shall remain SEALED until further order of this court." *See* Ex. 1, Summary Order, at 3 (emphasis added).

At a February 14, 2011 oral argument, the Second Circuit acknowledged that there were two cases before it, Docket No. 10-2905-cr and Docket No. 11-479-cr. Docket No. 10-2905-cr involves Roe's appeal from this Court's order "permanently enjoining distribution of the Presentence Investigation Report and temporarily enjoining Roe and his clients from further disseminating other sealed documents filed in Sater's criminal proceedings before the District Court." *See* Ex. 1, The Summary Order, at 2. Docket No. 11-479 concerns Roe's "consolidated petition for a Writ of Mandamus directing the court to make public the docket of this criminal case." *Id.* (emphasis added). Roe's Petition for a Writ of Mandamus – which the Second Circuit ultimately denied - officially brought the issue of whether the docket should remain sealed before

---

[1] The substance of these facts were taken from the Government's Declaration in Support of Motion to Leave to File a Supplemental Memorandum, dated February 2, 2011.

the Second Circuit.  Consequently, the question of whether to unseal the docket in this criminal proceeding is now squarely before the Second Circuit.[2]

**II-   Even if this Court has jurisdiction to unseal the docket, it should refrain from doing so since it will substantially prejudice the safety of Felix Sater**

### A.   *The legal standard for sealing a docket*

In its March 17th Letter, the Government articulates the standard for sealing a docket: "In essence, the Second Circuit's cases concerning sealing require the Court to balance the public's qualified First Amendment and common law right to judicial documents against other compelling factors." *See* March 17th Letter, at 5.  Here, compelling factors, such as the "safety of [Sater] and his family and law enforcement's interest in procuring cooperation from other defendants," far outweigh Richard Roe's qualified right to access a few docket entries of a 13-year old, dormant case, the contents of which are already publicly accessible. *Id.*

### B.   *Sater's interest in keeping his criminal docket sealed is to protect his and his family's safety*

The Government has articulated Sater's strong interest in keeping the docket in this criminal proceeding sealed as follows:

> If [Sater's] cooperation against [organized crime families and international terrorist organizations] was to be revealed in a public and officially- sanctioned manner, there is good reason to believe that the defendant's safety would be in jeopardy."

*See* March 17th Letter, at 6.  The Government even cites to decisions that specifically recognize the danger of the very organizations against whom Sater cooperated. *See, e.g., U.S.* v. Mancuso, 2008 WL 2884397, *2 (E.D.N.Y. July 23, 2008)("[t]he Bonanno family's willingness to interfere with the judicial process, particularly by perpetrating violence against cooperating witnesses is well-documented.")(emphasis added); U.S. v. Cirillo, 2005 WL 2300217, *2 (2nd Cir. Sept. 21, 2005)("the District Court's factual finding that the Genovese crime family routinely employs violence to further its interests…was amply supported.")(emphasis added).

To ensure Felix Sater's safety from these organizations and from other infamous international terrorist organizations, the Government has strongly urged that "documents essential to preserve the defendant's safety and the government's ability to secure cooperation from other individuals" be kept under seal. *See* March 17th Letter, at 6.

---

[2] The Second Circuit also assigned Judge Cogan "with the limited mandate of implementing and overseeing compliance with [its] orders and the orders previously entered into by Judge Glasser." *See* Ex. 1, Summary Order, at 5:1-4.

However, in its March 17th Letter, the Government mistakenly argues that it can differentiate between docket entries that disclose the fact or details of Sater's cooperation from entries that only disclose Sater's conviction and sentence. This is elevating form over substance. Indeed, unsealing any of the docket entries – especially those proposed by the Government – would be a dead giveaway that Sater cooperated with the U.S. Government – a fact, which if disclosed, the Government has repeatedly stated would place Sater's life in danger.

First, the length of time between Sater's conviction on December 10, 1998 and his sentencing on October 23, 2009, nearly 11 years, would reveal his cooperation. Even a lay person with the most basic knowledge of the federal criminal justice system would know that, based on this time lag, Sater cooperated with the Government. An 11-year time span between conviction and sentencing is extraordinary even for cooperating witnesses. It would be impossible, however, for so much to elapse in the case of a criminal defendant convicted in the ordinary course.

Second, Sater's waiver of indictment and plea to a criminal information would also reveal his cooperation. Under no circumstances would a defendant convicted of racketeering or securities fraud waive indictment and be prosecuted by information unless he were cooperating with the Government. Again, any person with basic knowledge of our justice system would know, without question, that a defendant pleading guilty to an information is a cooperating witness.

Third, the sentence itself would reveal Sater's cooperation. Given that Sater pleaded guilty to racketeering, Sater's sentence of a $25,000 fine could only mean he cooperated with the Government. Only a cooperating witness who provided substantial and extraordinary assistance to the Government could receive such a light sentence given the crimes charged.

Finally, these entries, when combined with the public news accounts and rumors of Sater's cooperation, would all but confirm that Sater cooperated with the Government and that his cooperation was, in fact, against New York City's and the world's most dangerous criminals.

This was the Government's initial position as well. At oral argument before the Second Circuit on February 14, 2011, the Government stated "that an unsealing of the docket at this time and a public filing and release of the documents…would…pose a substantial probability of prejudice to Sater's safety in this case." See Ex. 2, Transcript, at 11:11 – 11:16. Accordingly, the Government advocated "for a sealing that does not release the real name of [Mr. Sater] and does not reveal facts which would alert other individuals to his cooperation or conviction." Id., at 19:5-7 (emphasis added).

Since the Government made these statements, there have been no new developments concerning the safety of Sater or the danger posed to him. The only development is the

Page 6 of 8

Government's recent discovery of an inadvertent disclosure it made 11 years ago concerning Sater's conviction. Despite 13 years of attempting to keep both Sater's cooperation and his conviction under seal, in a press release, dated March 2, 2000, the Government inadvertently disclosed the identity of Sater in a footnote and the fact that he had been convicted of RICO crimes. As a result, the Government now believes it has no choice but to unseal multiple docket entries of Sater's criminal proceeding, including those which detail his pleading to an information and his sentencing. What the Government fails to realize is that unsealing docket entries that only concern Sater's conviction and sentencing also indirectly reveal his cooperation with the Government.

### C.   *Richard Roe has no interest in unsealing the docket since the information he seeks is already publicly available*

In contrast to Sater's compelling interest in maintaining a sealed docket, Richard Roe's interest in unsealing the docket is minimal. Roe does not represent a news organization. He is not trying to vindicate a lofty right with ramifications for the public at large. He is simply a private litigant seeking to expose sensitive information about Sater in order to extract an unmerited settlement in a separate lawsuit. *See* Ex. 2, Transcript, at 29:2-6 (Roe's attorney admits that Roe "came in contact with the facts of this case" in the context of "preparing a RICO complaint."). This is not a paramount interest of the First Amendment.

Indeed, in its oral argument before the Second Circuit, the Government noted that the Supreme Court distinguishes between the First Amendment right of the press and that of an attorney in a civil lawsuit:

> The Supreme Court in Gentile v. State [Bar] of Nevada has laid out a clear distinction between attorney speech, especially that in the context of ongoing litigation, meaning not an attorney as a private citizen but as an attorney acting as a hired legal representative and that of the press. It is regulated by an entirely different standard, and the Supreme Court has said that an attorney's First Amendment rights do not give him a blanket opportunity to commit what are clearly unethical acts."[3]

*Id.,* at 19:16-24.

This distinction was not lost on the Second Circuit. Judge Cabranes specifically noted "[w]e are not dealing here with prior restraint of the press or the media." *Id.*, at 30:21-23. Judge Pooler added: "[N]ewspapers have a special charge in publishing information for citizens. Mr. Roe does not have any charge in making this information available to citizens." *Id.,* at 34:6-8. Far from having or wanting to discharge such a duty, Mr. Roe's only motive for wanting to disclose sensitive information about Sater is to extort defendants in a separate action in the

---

[3] The cite for Gentile v. State Bar of Nevada, is 501 U.S. 1030, 111 S.Ct. 2720 (1990).

Page 7 of 8

Southern District of New York (*Kriss et al.* v. *Bayrock Group LLC et al*, 10 Civ. 3959 )(the "SDNY Action"), including law firms such as Nixon Peabody LLP, Akerman Senterfitt LLP, and their insurance carriers, into paying money to avoid the "embarrassment" of being associated with a convicted RICO felon like Sater.[4]

Furthermore, even if the function of Mr. Roe's First Amendment right of access was identical to that of a news organization – which it is not – Mr. Roe *already has access to the very information he is seeking*. Indeed, he has ready access to the public news articles and the Government's inadvertent disclosure in its press release, all of which provide information about Sater and his criminal proceeding. Normally, the public availability of information in a sealed docket is grounds for unsealing the docket. However, this case is different. Here, unsealing the docket would expose information *in addition* to that which is publicly available and information which the Government deems unsafe. It would expose Sater's cooperation with the Government, a revelation the Government itself admits would pose substantial and unnecessary prejudice to Sater's safety.

Finally, in assessing Roe's interest, we also ask the Court to consider the context in which all this litigation arose. As this Court is aware, Roe obtained stolen documents, which he knew to be privileged, sealed, and confidential, unlawfully filed those documents publicly in the SDNY action, and blatantly disregard this Court's orders to return some of the documents.[5] So brazen has been Roe's conduct that the Second Circuit has seen fit to appoint a separate judge for the sole purpose of policing the enforcement of its orders and the orders of this Court.

**III-    If the Court decides to unseal the docket, it should consider alternatives to disclosing Sater's identity and revealing his conviction or sentence**

Nevertheless, if the Court finds that the public should have access to some of the docket entries the Government proposes in its March 17th Letter, then we would like the opportunity to propose some alternative solutions. One solution could be to unseal only docket entries which do not, even indirectly, reveal Sater's cooperation. A second solution would be to unseal the entire docket without revealing Sater's identity, with all entries only referring to "John Doe." This would address Roe's concern "as a citizen" that the judiciary is not maintaining a "secret docket" and operating under a shroud of secrecy, while simultaneously maintaining the safety of Sater and his family.

---

[4] Mr. Roe has a specifically told several defendants' counsel in that case that Sater should just "get out of the way," so he can go after the law firms and their insurance carriers because "that's where the money is."
[5] Roe has also disregarded and violated numerous orders of the Second Circuit and the Southern District. For the sake of brevity, we will not catalogue all these violations for the Court.

Page 8 of 8

At the very least, we would like to have a hearing to explore these options before unsealing a docket that the Government has found necessary to keep sealed for 13 years.

Respectfully Submitted,

By: _Nader Mobargha_

Nader Mobargha
*Counsel for Felix Sater*

Cc:     Judge Brian M. Cogan

Counsel for Richard Roe, Esq.
Richard Lerner, Esq.

The United States Attorney's Office
Todd Kaminsky
Elizabeth J. Kramer

Case 1:98-cr-01101-ICG   Document 19 *SEALED*   Filed 03/23/11   Page 10 of 58 PageID #: 2091

10-2905-cr, 11-479-cr
USA v. Doe

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect.  Citation to summary orders filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1.  When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the _____14th_____ day of February, two thousand and eleven.

PRESENT:

JOSÉ A. CABRANES,
ROSEMARY S. POOLER,
DENNY CHIN,
    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

RICHARD ROE,

    *Appellant,*

      v.                                        Nos. 10-2905-cr, 11-479-cr

UNITED STATES OF AMERICA,

    *Appellee,*

JOHN DOE,

    *Defendant-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR RICHARD ROE:    RICHARD E. LERNER, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY..

FOR APPELLEE:    TODD KAMINSKY, Assistant United States Attorney, United States Attorney's Office for the Eastern District of New York, Brooklyn, NY.

1

UNITED STATES COURT OF APPEALS
FILED
FEB 1 4 2011
Catherine O'Hagan Wolfe, Clerk
SECOND CIRCUIT

2:45 pm

MANDATE ISSUED ON 02/14/2011

| | |
|---|---|
| FOR DEFENDANT-APPELLEE: | KELLY ANNE MOORE, Morgan, Lewis & Bockius LLP, New York, NY. |

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED,** following a hearing on the record on February 14, 2011, that an injunction *pendente lite* shall enter to prevent the dissemination by an party, their officers, servants, employees and attorneys, and all who are in active concert or participation with them, of materials placed under seal by orders of this Court or of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*).

Richard Roe ("Roe") is an attorney at law whose identity is known to all participants in this litigation and who has been given the name "Richard Roe" as a legal placeholder because the disclosure of his true identity in this litigation context may, for the time being, lead to the improper disclosure of the materials at issue here.

Roe appeals from orders of the District Court permanently enjoining distribution of a Presentence Investigation Report ("PSR") prepared for sentencing purposes in a criminal proceeding before Judge Glasser and temporarily enjoining Roe and his clients from further disseminating other sealed documents filed in Doe's criminal proceedings before the District Court (Docket No. 10-2905-cr).

We also have before us a separately docketed but consolidated petition for a writ of mandamus directing the District Court to make public the docket of the criminal case in question (Docket No. 11-479-cr). In turn, the United States (the "government") seeks a temporary injunction, pending the disposition of this appeal, to restrain Roe and his counsel and clients, and all persons acting in concert with them, from the threatened dissemination of the sealed materials at issue here by (1) filing and pursuing civil actions in other federal or state courts in which the sealed materials are annexed to pleadings or otherwise referred to or made public, and (2) by conveying copies of these materials or the contents thereof to third-parties, including the media.

We assume the parties' familiarity with the remaining facts and procedural history of the case.

2

(i)

We turn first to Roe's petition for a writ of mandamus. The All Writs Act empowers us to "issue all writs necessary or appropriate in aid of [our] respective jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). One such writ is the writ of mandamus, an "extraordinary remedy" that has been used "both at common law and in the federal courts . . . to confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction." *Cheney v. U.S. Dist. Crt. for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (brackets and internal quotation marks omitted). We issue a writ of mandamus only in "exceptional circumstances amounting to a judicial 'usurpation of power' or a 'clear abuse of discretion.'" *Id.* (citations and some internal quotation marks omitted); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir.2008) ("A district court has abused its discretion if it [has] based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or [has] rendered a decision that cannot be located within the range of permissible decisions." (brackets, citations, and internal quotation marks omitted)).

Roe falls well short of his heavy burden to secure a writ of mandamus directed to the District Court. Here, the District Court reviewed the sealed documents and the voluminous submissions by the parties, conducted four days of hearings inquiring into how Roe had obtained the documents and how he intended to use them, and explained in detail and on the record its well-reasoned decision to issue a permanent injunction against further distribution of the PSR and a temporary injunction against further distribution of the other sealed documents. Under the circumstances, we see no basis upon which to conclude that the District Court in any way usurped its power or clearly abused its discretion. *See Cheney*, 542 U.S. at 380. Accordingly, the petition for a writ of mandamus (Docket No. 11-479-cr) is DENIED.

Our decision to deny the petition for a writ of mandamus may be further elaborated in due course in a published opinion.

The docket in this proceedings (Docket No. 11-479-cr) and all documents referenced therein shall remain SEALED until further order of this Court.

3

(ii)

Pending a full review of the merits of Roe's appeal by a panel of this Court, the government, by a sealed motion of January 26, 2010 and accompanying affidavit, requests a temporary stay of the unsealing of Docket No. 10-2905-cr and of the materials placed under seal by Judge Glasser pending the appeal of this matter. In light of the serious, indeed grave, concerns expressed by the United States regarding the possible consequences of unsealing these documents, and the absence of any sufficiently persuasive countervailing considerations expressed by Roe, the government's motion is hereby GRANTED.

Accordingly, pursuant to this order and to our orders of January 28, 2011 (granting government's motion for an emergency stay of unsealing the docket in No. 10-2905); February 9, 2011 (granting government's motion for an emergency stay of unsealing the docket in No. 11-479 and ordering Roe not to publicly file any additional documents or cases that referred to matters subject to sealing orders in Nos. 10-2905-cr and 11-479-cr); February 10, 2011 (re-emphasizing, *inter alia*, that Roe was not to reveal or distribute sealed documents, nor contents thereof, to any third-parties, including members of the public or the media); and February 11, 2011 (re-emphasizing, *inter alia*, that all previous orders of this Court and of the United States District Court for the Eastern District of New York with respect to the documents at issue remained in full force and effect until further order of this Court), we hereby ORDER that ALL PARTIES, THEIR OFFICERS, AGENTS, SERVANTS, EMPLOYEES, AND ATTORNEYS, AND ALL OTHER PERSONS WHO ARE IN ACTIVE CONCERT OR PARTICIPATION WITH THEM, *see* Fed. R. Civ. P. 65(d)(2), are TEMPORARILY—and WITHOUT PREJUDICE to any claims or arguments that may be asserted by the parties on the merits of these appeals or on the orders in effect during the consideration of the appeals—ENJOINED from publicly distributing or revealing in any way, to any person, or in any court, proceeding or forum, except to those persons directly involved in the parties' own legal representation, any documents or contents thereof subject to sealing orders in Docket No. 10-2905-cr or in any related proceedings before the District Courts for the Eastern District of New York and Southern District of New York.

For the purpose of enforcing this Court's orders and those of the District Court for the Eastern District of New York during the panel's consideration and adjudication of the pending appeal, we

4

1    REMAND the cause (Docket No. 10-2905-cr) to the District Court for the Eastern District of New

2    York with instructions to the Chief Judge of that Court to assign a United States District Judge from

3    that Court with the limited mandate of implementing and overseeing compliance with our orders and

4    the orders previously entered by Judge Glasser. Of course, Judge Glasser, an experienced and able jurist

5    who has shown admirable patience and forbearance in the face of extraordinary provocations, shall

6    retain jurisdiction over the underlying (and long-lived) criminal proceeding involving John Doe.

7        Furthermore, in all other respects and pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir.

8    1994), this panel shall retain jurisdiction over (1) the pending appeal, both for the disposition of the

9    appeal on the merits as well as with respect to any further motions practice; (2) any other appeals from

10   the District Court's order granting the permanent and temporary injunctions at issue; and (3) any

11   appeals arising from any further proceedings in the District Court, including any further petitions for

12   extraordinary writs, including the writ of mandamus.

13

14                                                    (iii)

15       Without in any way limiting the effect of this summary order and the Court's previous orders,

16   we further ORDER:

17       (1) This appeal (Docket No. 10-2905-cr) will be EXPEDITED.

18       (2) The briefing schedule will be as follows:

19               a. Roe's opening brief shall be filed no later than Monday, February 28, 2011.

20               b. The government's opening brief shall be filed no later than Monday, March

21       14, 2011.

22               c. Roe's reply brief shall be filed no later than Monday, March 21, 2011.

23               d. The government's sur-reply brief shall be filed no later than Thursday, March

24       24, 2011.

25

## CONCLUSION

To summarize:

(1) the petition for a writ of mandamus in Docket No. 11-479 is DENIED, and the docket of that case shall remain SEALED pending further order of our Court;

(2) the government's motion for a temporary stay of unsealing of the docket in No. 10-2905-cr pending full review of the merits of Roe's appeal is GRANTED;

(3) the parties and all who are in active concert or participation with them are TEMPORARILY ENJOINED, pursuant to the terms of the order stated above;

(4) we REMAND the cause to the United States District Court for the Eastern District of New York for a limited purpose and under the terms noted above.

The limited mandate described above shall issue forthwith.


FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court


A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

1

<pre>
 1                    UNITED STATES COURT OF APPEALS
 2                      FOR THE SECOND CIRCUIT
 3     ------------------------------x
 4    UNITED STATES OF AMERICA,
 5                    Petitioner,        New York, N.Y.
 6              v.                       10-2095-cr
 7
 8    JOHN DOE.
 9                    Respondent.
10     ------------------------------x
11                                  February 14, 2011
                                    1:30 p.m.
12
      Before:
13
14              HON. JOSE A. CABRANES, Presiding
                HON. ROSEMARY S. POOLER
15              HON. DENNY CHIN
16
                                       Circuit Judges
17
                          APPEARANCES
18
      TODD KAMINSKY
19    PETER A. NORLING
      MARSHALL MILLER
20    ELIZABETH KRAMER
           Attorneys  for Petitioner
21
      RICHARD E. LERNER
22         Attorney for Respondent
23    KELLY ANN MOORE
           Attorney for John Doe
24
25
</pre>

1

1

2                    UNITED STATES COURT OF APPEALS
                        FOR THE SECOND CIRCUIT

3      ------------------------------x

4    UNITED STATES OF AMERICA,

5                        Petitioner,        New York, N.Y.

6                v.                         10-2095-cr

7

8    JOHN DOE.

9                    Respondent.

10     ------------------------------x

11                                     February 14, 2011
                                       1:30 p.m.
12
     Before:
13

14              HON. JOSE A. CABRANES, Presiding
                HON. ROSEMARY S. POOLER
15              HON. DENNY CHIN

16
                                          Circuit Judges
17
                            APPEARANCES
18
     TODD KAMINSKY
19   PETER A. NORLING
     MARSHALL MILLER
20   ELIZABETH KRAMER
          Attorneys  for Petitioner
21
     RICHARD E. LERNER
22        Attorney for Respondent

23   KELLY ANN MOORE
          Attorney for John Doe
24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

X12endoen                    SEALED                                    2

1

2                         APPEARANCES (Continued)

3    ALSO PRESENT:

4    RICHARD ROE
     JUDY SELMECI
5    DAVID SNYDER
     NADER MOBARGHA
6    MICHAEL BEYS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

X12endoen                    SEALED

1      JUDGE CABRANES:  Good afternoon.  This is United

2  States of America v. John Doe.  It has many captions.  I will

3  call the role of roll of counsel and the parties in two appeals

4  that have been consolidated for purposes of argument and that

5  at least for now bear the following captions:  Richard Roe v.

6  USA and John Doe, Docket No. 10-2905, and Richard Roe,

7  Petitioner v. USA, Respondent and John Doe 1, John Doe 2,

8  Defendants, Docket No. 11-479.  I ask each of the persons whose

9  names I call out to simply answer my confirming his or her

10  presence.

11      This is not the time for anything more than the word

12  "present" and an indication of whether you are admitted to the

13  bar of this court.  You will each have time to express your

14  views after this roll call and after I make a brief

15  introductory statement.

16      Richard Roe, also known as Frederick Oberlander.

17      MR. ROE:  Present, and I am not admitted in this

18  court.

19      JUDGE CABRANES:  We usually stand.

20      MR. ROE:  I'm sorry.

21      JUDGE CABRANES:  Are you admitted to any federal

22  court?

23      MR. ROE:  Southern District.

24      JUDGE CABRANES:  Counsel for Richard Roe is Richard

25  Lerner.

X12endoen                SEALED

1           MR. LERNER:  Yes.  I am present and admitted to

2   practice before this court.

3           JUDGE CABRANES:  Thomas W. Hyland.

4           MR. LERNER:  He was unable to make it here today.

5           JUDGE CABRANES:  Unable to make it today.  Judy

6   Selmeci.

7           MS. SELMECI:  I am admitted to practice in this Court.

8           JUDGE CABRANES:  You are admitted to the bar of this

9   court.  Thank you.

10          Counsel for the United States, Todd Kaminsky.

11          MR. KAMINSKY:  Present, your Honor, and admitted.

12          JUDGE CABRANES:  Elizabeth Kramer.

13          MS. KRAMER:  Present, your Honor, and admitted.

14          JUDGE CABRANES:  Marshall Miller.

15          MR. MILLER:  Present your Honor add admitted.

16          JUDGE CABRANES:  Peter Norling.

17          MR. NORLING:  Present and admitted.

18          JUDGE CABRANES:  Counsel for John Doe, Kelly Anne

19  Moore of Morgan Lewis & Bockius.

20          MS. MOORE:  Present and admitted your Honor.

21          THE COURT:  David Snyder of Morgan Lewis & Bockius?

22          MR. SNYDER:  Present, your Honor, and not admitted.

23          JUDGE CABRANES:  Are you admitted to any federal bar?

24          MR. SNYDER:  No, your Honor.

25          JUDGE CABRANES:  You are admitted to what bar?

X12endoen                    SEALED

1                 MR. SNYDER:  State of New York.

2                 JUDGE CABRANES:  Nader Mobargha of Beys Stein &

3     Mobargha.

4                 MR. MOBARGHA:  Present and not admitted to this Court.

5                 JUDGE CABRANES:  To what court are you admitted?

6                 MR. MOBARGHA:  The Southern and Eastern Districts of

7     New York.

8                 JUDGE CABRANES:  And the State of New York?

9                 MR. MOBARGHA:  Yes.

10                JUDGE CABRANES:  Is there anyone else whose name I

11    have not called?

12                MR. BEYS:  Yes, your Honor.  Michael Beys of Beys,

13    Stein & Mobargha for defendant-appellee Doe, present and

14    admitted.

15                JUDGE CABRANES:  Thank you.

16                We are here for oral argument in two related matters.

17    As I indicated, they bear captions that at least temporarily

18    employ the coined names of "John Doe" and "Richard Roe" -- the

19    cases that, as I noted, are docketed in the Court of Appeals as

20    No. 10-2905-cr. and No. 11-479-cr.  Both arrived from

21    long-lived proceedings in the United States District Court for

22    the Eastern District of New York before Judge I. Leo Glasser.

23    The record will reflect that, pursuant to an order of the

24    Court, we are here in a closed courtroom.  The proceedings here

25    are being recorded by an official court reporter as well as by

X12endoen                    SEALED

1   electronic means.  The record in these cases shall remain under
2   seal until further order of the Court.
3        These matters came before this Court on an expedited
4   and emergency basis.  In documents placed before us, the
5   government and the district court asserted serious concerns
6   about the public dissemination of certain documents, in and out
7   of state and federal court proceedings.  These disclosures
8   allegedly are in violation of court orders and allegedly could
9   risk life-threatening injury to identifiable persons, including
10  the person identified in our cases as John Doe.
11       As a result of the way in which these emergency
12  matters were presented to the Court, and in order to try to
13  maintain the status quo in volatile and confused circumstances
14  until this expedited hearing could be held, this Court has
15  entered a series of temporary sealing orders and/or injunctive
16  orders.
17       Because these orders were entered in response to
18  fast-breaking developments, the captions and references to
19  petitioner and respondent are sometimes the victim of
20  typographical errors.  The captions will be adjusted in the
21  course of this hearing or immediately thereafter.  Suffice it
22  to say for now that, regardless of any obvious typographical
23  errors in the orders, we are all well aware that the sealing
24  orders and temporary injunctions of the Court of Appeals have
25  all been aimed at Richard Roe, an attorney at law, and at his

X12endoen                    SEALED

1   attorneys.   It is not John Doe or the government who have

2   sought to disseminate any of the material at issue here.   The

3   only parties who have indicated on the record an intention to

4   disseminate the documents at issue here are Richard Roe and his

5   attorneys.   That much the court knows and that much all of you

6   here know.

7          Accordingly, to avoid caption issues that may cause

8   confusion on the record, let us speak today of Richard Roe and

9   John Doe, not of petitioner or respondent, nor of appellant and

10  appellees.   It is clear from the record, of course, that it is

11  Richard Roe and his lawyers who vigorously and openly wish to

12  disseminate these materials, and thus it is the government and

13  John Doe who wish to prevent Roe and his lawyers from doing so.

14         The first Court of Appeals order of consequence was an

15  order of Judge Livingston sealing the record of this case and

16  referring the emergency motions of the government to a

17  regularly-convened motions panel.

18         We are that panel.

19         After this matter was referred to this motions panel,

20  the Court entered a number of orders that re-affirmed the

21  sealing order of Judge Livingston and otherwise sought to

22  maintain the status quo until this hearing could be held.

23         We have taken precautions to assure that all counsel

24  of record and the party known as Richard Roe receive timely

25  notice of these orders promptly upon entry of the order by

8

X12endoen                          SEALED

1   e-mail and/or fax and/or phone calls from the clerk's office.

2   Unless informed otherwise, we will assume that notice of these

3   several orders was effected.

4            You may wish to take notes of the Court orders to

5   which I refer.  In order to assist you in this regard, the

6   Court asked the Deputy Clerk of Court to provide each of you

7   with copies of these orders before we convened here.  I am

8   informed that sets of these copies were provided to all counsel

9   of record and that each of you has copies of these orders

10  before you at this time.

11           They include:

12           (1) An order of February 8, 2011 granting the

13  government's motion to temporarily seal the docket here and

14  seeking to prevent any public dissemination of matters subject

15  to existing sealing orders;

16           (2) An order of February 9, 2011 denying a motion to,

17  among other things, vacate the court's earlier so-called sua

18  sponte order closing the courtroom for today's hearing;

19           (3) An order of February 10, 2011 that, among other

20  things, consolidated these two docketed appeals until further

21  order of the Court.  It also responded to reports or apparent

22  threats by Richard Roe and/or his counsel to disseminate sealed

23  materials at issue here in other court proceedings or public

24  forums.  The Court responded to these reports or apparent

25  threats in the order of February 10 by, among other things,

1   temporarily enjoining "all parties . . . from disseminating or

2   distributing in any manner and in any court, proceeding, or

3   forum any documents filed in th[ese appeals] or in related

4   proceedings in the Eastern and Southern Districts of New York

5   or the contents thereof, to any member of the public or media

6   except to those persons directly involved in the parties' legal

7   representation, who shall be bound by this order of

8   confidentiality and sealing."

9          The February 10, 2011 order also affirmatively

10  enjoined Richard Roe, who is a member of the bar, to submit in

11  writing by 5 p.m. on Friday, February 11, "a list of any public

12  or media persons . . . to whom he or his counsel have revealed

13  or distributed in any manner the filings in these proceedings

14  or the contents thereof."

15         This February 10 order also affirmatively enjoined

16  Richard Roe to identify with specificity the documents or

17  contents that were revealed or distributed to each such person.

18  This, too, was to have been done by Friday, February 11 at 5:00

19  p.m.

20         I understand that we have a letter that was indeed

21  filed on Friday but that has come to our attention only this

22  morning and which apparently was not conveyed to opposing

23  counsel.  We will deal with that matter in a moment.

24         I think we all know what "under seal" means -- but

25  perhaps not, so I wish to make it clear that for the time being

X12endoen                    SEALED

1    and until this Court is able to sort out the claims of a breach

2    of court sealing orders, these proceedings are confidential and

3    the record is subject to a sealing order of this Court, the

4    violation of which will subject any violator of our sealing

5    orders to punishment for civil and/or criminal contempt of

6    court.

7          It should likewise be clear that the parties hereto

8    are always free to seek review of our orders from the Supreme

9    Court of the United States.  That said, while our sealing

10   orders remain in effect, as they may be supplemented by

11   additional orders today or in the near future, any and all

12   papers filed in the Supreme Court referring to matters or

13   documents subject to extant sealing orders shall be filed in

14   the Supreme Court under seal.

15         I have also been informed today that there is a copy

16   of a purported petition for certiorari that was filed or was to

17   be filed in the Supreme Court.  Apparently, it was not filed

18   under seal.  We will expect that counsel of record will take

19   all the necessary precautions to seek to place that material

20   under seal until further order of this Court or of the Supreme

21   Court.

22         These preliminary matters having been completed, I

23   will ask the representative of the U.S. Attorney's Office for

24   the Eastern District of New York to come forward and provide a

25   general status report on the proceedings to date and to provide

X12endoen                    SEALED

1    a brief statement of what relief, if any, the government seeks

2    today.

3           We will then hear from counsel for Richard Roe, from

4    whom we likewise will seek a statement of the relief he seeks

5    from this Court.

6           MR. KAMINSKY:  Good afternoon.  May it please the

7    Court, I'm Todd Kaminsky.  And I represent the appellee, the

8    United States.  And the government is here today to argue for a

9    continued sealing of the appellate docket and now what is the

10   consolidated dockets before this court.

11          The government, as laid out in its brief, believes

12   that an unsealing of the docket at this time and a public

13   filing and release of the documents that opposing counsel would

14   like to, and Roe and his attorney would like to release at this

15   time pose a substantial probability of prejudice to Doe's

16   safety in this case.

17          JUDGE CABRANES:  Could you tell us whether at the

18   moment all the documents in Doe's criminal proceeding and in

19   the Southern District of New York civil matter, are they all

20   now under seal as far as you know?

21          MR. KAMINSKY:  The Southern District, your Honor, they

22   are not all under seal.  Although I am not a party to that

23   civil proceeding, I've gone on to the electronic PACER system

24   and several documents can be accessed.  The main document at

25   issue in that case, the complaint filed by Mr. Roe that

12

X12endoen                    SEALED

1   contains all of the damaging information about Mr. Doe, that

2   cannot be accessed publicly at this time.

3          The Eastern District docket, currently being presided

4   over by the Honorable Judge Glasser, is completely under seal.

5   There are no accessible documents at this time.

6          JUDGE CABRANES:   Can you describe in general terms why

7   these documents are so sensitive, particularly since some of

8   them seem to be somewhat antique, and there have been in the

9   past some news accounts of the activities or purported

10  activities of John Doe?

11         MR. KAMINSKY:   Yes, your Honor.

12         Mr. Doe's cooperation was of an extraordinary depth

13  and breadth, almost unseen, at least in this United States

14  Attorney's Office.

15         He cooperated, unlike some cooperators who cooperate

16  within one type of organized crime family or over one type of

17  crime, Mr. Doe's cooperation runs a gamut that is seldom seen.

18  It involves violent organizations such as Al Qaeda, it involves

19  foreign governments, it involves Russian organized crime.  And,

20  most particularly, it involves various families of La Cosa

21  Nostra.  By that specifically I mean an individual on the

22  ruling board of the Genovese crime family, a captain in the

23  Bonanno crime family, a soldier in the Gambino crime family,

24  the list goes on and on.

25         The reason why I bring that up, your Honor, is that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

X12endoen                    SEALED

1   all of the documents that are currently within the 1998 docket

2   in front of Judge Glasser mention Mr. Doe's name or refer to

3   his cooperation.

4            Now, at the time of the sealing in 1998 and through

5   the beginning of 2008, Mr. Doe worked in a proactive capacity

6   actively aiding grand jury investigations that involved

7   surreptitious recordings of individuals as well as other

8   undercover actions.

9            JUDGE POOLER:  Counsel, are you satisfied that he's

10  told the truth in all cases?

11           MR. KAMINSKY:  Your Honor, from the record that I have

12  seen, and it was my job for his sentencing to review all of his

13  statements to the FBI, I was not the individual that worked

14  with him, but I have no information that he has been untruthful

15  for any purpose or to any extent.

16           JUDGE POOLER:  You are relying on his information in

17  other cases?

18           MR. KAMINSKY:  Yes.

19           There are no current prosecutions that involve the

20  necessary testimony or information from Doe at this time.  But

21  there got to be a situation where ten years of constant

22  undercover work and arrests and indictments as well as

23  convictions, some very extensive, made as a result of his

24  actions got to a point where it became too dangerous to allow a

25  confirmation of his cooperation to be known.

X12endoen                    SEALED

1        There have been public accounts.   They have been

2    extensive in terms of their allegations, but they have been

3    lacking in terms of their corroboration and the government seal

4    of approval, if you will.   The government feels that is an

5    important difference.

6        JUDGE CABRANES:   At this particular proceeding I take

7    it that the government is seeking a temporary injunction, that

8    is, for the time being, during the pendency of the appeal,

9    which presumably would sort out all of these issues.

10       MR. KAMINSKY:   That's correct.   The government

11   certainly envisions a time when part of this docket will be

12   unsealed, and I note to the Court that the actual filing

13   occurred in May, meaning the Southern District complaint that

14   started this whole incident.   But only on February 3 and 4 did

15   Mr. Roe or counsel for Mr. Roe finally make a motion, it was

16   actually a demand below to unseal the docket.   And I do not

17   know what procedures the district court intends to employ.   As

18   U.S. v. Doe from 1995 states, there are numerous ways for a

19   district court to go about determining --

20       JUDGE CABRANES:   How many cases are there, as far as

21   you know, in the Southern District of New York that are

22   arguably related to these matters?

23       MR. KAMINSKY:   Only one, your Honor.

24       JUDGE CABRANES:   Only one?

25       MR. KAMINSKY:   Yes.

X12endoen                    SEALED

1           JUDGE CABRANES:   This is the one before Judge

2    Buchwald?

3           MR. KAMINSKY:   Correct.

4           JUDGE CHIN:   Judge Buchwald never sealed that case,

5    right?  She just sealed the complaint as opposed to the entire

6    case?

7           MR. KAMINSKY:   That's correct.   Your Honor, I stand

8    corrected.   I have not been involved in the civil matters.   I

9    turned to Mr. Doe's counsel.   I have been informed the answer

10   is three, three related matters.

11          JUDGE POOLER:   Counsel, I read an article in the New

12   York Times that seems to have vital information about John Doe.

13   How can you keep it secret when it's been in the New York

14   Times?

15          MR. KAMINSKY:   Your Honor, there are a number of

16   things, a number of responses to that.

17          JUDGE POOLER:   That was submitted to me I didn't go

18   searching for it.   It was submitted with one filing.   I guess

19   must be from Richard Roe.

20          MR. KAMINSKY:   The government alerted the Court to

21   that.

22          JUDGE POOLER:   OK.

23          MR. KAMINSKY:   In that filing, your Honor, there were

24   three individuals who pleaded guilty together as part of the

25   underlying crime who became cooperators together and then who

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

X12endoen                    SEALED

1    worked for the government.  One of those cooperators became

2    disgruntled, spoke to the New York Times and said, I was there

3    I saw it happen.  But the Times itself couldn't find any

4    confirmation of that.

5         It may be that during a future determination of how

6    much could be unsealed that article will play a role.  But the

7    government feels that opposing counsel's actions in this case

8    of unilaterally deciding to out the cooperator within the

9    context of a current litigation is just not an acceptable way

10   of doing that.

11        However, your Honor, the government also feels that it

12   is a world of difference between the Times speculating about

13   something and it being enough of a government stamp of approval

14   to warrant retaliatory action against somebody.  The government

15   feels at this time that the threats are still extensive enough

16   that even with that article it would be extremely dangerous to

17   have Mr. Doe's cooperation revealed.

18        JUDGE CABRANES:  To the extent that we may be

19   restraining dissemination of these materials to the press or to

20   other media, I have a number of questions for you.  These

21   questions will be a little specific.  They might seem a bit

22   redundant, but I want to make sure that we have everything set

23   forth very clearly on this record.

24        And now I'm turning to the famous question of prior

25   restraint.  One way of evaluating a prior restraint is to

X12endoen                SEALED

1    examine the gravity of the evil discounted by the impossibility

2    that it will occur.

3           What exactly is the danger you fear here if the

4    information in these documents becomes public?

5           MR. KAMINSKY:  Your Honor, it's twofold:  I'll start

6    with the, if you will, less grave one first.

7           As this Court stated in Amedeo II, the knowledge that

8    someone who is a cooperator and has gone to the extent that

9    Mr. Doe has will be an outed individual who will have to live

10   his or her life in fear I think is something that will dissuade

11   such cooperation in the future.  As that Court said, if such

12   informants in the present or future cases anticipate that their

13   cooperation will likely become a matter of public knowledge,

14   valuable cooperation might cease.

15          Second of all, I think it's a very real harm that

16   could come to Mr. Doe himself.  The very families that Mr. Doe

17   cooperated against have killed witnesses in the past.  That's

18   been recorded.  And his cooperation --

19          JUDGE CABRANES:  You are speaking of organized crime

20   families?

21          MR. KAMINSKY:  That's correct.  And his cooperation

22   was not just the type of cooperation not to be noticed.  It

23   shut down an enterprise that shut off the valve to tens of

24   millions of dollars.

25          JUDGE POOLER:  Do they know who the cooperator is?

X12endoen                    SEALED

1          MR. KAMINSKY:  Your Honor, there are a number of

2    different individuals whom they may suspect.  But Mr. Doe was,

3    depending how one looks at it, fortunate to not have to testify

4    over his 11-year career as a cooperator and none of the

5    individuals in organized crime had ever received any, as far as

6    the government knows, any official acknowledgement of that

7    cooperation.

8          JUDGE POOLER:  Has he been sentenced for his

9    conviction?

10         MR. KAMINSKY:  Yes.

11         JUDGE CABRANES:  So I take it that in your experience

12   you are telling us that the danger here can be characterized as

13   great and certain?

14         MR. KAMINSKY:  Your Honor, the government certainly

15   affirms the word "great."  "Certain" is something the

16   government is a little bit less comfortable with.  I'm

17   comfortable with the words in Doe of a substantial probability.

18   I believe that probability is substantial.

19         JUDGE CABRANES:  So, if I understand you correctly,

20   you're saying that the critical government interest here is

21   protecting the life of the cooperating witness, among other

22   things?

23         MR. KAMINSKY:  Yes, your Honor.

24         JUDGE CABRANES:  Are there any less intrusive measures

25   other than sealing that would be adequate to prevent the danger

X12endoen                    SEALED

1    we are talking about?

2              MR. KAMINSKY:  The government thinks not, your Honor.

3              The extent of what sealing would be left on this

4    record is still something that is to be worked out.  But the

5    government advocates for a sealing that does not release the

6    real name of Mr. Doe and does not reveal facts that would alert

7    other individuals to his cooperation or conviction.

8              JUDGE CABRANES:  Is it the case that various orders

9    entered by the district court and the Court of Appeals involve

10   no prior restraints on the press or media?

11             MR. KAMINSKY:  That's correct.

12             JUDGE CABRANES:  That is, we are not talking about

13   preventing a news organization from publishing a matter of

14   public concern or impinging on editorial discretion.

15             MR. KAMINSKY:  No, your Honor, and the government

16   feels that's particularly salient in this case.  The Supreme

17   Court in Gentile v. State of Nevada has laid out a clear

18   distinction between attorney speech, especially that in the

19   context of ongoing litigation, meaning not an attorney as a

20   private citizen but as an attorney acting as a hired legal

21   representative and that of the press.  It is regulated by an

22   entirely different standard, and the Supreme Court has said

23   that an attorney's First Amendment rights do not give him a

24   blanket opportunity to commit what are clearly unethical acts.

25             JUDGE POOLER:  Indeed, as we discussed a moment ago,

X12endoen                    SEALED

1   this has been published information about this case has been

2   published.

3            MR. KAMINSKY:   That's correct, your Honor.

4            JUDGE CABRANES:   Let me understand something about the

5   proceedings before Judge Glasser.

6            Do I understand correctly that Judge Glasser only

7   issued a permanent injunction with respect to the presentence

8   report?

9            MR. KAMINSKY:   Correct.

10           JUDGE CABRANES:   And the cooperation agreement, the

11  proffer agreement, and the sealed indictment, what's their

12  status, and do they remain in the possession of Richard Roe?

13           MR. KAMINSKY:   They remain in the possession of

14  Richard Roe.   I believe the copies of these documents remain in

15  the possession of Mr. Roe and other individuals to whom he

16  originally sent them when he filed the complaint.

17           But Judge Glasser has currently not reviewed them, has

18  not resolved that issue.   It was clear to Judge Glasser that

19  the PSR, according to Charmer was a clear issue of law where

20  the document had to be returned by Mr. Roe, but he asked for

21  briefing on what powers he had to ask for documents to be

22  returned that were taken.

23           The issue there was, your Honor, who did the original

24  sealing order apply to, and if Mr. Roe was not a party to that

25  original proceeding did Judge Glasser have the authority to

1    enjoin him.   The government has written on that matter and has

2    briefed the issue that, according to the all writs act, Judge

3    Glasser does have such power.

4          JUDGE CABRANES:   And that matter is still before Judge

5    Glasser?

6          MR. KAMINSKY:   That's correct.

7          I would just like to remind the Court that there was I

8    standstill agreement between Roe and Doe for about four months

9    where nothing happened at all, and then in the fall the

10   litigation resumed again.   And that's when the government filed

11   a letter in furtherance of another injunction.

12         JUDGE POOLER:   Does the government have a theory as to

13   how Roe got ahold of these documents?

14         MR. KAMINSKY:   We do, your Honor.   Judge Glasser held

15   a day of hearings where he called Roe to testify, and Mr. Roe

16   stated that it was a client of his --

17         JUDGE POOLER:   Not John Doe?

18         MR. KAMINSKY:   No.   A client of his had given them to

19   him.   Mr. Doe testified that he kept them in his office, and

20   Judge Glasser came to the conclusion at the end of the hearings

21   that a client of Mr. Roe had stolen them from Mr. Doe, from his

22   office, and had provided them to Mr. Roe.   Judge Glasser said

23   on the record that it was clear that they were taken under

24   less-than-legal circumstances.

25         JUDGE POOLER:   And Mr. Roe still has them?   Attorney

22

X12endoen                    SEALED

1    Roe still has them.

2              MR. KAMINSKY:  Yes, and copies.

3              JUDGE POOLER:  And copies of them?

4              MR. KAMINSKY:  Yes.

5              JUDGE POOLER:  Have you asked for them back?

6              MR. KAMINSKY:  I don't know if we specifically have

7    spoken on a one-to-one basis with them, but we have certainly

8    made clear our position that they are not entitled to them.

9              JUDGE POOLER:  You have never requested them to be

10   turned in to the U.S. Attorney's Office.

11             MR. KAMINSKY:  Your Honor, Judge Glasser directed

12   Mr. Roe to return the PSR to the U.S. Attorney's Office, and

13   we've never received his copy, so we did not.

14             JUDGE CABRANES:  Did that happen as far as you know?

15             MR. KAMINSKY:  No, we haven't been given anything.

16             JUDGE CABRANES:  You don't know of any reason to

17   believe that the presentence report was returned.

18             MR. KAMINSKY:  At this time the government is positive

19   that Mr. Roe has copies of the PSR that he says that he is

20   under no obligation to return to anyone.

21             JUDGE CABRANES:  But there is an order directing him

22   to return his copies of the PSR?

23             MR. KAMINSKY:  Yes, and he appealed that.

24             JUDGE CABRANES:  But we don't know whether he has

25   obeyed that order.

X12endoen                    SEALED

1              MR. KAMINSKY:  He has clearly not obeyed that order,

2    your Honor.

3              JUDGE CABRANES:  I see.  Are you aware whether any

4    authorities in the federal or state governments are

5    investigating or considering criminal prosecution of the people

6    who apparently stole these documents in the first place?

7              MR. KAMINSKY:  I have.  I recently been in contact or

8    received a call from assistant district attorneys in Manhattan

9    where Mr. Doe's office was.  I guess that would be the

10   jurisdiction for the theft.  But I am not involved in that and

11   don't know how far it's gone.

12             JUDGE CABRANES:  Thank you.

13             Let's hear from -- unless my colleagues have any other

14   questions?

15             JUDGE POOLER:  No.

16             JUDGE CABRANES:  We'll turn to counsel for Roe.

17             MR. KAMINSKY:  Thank you, your Honor.

18             MR. LERNER:  Good afternoon, your Honors.  I would

19   first like to correct the record.  The PSR which Mr. Roe

20   received directly from the former client at the company, who I

21   shall not name, that was handed up to the Court as an exhibit

22   during the proceedings.  That original is in the Court's

23   possession.

24             There was further briefing --

25             JUDGE CABRANES:  In possession of Judge Glasser?

X12endoen                    SEALED

1              MR. LERNER:  Yes.

2              JUDGE CABRANES:  Do you or your client continue to

3     have copies of the presentence report?

4              MR. LERNER:  Yes, electronic copies.

5              Now, there's affidavits -- I don't know whether your

6     Honors have seen the affidavit from the company's general

7     counsel.  He states that when he received the complaint in the

8     Southern District action from Mr. Roe, and this was before

9     there was any injunctive relief or a sealing order issued, that

10    attorney, Mr. Schwartz, disseminated it to many people.

11             JUDGE CABRANES:  Who is Mr. Schwartz?

12             MR. LERNER:  He was the general counsel of the company

13    who I think I am -- shall I name the company here?

14             JUDGE CABRANES:  Yes, I think so.

15             MR. LERNER:  Bay Rock.  He was the general counsel of

16    Bay Rock.  He disseminated when it was received, when that

17    complaint was received from the attorney for Bay Rock.  The

18    firm was Akerman Senterfitt.  Akerman Senterfitt, a Miami firm,

19    represented Bay Rock.  That complaint was provided as a

20    courtesy to the Akerman Senterfitt firm with all of the

21    exhibits.

22             That e-mail was then forwarded to Bay Rock's general

23    counsel who disseminated it.

24             JUDGE CABRANES:  Those exhibits of court documents

25    included the presentence report?

X12endoen                    SEALED

1          MR. LERNER:   Included the presentence report.

2          JUDGE CABRANES:  Anything else?  Any of these other

3    documents?   Cooperation agreement?

4          MR. LERNER:  The complaint, the cooperation agreement,

5    and the criminal information.

6          So what's before the Court below --

7          JUDGE CABRANES:  Well, you've submitted today a letter

8    dated February 11 which I have not been able to fully digest

9    shall we say.   You know the letter I'm referring to.

10         MR. LERNER:  Yes, if I may summarize it, simply

11   indicating the attorneys with whom Mr. Roe has consulted with

12   regard to various issues that are connected with this.

13         JUDGE CABRANES:  Does the list of persons or the

14   number of persons to whom you just referred as having received,

15   electronically or otherwise, these documents, are they listed

16   in your filing?

17         MR. LERNER:  I don't think we mentioned Mr. Schwartz.

18         JUDGE CABRANES:  Are you going to be able to give us

19   that information in another letter?

20         MR. LERNER:  I think we can supplement that.  I

21   indicated that it was to the best of our abilities at the time.

22         JUDGE CABRANES:  But you think you will be able to do

23   that, to supplement it as best you can?

24         MR. LERNER:  I know that I provided full information

25   as to who I personally disclosed it to.

X12endoen                    SEALED

1            And that included --

2            JUDGE CABRANES:  What about your client Richard Roe?

3            MR. LERNER:  Mr. Roe, as he indicated in his

4     declaration, to the best of his knowledge he has disclosed

5     that.

6            JUDGE CABRANES:  This letter to which I have just

7     referred was submitted to the Court.  Was it submitted under

8     seal?

9            MR. LERNER:  It was not.

10           JUDGE CABRANES:  It was not.  Was a copy conveyed to

11    counsel for the government?

12           MR. LERNER:  No.  I indicated in the letter that I am

13    providing privileged information, however, if the Court wishes

14    to disclose it --

15           JUDGE CABRANES:  I am a little confused.  You didn't

16    file it under seal.  You didn't feel it was necessary to keep

17    it from the world.  You felt it was only necessary to keep it

18    from the government.  But, of course, they can go on the

19    electronic site and print it out.  So you don't mind if this is

20    copied and given to the government?

21           MR. LERNER:  I would not strongly object.

22           JUDGE CHIN:  Was it filed electronically?

23           MR. LERNER:  Actually, I did not know that it would be

24    filed in the docket.  I was asked by the calendar clerk to

25    provide the letter by 5:00 p.m., and I faxed it directly to the

X12endoen                    SEALED

1   calendar clerk.

2          JUDGE POOLER:  Attached to your letter is the

3   declaration of Richard Roe using his real name?

4          MR. LERNER:  Yes.

5          JUDGE POOLER:  Wasn't that a violation of previous

6   orders?

7          MR. LERNER:  I don't know that Roe could sign a

8   declaration in the name of Roe.  I don't know.  As I indicated

9   in my letter, I didn't know how to deal with that from a

10  technical perspective.

11         JUDGE CABRANES:  Inasmuch as you have no objection to

12  sharing this letter of February 11 with the government, for the

13  sake of expedition, I am going to give my copy to the clerk to

14  pass it to the government, since we can get our own copy off

15  the computer.

16         MR. LERNER:  I would like to correct another statement

17  that was made earlier, and then I would like to proceed with

18  the argument.

19         The Court directly asked the government whether any of

20  these documents are out in the public domain.  The answer, and

21  now that I can, I think I can fairly -- well, may I state a

22  publication on the record as to where -- OK.  Business Week

23  published an article in 1998.  That article is called, The Case

24  of the Gym Bag that Squealed.  That article indicates that

25  Business Week has a copy of the complaint.  That article is

X12endoen                SEALED

1    still up on the website.

2           I submit that if Business Week has the right, as they

3    obviously do, to disseminate that complaint and to discuss that

4    complaint, so too --

5           JUDGE CHIN:  Did you say 1998?

6           MR. LERNER:  Yes.  And that article is still up.

7           JUDGE CHIN:  And the complaint, which complaint are

8    you talking about?

9           MR. LERNER:  The complaint in the Eastern District

10   action.

11          JUDGE CHIN:  In the criminal case, OK.

12          MR. LERNER:  The Eastern District action, the criminal

13   case, yes.  That article, which remains on the website,

14   indicates that Business Week has a copy of the criminal

15   complaint, which means that they got it from the government or

16   they got it from the FBI.  OK.  So it is not --

17          JUDGE POOLER:  Why does it naturally follow that they

18   got it from the government or the FBI?

19          MR. LERNER:  Well, one would presume that Mr. Doe did

20   not give it to Business Week.

21          JUDGE POOLER:  And Mr. Roe was not involved at that

22   point?

23          MR. LERNER:  No.  Mr. Roe wasn't involved in anything

24   related to Bay Rock until I believe he was retained to

25   represent the aforementioned person or assist in prepping an

1    individual for a deposition.

2            JUDGE POOLER:  When was that?  When did he come in

3    contact with the facts of this case?

4            MR. LERNER:  Well, he's been involved with the facts

5    of the Bay Rock matter for about two years.  He's been

6    preparing a RICO complaint.  It was only in March of 2010 that

7    the employee at Bay Rock who Mr. Roe was assisting to prepare

8    for a deposition said, I know you are working on this case,

9    these documents might be of use to you.

10           JUDGE CABRANES:  Can you set forth precisely how your

11   client obtained the sealed presentence report, the cooperation

12   agreement, and the other documents from those criminal cases?

13           MR. LERNER:  Yes.  There was testimony on the record

14   that Mr. Row obtained them from that individual who he was

15   assisting to prep for a deposition.

16           We supplemented that with e-mails that we submitted to

17   the judge below.  That indicated that these documents were

18   maintained on the Bay Rock company's website -- I'm sorry,

19   internal computer system.

20           Mr. Doe had directed that witness who I'm referring

21   to, the deponent, as part of his job --

22           JUDGE CABRANES:  Who was that witness?

23           MR. LERNER:  May I state his name?

24           JUDGE CABRANES:  Yes.

25           MR. LERNER:  Bernstein, Joshua Bernstein.

X12endoen                    SEALED

1          -- had instructed Joshua Bernstein to keep backup

2   copies of all documents, all important documents.

3          So, these documents were on the Bay Rock server.   Now,

4   Mr. Doe testified below that he wasn't a partner in the

5   company.   He was a mere employee.   There's nothing in the

6   record to indicate that he had an expectation of privacy as to

7   e-mails, e-mail documents maintained on the company server.

8   But these documents were -- downloading these documents and

9   archiving them and reviewing them was part of Mr. Bernstein's

10  job.

11         JUDGE POOLER:   Is that a public website or --

12         MR. LERNER:   No, it is a private internal company

13  website.

14         JUDGE POOLER:   Right.

15         MR. LERNER:   So it was obtained lawfully.   And I will

16  not point out that under the Pentagon papers case it is

17  irrelevant whether the documents were obtained lawfully or

18  unlawfully.   They may be used and published as --

19         JUDGE POOLER:   The PSR's have their own sealing

20  regimen that does not relate to any order of the court.

21         JUDGE CABRANES:   We are not dealing here with prior

22  restraint of the press or the media.   That's what the Pentagon

23  papers case was about.

24         MR. LERNER:   Well, your Honors, I would respectfully

25  submit that petitioning the government for redress of

X12endoen                    SEALED

1   grievances by filing a complaint in an action --

2          JUDGE CHIN:  Do you acknowledge, right or wrong,

3   whether the sealing order was correctly issued or not correctly

4   issued, do you acknowledge that your client has to comply,

5   subject to his right to appeal?

6          MR. LERNER:  Your Honor, I am not certain which

7   sealing order you're referring to.

8          JUDGE CHIN:  Any order.  If there is an order in place

9   prohibiting him from disclosing certain things, do you

10  acknowledge that he must comply with that order subject to his

11  ability to appeal and get relief from a higher court?

12         MR. LERNER:  May I read directly from the transcript

13  below with respect to that issue?

14         JUDGE CHIN:  I would like it if you would answer my

15  question.

16         MR. LERNER:  The answer to the question was answered

17  on the record by Mr. Roe.  He said, My understanding is that a

18  sealing order is directed to court personnel and it is not an

19  in personam -- it is not an order against other individuals.

20         JUDGE CABRANES:  Judge Chin directed his question to

21  you.

22         MR. LERNER:  My answer is no, a sealing order is

23  directed to court personnel.  It is not directed to

24  individuals.  A sealing order may be accompanied by an

25  injunctive order prohibiting speech.

X12endoen                    SEALED

1          JUDGE CHIN:  What is the point of a sealing order if a

2     party could freely disseminate the document?  It would

3     completely undermine the point of the sealing order.

4          MR. LERNER:  Judge Glasser stated on the record that

5     there is no sealing order in the case, so he could not have

6     violated a sealing order.  Moreover, in the testimony, Mr. Roe

7     stated, My understanding is that a sealing order is not an

8     injunction, and he cited in his testimony a case called Roman

9     Catholic Diocese, a Kentucky case, the Supreme Court.  And

10     Judge Glasser stated, Your understanding is correct.

11          JUDGE CABRANES:  When Roe obtained these documents,

12     were any of them marked in any way that suggested that they

13     were under seal?

14          MR. LERNER:  Not the criminal information, not the

15     complaint, not the cooperation agreement.  There were markings

16     on the PSR.  I don't recall the exact language of the PSR, but

17     it is not a 65(d) injunction, which must be directed to

18     specific individuals.  It must state the basis for the

19     injunction.  It is not a court order directed to

20     Mr. Oberland -- Mr. Roe.

21          JUDGE CABRANES:  You can refer to him by name here.

22     It's all right.  We are all under seal here.  But, of course,

23     you may not believe in sealing orders.  But you can feel free

24     to refer to anyone here by the correct name or the code name,

25     as you wish.

X12endoen                          SEALED

1              MR. LERNER:  Well, the PSR doesn't have injunctive

2      language in accordance with Rule 65(d).  Therefore, it is not

3      subject to -- it is not an injunction.  It could not bar the

4      dissemination by Mr. Roe.

5              JUDGE CABRANES:  Take 60 seconds and wrap up your

6      argument.

7              MR. LERNER:  Your Honors, we are here before the Court

8      on a motion to seal the docket.  There has been no record

9      finding in support of the sealing of the docket.  There's no

10     evidence that has been submitted, there's argument, but no

11     evidence to support the sealing of the docket.  And in order to

12     seal a docket, there must be on-the-record findings

13     demonstrating its propriety.  I would also like to state --

14             JUDGE POOLER:  Don't we have an admission from Mr. Roe

15     that he has these documents?  Isn't that per se evidence?

16     Isn't that enough?

17             MR. LERNER:  To seal the appellate docket?

18             JUDGE POOLER:  Yes.  He has records that the judges

19     thought were under seal already.  He has them and admitted he

20     has them.

21             MR. LERNER:  Yes, he has them.

22             JUDGE POOLER:  Why isn't that enough evidence to seal

23     the record until further order of this court?

24             MR. LERNER:  Because in Hartford Courant this court

25     said it is inappropriate to seal an entire court docket.

34

1          JUDGE POOLER:  But that is also a newspaper case.

2          MR. LERNER:  I would submit, your Honors, that under

3    Citizens United all individuals have the same First Amendment

4    rights.  The Supreme Court stated it expressly.  We no longer

5    distinguish between newspapers and individuals.

6          JUDGE POOLER:  But newspapers have a special charge in

7    publishing information for citizens.  Mr. Roe doesn't have any

8    charge in making this information available to citizens.

9          MR. LERNER:  Mr. Roe has the charge to represent his

10   clients, who have the charge to represent, as they are acting

11   in a fiduciary role, they represent they are acting

12   derivatively and representing many investors.  So he has a

13   First Amendment right to use and publish these documents as he

14   will.

15         Now I will state very directly, your Honor, the fact

16   that this is not out in the public proves Mr. Roe's good faith.

17   He has never circulated this publicly.  He asserts his absolute

18   right to do so, but he has not done so.

19         We ask that the Court abide by U.S. Supreme Court

20   precedent, and if it is to hold that this proceeding is to be

21   closed, that the docket is to be closed, that record findings

22   be made on evidence, and there is no evidence here to support

23   the burden of proof that is on the government.

24         JUDGE CABRANES:  Let me ask you directly, you have

25   filed a petition for certiorari with the Supreme Court?

X12endoen                    SEALED

 1              MR. LERNER:  We have filed a petition to stay this

 2    proceeding.  Every name that could give anyone notice as to

 3    what is going on here was redacted.  I provided that to this

 4    Court in advance before filing it.  I provided it to counsel in

 5    advance before filing it.

 6              JUDGE POOLER:  Did you file it at noon as you said you

 7    were going to do?

 8              MR. LERNER:  It was filed precisely at noon.

 9              JUDGE CABRANES:  Today?

10              MR. LERNER:  No, it was filed at noon on Friday.

11              JUDGE CABRANES:  Noon on Friday.

12              MR. LERNER:  It was denied.

13              JUDGE CABRANES:  It was denied already?

14              MR. LERNER:  Yes.

15              JUDGE CABRANES:  So there's nothing pending before the

16    Supreme Court at this point?

17              MR. LERNER:  That is correct.

18              JUDGE CABRANES:  Lest there be any confusion, we think

19    that you should make whatever arrangements are appropriate with

20    the Clerk of the Supreme Court to make sure that this

21    now-defunct proceeding remains under seal for the time being.

22    That is for you to apply, and you can indicate to them on

23    notice to the government that you are doing so at the request

24    of the Court.

25              In any event, any further appeals to the Supreme Court

X12endoen                SEALED

1    should be, unless you hear otherwise from this Court, properly

2    denominated as under seal.  Is that understood?

3            MR. LERNER:  Yes, absolutely, your Honor.

4            JUDGE CABRANES:  It is so ordered.

5            JUDGE CHIN:  Is it understood that it applies not just

6    to Court personnel but to anyone with notice of it, including

7    your client, without prejudice to your position, but otherwise

8    we are going to be right back to square one.

9            MR. LERNER:  I think we will understand it to mean

10   that any petition will not be widely disseminated.  It will go

11   from my hands --

12           JUDGE CABRANES:  Will not be disseminated, period.

13           MR. LERNER:  Will not be disseminated, period.  It

14   will be in my hands, Mr. Roe's hands, counsel's hands.

15           JUDGE CABRANES:  We will recess, and we may have

16   something for you.  We would like you to stand by, and we are

17   going to consult with the Clerk of Court and others and we hope

18   to have something for you promptly.

19           Thank you.

20           (Recess)

21           JUDGE CABRANES:  It is 2:53 p.m.  I have asked the

22   clerk to enter an order that was entered formally at 2:45 p.m.,

23   copies of which are being delivered at this very moment to

24   those counsel who are present.

25           We will take a moment or two to review the order.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1         Page 2 of course is a description of past proceedings.
2         Page 3 deals with the petition information, the writ
3    of mandamus, which you will note has been denied, and the
4    docket in that proceeding and all documents referenced therein
5    shall remain sealed until further order of the Court.
6         On page 4 we turn to the request by the government for
7    injunctive relief.  There will be a remand to the district
8    court for the limited purpose of enforcing this Court's orders
9    and the related district court orders while the appeal goes
10   forward on the merits.  And the appeal will be expedited.
11        There is a briefing schedule on page 5.  This is a
12   remand under U.S. v. Jacobson.  This panel shall retain
13   jurisdiction over the pending appeal both for the disposition
14   of the appeal on the merits as well as with respect to any
15   further motions practice.
16        Any other appeals from the district court's order
17   granting the permanent and temporary injunctions at issue and
18   any appeals arising from any further proceedings in the
19   district court, including any further petitions for
20   extraordinary writs, including the writ of mandamus.  It is so
21   ordered.
22        Is there anything else anyone wishes to.
23        Why don't you come to the microphone so we can have
24   the benefit of your comments?
25        MR. LERNER:  The matter in the Southern District is

X12endoen                    SEALED

1   presently stayed with an order to Mr. Roe to file a

2   supplemental complaint upon the completion of the proceedings

3   before Judge Glasser.

4        We understand that he's been enjoined from making any

5   further applications.  However, he would like to submit

6   application to Judge Buchwald to request further --

7        JUDGE CABRANES:  He has not been enjoined from making

8   any further applications.  You have misread this order.  He has

9   been enjoined from making any dissemination of any of these

10  documents.

11       You can appear before Judge Buchwald at any time you

12  think appropriate, and the only condition that I would place on

13  that would be that you should, in making any presentation to

14  Judge Buchwald, attach to any filing a copy of this order.

15       MR. LERNER:  Thank you, your Honor.

16       JUDGE CABRANES:  It is so ordered.

17       Yes?  Any further applications or comments?

18       MS. MOORE:  Your Honor, my name is Kelly Moore.  I'm

19  with the form of Morgan Lewis & Bockius.  We have been

20  representing Mr. Doe for sometime now.  Unfortunately our legal

21  fees have gone through the roof on this matter, and a couple of

22  months ago he retained a former colleague of mine, Mr. Beys, to

23  represent him in connection with the Southern District.

24       JUDGE CABRANES:  That's fine.

25       Let me just say I handled your application as a

X12endoen                    SEALED

1    one-judge application, but frankly, not knowing what was going

2    on at the time that your application arrived, I denied it

3    without prejudice.  I gather that you are now renewing your

4    application to withdraw and to be substituted?

5              MS. MOORE:  Yes, your Honor.

6              JUDGE CABRANES:  The application is granted.

7              MS. MOORE:  Thank you.

8              MR. BEYS:  Thank you.

9              JUDGE CABRANES:  Anything else?

10             Does the government need any comment or application?

11             MR. KAMINSKY:  Very briefly, your Honor.

12             The government during the brief recess had an

13   opportunity to first look at opposition's letter in terms of

14   which further counsel they've spoken to and submitted the filed

15   documents.  The government is very concerned generally, but

16   particularly concerned about one specific attorney who

17   represents a large amount of individuals accused of being part

18   of organized crime families.

19             JUDGE CABRANES:  I don't mean to minimize the

20   importance of what you are saying, but I think my colleagues

21   will agree that your concerns should now be addressed to the

22   district court.  I think you will wish to contact Chief Judge

23   Dearie to determine who exactly is going to handle the

24   implementation of the court's mandate.  And that judge can hear

25   any concern or application by you with respect to that.

X12endoen                        SEALED

1          On the other hand, you may wish to complete the record

2     before our Court and state whatever you think appropriate.   You

3     may wish to include some of that in the briefing on the merits,

4     but I think if you're asking for relief or you want to apply

5     for relief in that regard, you should take it up in the Eastern

6     District of New York.

7          Is that agreeable?

8          MR. KAMINSKY:  Absolutely, your Honor.   There was just

9     more of a technical question of whether today's sealed

10    proceeding would bar the government from speaking with one of

11    those attorneys and asking for the documents back.

12         JUDGE CABRANES:  No.

13         MR. KAMINSKY:  Thank you.

14         JUDGE POOLER:  Counsel, before you sit down, this

15    matter before us was triggered by your motion for a temporary

16    stay of the unsealing.

17         MR. KAMINSKY:  Yes.

18         JUDGE POOLER:  Do you have reason to believe that the

19    documents were about to be unsealed?

20         MR. KAMINSKY:  Yes.

21         JUDGE POOLER:  What is the basis for that?

22         MR. KAMINSKY:  We spoke to the Clerk of the Court here

23    and we were informed that, unless someone makes a motion, it's

24    going to be unsealed.   It was sealed as a matter of course when

25    the appeal was filed.

X12endoen                    SEALED

1              JUDGE POOLER:  That is, the appeal in this Court?

2              MR. KAMINSKY:  Yes.  Correct.  That was sealed pro

3    forma, and when we called to inquire about it they said not for

4    long, so we made this motion.

5              JUDGE POOLER:  Thank you.  Thank you for clearing that

6    up.

7              JUDGE CABRANES:  Thanks very much.  We are in recess.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25